Stephen C. McArthur (State Bar No. 277712)
stephen@smcarthurlaw.com
Thomas E. Dietrich (State Bar No. 254282)
tom@smcarthurlaw.com
THE MCARTHUR LAW FIRM, PC
11400 W. Olympic Blvd. Suite 200
Los Angeles, CA 90064
Telephone: (323) 639-4455

*Attorney for Plaintiff Covves, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COVVES, LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>DILLARD'S, INC. a<br>Delaware Corporation;<br>KOHL'S CORPORATION,<br>a Wisconsin Corporation;<br>SAKS & COMPANY LLC,<br>a Delaware Corporation;<br>TARGET BRANDS, INC. a<br>Minnesota Corporation;<br>EXPRESS, INC., a<br>Delaware Corporation;<br>TILLY'S, INC. a Delaware<br>Corporation;<br>NORDSTROM, INC., a Washington<br>Corporation;<br>WEST MARINE, INC., a Delaware<br>Corporation,<br>and<br>ZULILY, INC. a<br>Delaware Corporation.<br><br>        Defendants. | Case No. 2:18-CV-8518-RGK-AFM<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hon. R. Gary Klausner<br>United States District Court Judge<br>**Hearing Date**: December 2, 2019<br>**Time**: 9:00 a.m.<br>**Courtroom**: 850, 255 E. Temple St., Los Angeles, CA 90012 |

1

# **TABLE OF CONTENTS**

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I.  Introduction ........................................................................................................ 1
II.  Background ........................................................................................................ 1
    A.  Covves Brings First Unicorn Float to Market and Patents Designs ...................... 1
    B.  Covves' Unicorn Designs Become Hugely Popular .......................... 2
    C.  BigMouth Copies Covves' Commercial Embodiment ........................ 2
    D.  Defendants Sell Imitation Unicorns at Retail Stores, Online..................... 2
III.  Legal Standard ................................................................................................ 3
IV.  Defendants' Expert is Not Qualified to Opine on Inflatable Toys.................... 3
V.  Summary Judgment on Validity is Appropriate .......................................... 4
    A.  Covves' Patents-in-Suit are Not Anticipated .................................. 4
    B.  Covves' Patents-in-Suit are Not Invalid for Obviousness ..................... 5
        1.  The '617 patent design is not obvious ................................. 6
        2.  The '370 patent design is not obvious ................................. 9
        3.  Secondary considerations support nonobviousness ..................... 10
    C.  Defendants Have Not Made Any Showing of Inequitable Conduct................ 11
VI.  Defendants' Imitation Unicorns Infringe Covves' Patents-in-Suit...................... 11
    A.  Substantial Similarity Test for Infringement.................................. 12
    B.  Defendants Sold Floats That Infringe the '617 Patent ........................ 13
    C.  Defendants Sold Cupholders That Infringe the '370 Patent ................... 16
    D.  Defendants' Expert Erred on Noninfringement Analysis ..................... 17
VII.  Summary Judgment on Total Profits is Appropriate........................................ 18
    A.  Defendants Have Burden of Proving Deductible Expenses..................... 18
    B.  Parties Agree on Revenues and Cost of Goods; Defendants Completely Failed to Meet Burden on Other Expenses ..................... 19
Conclusion ............................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**

*Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000)............................................... 3

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F. 2d 1350 (Fed. Cir. 1984) ........................ 7

*Apple, Inc. v. Samsung Elec. Co., Ltd.*, 678 F.3d 1314 (Fed. Cir. 2012) ........................ 5, 8, 9, 10

*Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557 (Fed. Cir. 1998) .. 3, 9, 10, 14, 15, 17

*Bergstrom v. Sears, Roebuck & Co.*, 496 F.Supp. 476 (D. Minn. 1980) .................................. 18

*Contessa Food Prods., Inc. v. Conagra*, 282 F.3d 1370 (Fed. Cir. 2002) .............................. 17

*Durling v. Spectrum Furniture Co., Inc.*, 101 F. 3d 100 (Fed. Cir. 1996) ............................. 8

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008). .............................. 12

*Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113 (Fed. Cir. 1998) .. 12

*Gorham Manufacturing Co. v. White*, 81 U.S. 511 (1871) ............................................. 12

*High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301 (Fed. Cir. 2013) ............. 5, 6, 8, 11

*In re Borden*, 90 F.3d 1570 (Fed. Cir. 1996) ................................................... 6, 9, 10

*Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551 (9th Cir. 1991) ...................... 3

*LA Gear, Inc. v. Thom McAn Shoe Co.*, 988 F. 2d 1117 (Fed. Cir. 1993) ..................... 10, 11, 12

*Livjo, Inc. v. Deckers Outdoor Corp.*, No. 10-cv-4557 (C.D. Cal. Sep. 27, 2011)................. 5, 6, 8

*MRC Innov. Inc. v. Hunter Mfg. LLP*, 747 F.3d 1326 (Fed. Cir. 2014)................................ 5, 6, 10

*Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359 (Fed. Cir. 2008) ................................ 5

*Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437 (Fed. Cir. 1998)........................ 18, 19, 20

*Nordock, Inc. v. Systems Inc.*, 803 F.3d 1344 (Fed. Cir. 2015) .................................... 18

*Payless ShoeSource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985 (Fed. Cir. 1993)...................... 12, 17

*Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348 n.5 (Fed. Cir. 2007) .................................... 4

*Rocket Jewelry Box, Inc. v. Quality Int'l Packaging, Ltd.*, 250 F.Supp. 2d 333 (S.D.N.Y. 2003)18, 19

*Schnadig Corp. v. Gaines Mfg. Co., Inc.*, 620 F.2d 1166 (6th Cir. 1980) ........................ 18, 19

*Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253 (Fed. Cir. 2012)................................... 7

*Sport Dimension Inc. v. The Coleman Company, Inc.*, No. 14-cv-438 (C.D. Cal. Jan. 29, 2015)... 3

*Stratoflex, Inc. v. Aeroquip Corp.*, 713 F. 2d 1530 (Fed. Cir. 1983) ............................... 11

*Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356 (Fed. Cir. 2008)........................ 3, 4

*The Parallax Group Int'l, LLC v. Incstores, LLC*, No. 16-cv-929 (C.D. Cal. June 30, 2019) ........ 4

*U.S. Water Serv., Inc. v. NOVOZYMES A/S*, 843 F. 3d 1345 (Fed. Cir. 2016) ............................ 11

**Statutes**

35 U.S.C. § 256 ................................................................................. 11

35 U.S.C. § 282 .................................................................................. 4

35 U.S.C. § 289 ................................................................................. 18

## I.      Introduction

Plaintiff Covves, LLC ("Covves") moves for summary judgment on (a) validity of U.S. Patent Nos. D787,617 and D783,370 (the "patents-in-suit"), (b) infringement of the patents-in-suit, and (c) total profits. The retailer defendants ("Defendants") sold unicorn-shaped inflatable pool toys and cupholders (together, the "Imitation Unicorns") distributed by BigMouth, Inc. ("BigMouth"). Covves' expert—an industrial and toy designer with 26 years of experience—found BigMouth copied Covves' commercial embodiment of the '617 patent. Covves' designs are not anticipated or obvious. Defendants' "best" prior art is a grainy screenshot from a 1964 TV show, which their expert misrepresented under oath. There is no dispute as to the Imitation Unicorns' overall appearance, and a side-by-side comparison proves substantial similarity to Covves' designs. Nor is there a genuine dispute over Defendants' total profits awardable under 35 U.S.C. § 289.

## II.      Background

### A.      Covves Brings First Unicorn Float to Market and Patents Designs

Covves designs and sells inflatable pool toys under the brand #GetFloaty. SUF ¶ 1.[1] In August 2015, Covves introduced the first ever unicorn-shaped pool float to the market, called the "Giant Unicorn." *Id*. The float design was developed through collaboration between Benson Su, Louis Lo, Adam Krepack, and Tomislav Vuksic. SUF ¶ 2. The float was made to look minimalist and stylized to appeal to adult consumers who were part of a growing segment interested in novelty pool floats popular on social media sites like Instagram. *Id*.

Covves owns all rights to the '617 patent covering the design embodied in its Giant Unicorn float, which was filed on August 24, 2015, and issued on May 23, 2017. SUF ¶ 3. Covves subsequently brought to market a unicorn-shaped drink holder, the "Mini Unicorn Cup Holder." SUF ¶ 1. Covves owns all rights to the

---

[1] Citations to "SUF" refer to the concurrently-filed Statement of Uncontroverted Facts and Conclusions of Law.

'370 patent covering the design embodied in its Mini Unicorn Cup Holder, which was filed on November 8, 2016, and issued on April 11, 2017. SUF ¶ 3.

## B. Covves' Unicorn Designs Become Hugely Popular

Covves' unicorn floats were an instant hit and became extremely popular in 2016-2017. SUF ¶ 5. Covves' commercial embodiments were featured on The Today Show, Vogue, Elite Daily, Popsugar, and Harper's Bazaar, among many other outlets. *Id*. In June 2016, Observer magazine wrote Covves' Giant Unicorn had unseated the swan as the most popular pool float. *Id*.

Covves' unicorn floats were also a hit on social media, featured in many celebrity Instagram posts. One social media influencer Covves worked with was Emily Rose Hannon. SUF ¶ 6. Covves gave Ms. Hannon a Giant Unicorn float in exchange for her posting photos on Instagram and tagging Covves' #GETFLOATY page. *Id*. Those photos caught BigMouth's eye.

## C. BigMouth Copies Covves' Commercial Embodiment

In November 2016—about one year after Covves started selling its Giant Unicorn float—a BigMouth designer sent a design document to its manufacturer that included a photograph of Covves' Giant Unicorn, as shown on Ms. Hannon's Instagram page, as a "Reference Image" to use in producing floats for BigMouth. SUF ¶ 7. Covves' expert has opined the evidence indicates the design for BigMouth's floats was copied from Covves' Giant Unicorn, a commercial embodiment of the '617 patent. *Id*. Based on that design, BigMouth produced and distributed several versions of ridable unicorn float ("Imitation Giant Unicorn Floats") and an inflatable unicorn cupholder ("Beverage Boat"). SUF ¶¶ 7-8.

## D. Defendants Sell Imitation Unicorns at Retail Stores, Online

Each of the Defendants sold Imitation Unicorns from BigMouth at their retail stores and online sales portals. SUF ¶¶ 9-13. Defendant Target alone had total profits of $2,458,368. SUF ¶ 46. Other Defendants had lower sales, but each sold accused products between 2017 and today. *Id*.

### III.    Legal Standard

Summary judgment is as appropriate for design patent infringement as it is in any other patent case. *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1561-62 (Fed. Cir. 1998) (upholding C.D. Cal. grant of summary judgment to plaintiff of design patent infringement). Covves must first show there is no genuine issue of material fact in evidence. Fed. R. Civ. P. 56(c). Once that burden is met, Defendants "must present significant probative evidence tending to support [their] claim or defense." *Intel Corp. v. Hartford Accident & Indem. Co*., 952 F.2d 1551, 1558 (9th Cir. 1991). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). If Defendants fail to make this showing, Covves is entitled to summary judgment. *See id*.

### IV.    Defendants' Expert is Not Qualified to Opine on Inflatable Toys

As an initial matter, Defendants' expert, Maureen McHale, is unqualified to testify here. An expert witness can testify only if she "is qualified as an expert in the pertinent art." *Sundance, Inc. v. DeMonte Fab. Ltd*., 550 F.3d 1356, 1363 (Fed. Cir. 2008). Indeed, "it is an abuse of discretion to permit a witness to testify as an expert on the issues of noninfringement or invalidity unless that witness is qualified as an expert in the pertinent art." *Id*. "Nor may a witness not qualified in the pertinent art testify as an expert on obviousness, or any of the underlying technical questions, such as the nature of the claimed invention, the scope and content of prior art, the differences between the claimed invention and the prior art, or the motivation of one of ordinary skill in the art to combine these references to achieve the claimed invention." *Id*. at 1364.

"[T]he pertinent art should be informed primarily by the language in the patent." *Sport Dimension Inc. v. The Coleman Co., Inc.*, No. 14-cv-438, at *7 (C.D. Cal. Jan. 29, 2015). The pertinent art here is thus properly defined as inflatable toys. SUF ¶ 14. Defendants' expert, Ms. McHale has a degree in graphic design, not in

industrial or product design. SUF ¶ 15. Her experience lies solely in two-dimensional design of product packaging and websites. *Id*. She has no experience designing inflatable toys, cupholders, or any other three-dimensional figural article. *Id*. The closest Ms. McHale comes to the pertinent art is that someone in the eight-person design firm she owns (but not her) designed the product packaging for a brand that includes inflatable toys. *Id*. That is not enough. Ms. McHale has zero experience with three-dimensional design of figural products and zero experience with the pertinent art. SUF ¶¶ 15-16.

In *Sundance*, the Federal Circuit excluded an expert who lacked expertise in the field of "tarps and covers," despite being an engineer with experience in other design fields. *Id*. at 1362-64. Thus, he was not qualified to "offer[] expert testimony on several issues which are exclusively determined from the perspective of ordinary skill in the art." *Id*. The same can be said of Ms. McHale as to design of inflatable toys. Designing packaging is not sufficiently related to designing toys. She is not qualified; the Court should disregard her opinions or accord them little weight.

## V.   Summary Judgment on Validity is Appropriate

Defendants allege the patents-in-suit are invalid for anticipation, obviousness, or inequitable conduct. *See* Dkt. 101 at 7. Claims of issued patents are presumed valid. 35 U.S.C. § 282. A party seeking to prove invalidity must do so by clear and convincing evidence, i.e., "evidence that places in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." *Pfizer, Inc. v. Apotex, Inc*., 480 F.3d 1348, 1359 n.5 (Fed. Cir. 2007). Defendants have not raised any issue precluding a determination the patents-in-suit are valid.

### A.   Covves' Patents-in-Suit are Not Anticipated

"To find anticipation of a design patent, the prior art *must be identical in all material respects*." *The Parallax Group Int'l, LLC v. Incstores, LLC*, No. 16-cv-929, at *7 (C.D. Cal. June 30, 2019) (emphasis added). A single reference must disclose all design elements which also must be "arranged or combined in the same

way recited in the claim." *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008). Defendants have not identified any one piece of prior art that is "identical in all material respects" to the design protected by either patent-in-suit. SUF ¶ 17. Their expert does not opine either patent-in-suit is anticipated. *Id*. Defendants have proffered nothing to support that defense. Covves is thus entitled to summary judgment of no anticipation.

### B.   Covves' Patents-in-Suit are Not Invalid for Obviousness

Defendants cannot get past the first step of an obviousness analysis, and their expert is unqualified to testify. For design patents, "the ultimate inquiry in an obviousness analysis is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved." *High Point Design LLC v. Buyers Direct, Inc*, 730 F.3d 1301, 1312 (Fed. Cir. 2013). That is a two-step process. "The first step in the obviousness analysis for design patents is to identify a primary reference, 'the design characteristics of which *are basically the same* as the claimed design.'" *Livjo, Inc. v. Deckers Outdoor Corp.*, No. 10-cv-4557, at *5 (C.D. Cal. Sep. 27, 2011) (emphasis added)); *see also MRC Innov. Inc. v. Hunter Mfg. LLP*, 747 F.3d 1326, 1331 (Fed. Cir. 2014). This "'basically the same' test requires consideration of the visual impression created by the patented design as a whole." *MRC Innov.*, 747 F.3d at 1331. A "trial court judge may determine almost instinctively whether the two designs create basically the same visual impression, but must communicate the reasoning behind that decision." *Id*. The Federal Circuit held it is reversible error to find a primary reference meets the "basically the same" test when a "side-by-side comparison of two designs shows substantial differences in the overall appearance between the patented design and the [proposed primary] reference . . . ." *Apple, Inc. v. Samsung Elec. Co., Ltd.*, 678 F.3d 1314, 1330-31 (Fed. Cir. 2012).

If the defendant fails to identify a primary reference that satisfies the "basically the same" test, that ends the inquiry and the patent is not obvious. *See*

*Livjo*, No. 10-cv-4557, at *5-6 ("Because the Defendant has failed to identify a proper primary reference, the Court cannot consider secondary references."). If the defendant "points to a satisfactory primary reference, then other references in the prior art may be considered." *Id*. at *5; *see also MRC Innov*., 747 F.3d at 1331. Secondary references "may be used to modify [the primary reference] to create a design that has the same overall visual appearance as the claimed design." *MRC Innov*., 747 F.3d at 1331. "In order for secondary references to be considered, however, there must be some suggestion in the prior art to modify the basic design with features from the secondary references." *In re Borden*, 90 F.3d 1570, 1574 (Fed. Cir. 1996). Thus, "the teachings of prior art designs may be combined only when the designs are so related that the appearance of certain ornamental features in one would suggest the application of those features to the other." *Id*. at 1575.

### 1.     The '617 patent design is not obvious

Defendants fail the first step of the section 103 analysis—they have not identified a proper primary reference. "To identify a primary reference, one must: (1) discern the correct visual impression created by the patented design as a whole; and (2) determine whether there is a single reference that creates 'basically the same' visual impression." *High Point*, 730 F.3d at 1312.

The '617 patent design creates the visual impression of a streamlined simplified unicorn with a rounded and smooth nose and head, raised mane, conical horn, protruding ears, and a swooping S-shaped tail. SUF ¶ 18. As a primary reference, Defendants rely on a screenshot from a 1964 episode of the Twilight Zone shown below next to a figure from the '617 patent. SUF ¶ 19.




The first issue with this reference is that Defendants' expert Ms. McHale misrepresented under oath that the product in the screenshot was a unicorn. SUF ¶ 19. The image she used appears at 22:32 in the show. *Id*. But between 3:15-3:40, the prop is shown rocking side to side from a different angle:



This is *during the opening credits* of the show. *Id*. Ms. McHale—who stated under oath that she watched this episode—must have known this. *Id*. Rather than face the fact this prop is not a unicorn but a *horse* with two long ears, Ms. McHale stated under oath the prop had a "pointed horn at the top of its head" and that "[t]his last feature, the horn, makes it easy to identify this pool float as a unicorn." SUF ¶ 20. She then relied on that contrived conclusion as the sole basis to opine that unicorn-shaped floats were known in the prior art. *Id*. That is false. It was Covves who undisputedly released the first unicorn float on the market. Horse floats have been around for decades—the USPTO considered *eight* horse floats during prosecution of each patent-in-suit. SUF ¶ 21. That is reason enough for the Court to disregard the Twilight Zone horse as a primary reference.[2] *See Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F. 2d 1350, 1360 (Fed. Cir. 1984) ("When an attacker simply goes over the same ground travelled by the PTO, part of the *burden* is to show that the PTO was wrong in its decision to grant the patent."); *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260-61 (Fed. Cir. 2012) ("[I]t may be harder to meet the clear and convincing burden when the invalidity contention is based upon

---

[2] Three days before the motion deadline, Defendants produced an "updated" report by Ms. McHale in which she changed her position and acknowledged the Twilight Zone prop is a two-eared horse. That is impossible to square with her earlier statement under penalty of perjury that she watched the episode and concluded the prop was a unicorn. In any event, Defendants continue to rely on the Twilight Zone horse as a primary reference throughout the updated report.

1   the same argument on the same reference that the PTO already considered.").

2       The second issue with this reference is that, as Covves' expert notes, an

3   ordinary designer would not find the Twilight Zone horse creates basically the same

4   visual impression as the modern unicorn design in the '617 patent. SUF ¶ 22. The

5   two designs have substantial differences in their overall visual appearance. *Id*. Even

6   Ms. McHale admits the reference lacks many of the features included in Covves'

7   design, including ears, a mane, and a tail. SUF ¶ 23. Thus, Twilight Zone horse is

8   not a proper primary reference. *See Apple*, 678 F.3d at 1330-32 (rejecting reference

9   due to differences in designs).

10      Ms. McHale makes similar errors on other horse and giraffe floats she

11  obliquely tries to slip in as possible primary references. SUF ¶ 24. She admits both

12  would need to be "modified" to substitute unicorn features for the giraffe or horse

13  features. *Id*. They thus do not create "basically the same visual impression" as the

14  '617 patent design. *High Point*, 730 F.3d at 1312. A side-by-side comparison drives

15  that home. SUF ¶ 24. These giraffe and horse floats were also considered by the

16  PTO in prosecution of the '617 patent—a fact Ms. McHale fails to acknowledge—

17  and thus are entitled to far less weight. SUF ¶¶ 24-25; *Sciele*, 684 F.3d at 1260.

18      This case is similar to *Apple*, where the Federal Circuit conducted a side-by-

19  side analysis and found many "noticeable differences" between the prior art and

20  patented phone designs. *See* 637 F.3d at 1330-32. There are many substantial—and

21  admitted—differences between Defendants' references and the modern unicorn

22  float design claimed in the '617 patent. For these reasons, none of those references

23  can serve as a proper primary reference in an obviousness analysis. *See Livjo*, No.

24  10-cv-4557, at *5; *Durling v. Spectrum Furniture Co., Inc*., 101 F. 3d 100, 103-105

25  (Fed. Cir. 1996); *High Point*, 730 F.3d at 1314. The Federal Circuit has held that

26  "in absence of a qualifying primary reference" there can be no "substantial question

27  as to the validity of the patent." *Apple*, 678 F.3d at 1332. Summary judgment of

28  nonobviousness is therefore warranted on the '617 patent.

As a final point, even if the Court found the Twilight Zone horse qualified as a primary reference, Defendants have failed to identify any "suggestion in the prior art" to change that horse into Covves' claimed unicorn by modifying the mane, ears, tail, jaw, and nose shape, and adding a horn. SUF ¶¶ 26-27; *see In re Borden*, 90 F.3d at 1575; *Avia*, 853 F.2d at 1564 ("That some components of Avia's designs exist in prior art references is not determinative. If the combined teachings suggest only components of the claimed design but not its overall appearance, a rejection under section 103 is inappropriate."). Ms. McHale fails to explain how prior art as varied as a 1964 TV show prop, a 1980s child's toy, and giraffe and horse floats are designs that are "so related" that the appearance of ornamental features in one would suggest applying them to another. SUF ¶¶ 26-27; *In re Borden*, 90 F.3d at 1575. The fact that a horse float was patented as early as 1952 but *for 63 years no one made a unicorn float until Covves* supports that Covves' design was novel. Defendants have not identified any prior art to even get past the first step of the analysis. Covves is therefore entitled to summary judgment of nonobviousness on the '617 patent. *See Apple*, 678 F.3d at 1332; *Avia*, 853 F.2d at 1564.

### 2.    The '370 patent design is not obvious

As for the '370 patent, Defendants have not identified any primary reference at all. SUF ¶ 29. Rather, their expert explains why each reference must be modified with various features to create a design visually similar to the patented design. *Id*. Ms. McHale admits that every known prior art reference does not have "basically the same" features as the '370 patent design. *Id*. While Defendants identify a prior art unicorn-shaped cupholder, Ms. McHale admits that reference did not include a "separate inflatable mane and ears" or have the same nose shape as the patented design. SUF ¶ 31. Ms. McHale's obviousness analysis does not select a primary reference and then rely on suggestions in the prior art to modify it; rather she mashes multiple references together, cherry-picking features from each to create a design she feels would be similar to the '370 patent. SUF ¶ 32. That is not the

proper first step in the analysis and also violates the requirement that a comparison must be of the visual impression of the designs *as a whole*. *MRC Innov.*, 747 F.3d at 1331. Further, many of these references were already considered by the USPTO, which Ms. McHale does not recognize. SUF ¶ 33. Defendants have been unable to identify a primary reference to the '103 patent. The inquiry must end there; Covves is entitled to summary judgment of nonobviousness. *Apple*, 678 F.3d at 1332.

Even if the Court were to *sua sponte* pick a reference and call it primary, the '370 patent is still not obvious. As with her '617 patent analysis, Ms. McHale has not identified anything in the prior art that would suggest modifying the various features prior art designs to create a design like that in the '370 patent. SUF ¶¶ 32, 34. For example, while one *could* have modified the P&P Imports cupholder to add protruding ears, a three-dimensional mane, and a rounded nose, Ms. McHale does not identify any suggestion in the prior art that would have led an ordinary designer to actually do so. *Id.*; *see LA Gear, Inc. v. Thom McAn Shoe Co.*, 988 F. 2d 1117, 1124 (Fed. Cir. 1993) ("A reconstruction of known elements does not invalidate a design patent, absent some basis whereby a designer of ordinary skill would be led to create this particular design."). Nor does Ms. McHale explain how the far-afield prior art designs are "so related" as to suggest moving features from one to another.[3] SUF ¶ 32; *In re Borden*, 90 F.3d at 1575. Defendants have not identified any proper primary reference to the '370 patent or any prior art that creates a genuine dispute as to obviousness. Summary judgment for Covves is thus warranted. *See Apple*, 678 F.3d at 1332; *Avia*, 853 F.2d at 1564.

### 3. Secondary considerations support nonobviousness

Secondary considerations of nonobviousness also support Covves. "[E]vidence rising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness." *High*

---

[3] The prior art giraffe, horse, and cupholder floats referenced by Ms. McHale were all considered and analyzed by the PTO in prosecution of the '370 patent, and thus carry less weight. *See Am. Hoist*, 725 F. 2d at 1360; *Sciele*, 684 F.3d at 1260-61.

*Point*, 730 F.3d at 1315. Secondary considerations "may often establish that an invention appearing to have been obvious in light of the prior art was not" and are "to be considered as part of all the evidence, not just when the decisionmaker remains in doubt after reviewing the art." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F. 2d 1530, 1538-39 (Fed. Cir. 1983). Here, Covves' claimed designs were a commercial success. SUF ¶ 4. Further, the design for the Imitation Unicorns was copied from Covves' commercial embodiment of the '617 patent. SUF ¶ 7. This further supports that summary judgment for Covves is warranted. *See High Point*, 730 F.3d at 1315; *LA Gear*, 988 F.2d at 1124

## C.    Defendants Have Not Made Any Showing of Inequitable Conduct

Defendants pled inequitable conduct by merely stating the legal conclusion that the patents-in-suit are invalid due to false statements made by an inventor. *See* Dkt. 101 at 7. However, "[a] party seeking to prove inequitable conduct must show . . . the patent applicant made misrepresentations or omissions material to patentability, that he did so with the specific intent to mislead or deceive the USPTO, and that deceptive intent was the single most reasonable inference to be drawn from the evidence." *U.S. Water Serv., Inc. v. NOVOZYMES A/S*, 843 F. 3d 1345, 1352-53 (Fed. Cir. 2016). There is no evidence to support inequitable conduct here. Though the patents were corrected to add unnamed inventors, such corrections are permitted by 35 U.S.C. § 256 and "shall not invalidate the patent" at issue. *Id*. Defendants have not shown any misrepresentation made with deceptive intent or that the patents would not have issued but for some misrepresentation. *See U.S. Water Serv.*, 843 F.3d at 1354. There are no facts to create a genuine dispute as to inequitable conduct, and Covves is entitled to summary judgment on that issue.

## VI.    Defendants' Imitation Unicorns Infringe Covves' Patents-in-Suit

The undisputed facts show Defendants sold Imitation Unicorns with an overall appearance substantially similar to Covves' patented designs.

/ / /

### A.    Substantial Similarity Test for Infringement

Infringement of a design patent is the "unauthorized manufacture, sale, or use of an article embodying the patented design or any colorable imitation thereof[.]" *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co*., 162 F.3d 1113, 1116-17 (Fed. Cir. 1998). "Design patent infringement requires a showing that the accused design is substantially the same as the claimed design." *LA Gear*, 988 F.2d at 1124. The criterion is deception of the ordinary observer, giving such attention as a purchaser usually gives, such that one design would be confused with the other. *Id*.; *Gorham Manufacturing Co. v. White*, 81 U.S. 511, 528, (1871). "In conducting such analysis the patented design is viewed in its entirety, as it is claimed." *LA Gear*, 988 F.2d at 1124. In applying this test, the ordinary observer is held to view the differences between the patented design and accused product in light of the prior art. *Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665, 676 (Fed. Cir. 2008).

"In providing for infringement by 'colorable imitation,' the statute recognizes that minor changes in a design are often readily made without changing its overall appearance." *Goodyear*, 162 F.3d at 1117. Thus, "minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Payless ShoeSource, Inc. v. Reebok Int'l Ltd*., 998 F.2d 985, 991 (Fed. Cir. 1993); *LA Gear*, 988 F.2d at 1125-26 (affirming finding of infringement where "placement of all the major design elements is the same, creating the same distinctive overall look").

Relatedly, it is erroneous to consider features of an accused product that are extraneous to the claimed design. *See Payless*, 998 F.2d 985 at 990 (finding trial court "improperly distinguished the accused footwear from the patented designs on the basis of features not in the claimed designs"). In *Payless*, the Federal Circuit held the lower court erred in finding the defendant's shoes distinguishable from the patented design on the basis of colors, logos, and graphics that were present on the accused shoes but were not part of the claimed design. *Id*. ("None of those cited

features, however, is part of the claimed designs and thus they may not serve as a valid basis for comparison in a design patent infringement analysis.").

**B.    Defendants Sold Floats That Infringe the '617 Patent**

The '617 patent is properly construed as the ornamental design for an inflatable toy, as shown and described in figures 1-6 of the patent. SUF ¶ 35. It is undisputed that Defendants in total sold four different accused unicorn pool floats. SUF ¶¶ 8-11. Covves' expert, Mr. Delman, conducted a thorough infringement analysis of *every figure* of the '617 patent as compared to each accused float. SUF ¶ 36. A selection of side-by-side comparisons is below.





| Figure 6 | Small Ring Float Photo 6 |
|---|---|

In this comparison of views, the overall visual impression of the Accused Product is more than substantially similar to the patent at issue. The tall conical horn and shorter conical ears protruding proximately perpendicular to the head surfaces, rounded head which transitions without interruption or visible transition to the ovoid neck, and bulbous tail featuring a prominent S-curve in its upper surface as it tapers to a point, appear nearly identical to the ornamental design of the patent at issue. The head of the Accused Product is shown to have a slightly more squared nose shape in this view, the ears of the accused product are a bit taller, and the mane is more substantial and extends further down the back of the neck than the mane of the patented design, but these trivial and insignificant differences are not relevant to whether the two designs are substantially similar.

Mr. Delman properly analyzed every figure of the patent and the accused floats, compared the overall impression of the designs as a whole, and found that each accused Imitation Unicorn infringes the '617 patent. SUF ¶ 36.

The conclusion that the Imitation Unicorns appropriate the novel features of the patented design, *see Avia*, 853 F.2d at 1565, is further confirmed when compared with the prior art. SUF ¶ 37. For example:



| Figure 6 | Large Raft Float Photo 6 | Meyer Fig. 1 |
|---|---|---|

From this three-way comparison of analogous views, the Accused Product appears substantially more similar to the ornamental design claimed in the '617 patent than it does to the nearest prior art. In this view, the '617 patent and the Accused Product both present the overall impression of a streamlined, simplified unicorn with smooth, rounded heads, conical horns and ears, tubular necks, manes shaped in a constant, unadorned arc, and bulbous S-curved tails which extend horizontally as they taper to a point.

In contrast, in this view the nearest prior art evidences a much more realistic representation of a horse, not a unicorn. The nearest prior art design incorporates a mouth, nostrils, wavy mane, complex multi-part bridle, and thin, stringy tail which hangs straight downward.





As Mr. Delman's analysis proves, there is no genuine dispute that an ordinary observer would perceive the design in the '617 patent and the unicorn floats sold by Defendants to be substantially similar, a conclusion bolstered by comparison to the prior art. SUF ¶¶ 36-37. Covves is therefore entitled to summary judgment that Defendants' Imitation Giant Unicorn Floats infringe the '617 patent. *See Avia*, 853 F.2d at 1565.

/ / /

## C.   Defendants Sold Cupholders That Infringe the '370 Patent

The '370 patent is properly construed as the ornamental design for an inflatable beverage holder, as shown in figures 1-6 of the patent. SUF ¶ 38. It is undisputed certain Defendants sold accused Beverage Boats. SUF ¶ 11. Covves' expert analyzed every figure of the '370 patent as compared to the accused product, and found the overall designs to be substantially similar. SUF ¶ 39. For example:



The conclusion the Beverage Boat appropriates the novel features of the '370 patent design is confirmed when compared with the prior art. SUF ¶ 40. For example:



As Mr. Delman's analysis proves, the design of the Beverage Boat is more

than substantially similar to the design of the '370 patent in the eyes of an ordinary observer. SUF ¶ 39. That conclusion is strengthened by a comparison to the prior art. SUF ¶ 40. Summary judgment of infringement in Covves' favor is thus warranted. *See Avia*, 853 F.2d at 1565.

### D.   Defendants' Expert Erred on Noninfringement Analysis

For at least the following reasons, Ms. McHale's noninfringement analysis is also at odds with precedent and should be disregarded, even if she were qualified.

*First*, Ms. McHale based her opinions on comparing just one or two patent figures and one or two photos of a single accused product. SUF ¶¶ 41-42. "[T]he 'ordinary observer' analysis is not limited to . . . a subset of the drawings, but instead *must* encompass the claimed ornamental features of *all figures* of a design patent." *Contessa Food Prods., Inc. v. Conagra*, 282 F.3d 1370, 1379 (Fed. Cir. 2002) (emphasis added). The "comparison must extend to all ornamental features visible during normal use of the product . . . ." *Id.* at 1380. Ms. McHale's failure to compare all accused products to every patent figure is a critical flaw.

*Second*, Ms. McHale isolated design elements such as head, horn, neck angle, mane, and tail shape and position, and opined an ordinary observer would find single elements different on the one accused float she compared. SUF ¶ 43. However, an infringement analysis must focus on the patented design "viewed in its entirety" and "whether the effect of the whole design is substantially the same." *Payless*, 998 F.2d at 990-91 (holding trial court "erred by failing to consider the ornamental aspects of the design as a whole and not merely isolated portions of the patented design."). Ms. McHale failed to consider the designs in their entirety, a consistent flaw throughout her report.

*Third*, Ms. McHale relied heavily on the Imitation Unicorns' painted-on graphics to distinguish them from the claimed designs. SUF ¶ 44. The Federal Circuit held in *Payless* that features not part of the claimed design "may not serve as a valid basis for comparison in a design patent infringement analysis." 998 F.2d

at 990. The '617 patent does not claim particular colors or exterior graphics, and the '370 patent claims eyes but no other colors or graphics. SUF ¶¶ 18, 28. Ms. McHale's consideration of those extraneous, unclaimed features flaws her analysis. These are all reasons Ms. McHale's opinions are unreliable. As the opinions of Joel Delman—Covves' qualified expert—show, in the eyes of an ordinary observer the Imitation Unicorns are substantially similar to, and infringe, the patented designs.

## VII.    Summary Judgment on Total Profits is Appropriate

Covves is entitled to recover the "total profit" earned by Defendants on sales of Imitation Unicorns. 35 U.S.C. § 289. "Profits are based on gross revenue after deducting certain allowable expenses." *Nordock, Inc. v. Systems Inc.*, 803 F.3d 1344, 1354 (Fed. Cir. 2015). The trial court has discretion to decide whether to use fixed expenses to offset profits. *Rocket Jewelry Box, Inc. v. Quality Int'l Packaging, Ltd.*, 250 F.Supp. 2d 333, 340 (S.D.N.Y. 2003) (citing *Schnadig Corp. v. Gaines Mfg. Co., Inc.*, 620 F.2d 1166, 1170-71 (6th Cir. 1980)). However, "[t]he guiding principle must always be . . . that the patentee recover every dollar of advantage realized by the infringer from the infringement." *Schnadig*, 620 F.2d at 1175. Section 289 "requires the disgorgement of the infringers' profits to the patent holder, such that the infringers retain no profit from their wrong." *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1448 (Fed. Cir. 1998).

### A.    Defendants Have Burden of Proving Deductible Expenses

The starting point of this calculation is gross revenue; it is the infringer's burden of "proving costs deductible from revenues in arriving at a profit figure." *Id.* at 1447; *Nordock*, 803 F.3d at 1354; *Bergstrom v. Sears, Roebuck & Co.*, 496 F.Supp. 476, 497 (D. Minn. 1980) ("The burden of establishing the nature and amount of these costs, as well as their relationship to the infringing product, is on the defendants."). In *Nike*, the Federal Circuit affirmed the trial court's decision not to deduct the infringer's claimed overhead expenses, because the infringer failed to produce the "actual business records" it used to support its computations. 138 F.3d

at 1447; *see also Rocket Jewelry*, 250 F.Supp. 2d at 341 (explaining overhead expenses only deductible if there is sufficient nexus with the sale of the infringing item). *Nike* also held taxes are not deductible costs and a damages award should be based on pre-tax profits. *Id*. at 1448; *see also Schnadig*, 620 F.2d at 1170-71. Any doubts resulting from an infringer's failure to present adequate proof of its costs are resolved in favor of the patentee. *Rocket Jewelry*, 250 F.Supp. 2d at 341.

### B.  Parties Agree on Revenues and Cost of Goods; Defendants Completely Failed to Meet Burden on Other Expenses

Here, there is no dispute as to gross revenues Defendants earned on sales of Imitation Unicorns or cost of goods sold. SUF ¶ 46. Total profit, equaling revenue minus cost of goods sold, is shown below. SUF ¶ 47.

| Name | Total Profit |
|------|-------------|
| Target | $2,458,368 |
| Kohl's | $14,940 |
| Saks & Company | $9,306 |
| Express | $4,676 |
| Dillard's | $4,512 |
| West Marine | $1,345 |
| Zulily | $1,285 |
| Nordstrom | $926 |
| Tilly's | $778 |
| **Total** | **$2,496,136** |

Kohl's, Saks & Company, Express, West Marine, Zulily, and Nordstrom have not disputed these total profits or sought to deduct other expenses. SUF ¶ 49. Target deducted taxes from its own computation of net profits, which is not allowed as a matter of law. SUF ¶ 50; *Nike*, 138 F.3d at 1447. Further, Target and Dillard's

attempt to deduct a broad variety of disallowed expenses including bonuses, incentives, legal affairs, depreciation, and rent. SUF ¶ 51. Target also seeks to deduct store, headquarter, and distribution overhead. *Id*. However, Target and Dillard's have completely failed to prove those costs have a nexus to the accused products. SUF ¶¶ 51-52. Neither has produced actual business records to support its computations, even after being ordered to do so following a motion to compel sales and profits data by Covves. SUF ¶ 52. Target's designee was completely unable to testify to computations of costs in a Rule 30(b)(6) deposition. SUF ¶ 53. The Court should exercise its discretion to disregard all of Target's and Dillard's claimed deductions other than cost of goods, because they failed to produce the "actual business records" used to derive and support their computations. *Nike*, 138 F.3d at 1447. As in *Nike*, Target and Dillard's have not met their burden of proving any overhead and fixed expenses are properly deductible. SUF ¶¶ 51-53. There thus is no genuine dispute that total profits as proven, based on Defendants' own data, are $2,496,136, and Covves is entitled to summary judgment in that amount.

## Conclusion

Defendants made nearly $2.5 million selling Imitation Unicorns that are substantially similar to Covves' novel designs. Covves respectfully requests that the Court grant summary judgment finding the patents-in-suit valid and infringed and awarding Covves the total profits of Defendants.

DATED:  November 1, 2019

Respectfully submitted,

THE MCARTHUR LAW FIRM, PC

By: */s/ Thomas Dietrich*
Stephen McArthur
Thomas Dietrich
*Attorneys for Plaintiff Covves, LLC*

## CERTIFICATE OF SERVICE

Case Name: *Covves, LLC v. Dillard's, Inc. et al.*
Case No.: 2:18-cv-8518-RGK-AFM

IT IS HEREBY CERTIFIED THAT:

      I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 11400 West Olympic Boulevard, Suite 200, Los Angeles, CA 90064. I am not a party to the above-entitled action.

      I have caused service of the following documents, described as:

**PLAINTIFF'S MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

on the following parties by electronically filing the foregoing on November 1, 2019, with the Clerk of the District Court using its ECF System, which electronically notifies them.

Morgan Nickerson              *Attorneys for Defendants*
K&L Gates LLP
Morgan.Nickerson@klgates.com
1 Lincoln St.
Boston, MA 02111

Caitlin C. Blanche
K&L Gates LLP
caitlin.blanche@klgates.com
1 Park Plaza, 12th Floor
Irvine, CA 92618

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:   11/1/2019       By:   */s/ Thomas Dietrich*
                                Thomas Dietrich