Caitlin C. Blanche
(State Bar No. 254109)
caitlin.blanche@klgates.com
**K&L Gates LLP**
1 Park Plaza, Twelfth Floor
Irvine, CA 92614
Tel: (949) 623-3526
Fax: (949) 253-0902

Christopher Centurelli
Jeffery S. Patterson
Morgan Nickerson
Natasha C. Pereira
(Admitted *pro hac vice*)
**K&L Gates LLP**
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Tel: (617) 261-3100
Fax: (617) 261-3175

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COVVES, LLC,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>DILLARD'S, INC. a Delaware Corporation;<br>KOHL'S CORPORATION, a Wisconsin Corporation;<br>SAKS & COMPANY LLC., a Delaware Corporation;<br>TARGET BRANDS, INC. a Minnesota Corporation;<br>EXPRESS INC., a Delaware Corporation;<br>TILLY'S, INC. a Delaware Corporation;<br>NORDSTROM, INC., a Washington Corporation;<br>WEST MARINE, INC., a Delaware Corporation,<br>and<br>ZULILY, INC. a Delaware Corporation.<br><br>　　　Defendants. | **Case No. 2:18-cv-08518-RGK**<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF U.S. PATENT NOS. D787,617; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>*Separate Statement of Uncontroverted Facts and Conclusions of Law; Declaration of Maureen McHale, Peter Engler, Getty Images, Inc., Robert Jensen, Hasbro, Inc, and [Proposed] Judgment filed concurrently herewith* |

PLEASE TAKE NOTICE THAT on Monday, December 9, at 9:00 a.m., or as soon as the matter may be heard in the courtroom 850, 8th Floor, of the Honorable R. Gary Klausner at the United States District Court for the Central District of California at the above-entitled court, located at 255 East Temple Street, Los Angeles, CA 9001 2-3332, Defendants DILLARD'S, INC., KOHL'S CORPORATION, SAKS & COMPANY LLC, TARGET BRANDS, INC., EXPRESS INC., TILLY'S, INC., NORDSTROM, INC., WEST MARINE, INC., AND ZULILY, INC. (collectively, "Defendants") will and do hereby move that the Court grant the Summary judgment of non-infringement and/or invalidity of *U.S. Patent Nos. D787,617* ("D'617").

This Motion is based upon this Notice of Motion and Motion, Memorandum of Points and Authorities, the Statement of Uncontroverted Facts and Conclusions of Law;  the supporting Declaration of Maureen McHale and attached exhibits thereto, the supporting Declaration of Robert Jensen and attached exhibits, the supporting Declaration of Peter Engler, and attached exhibit thereto, the supporting Declaration of Hasbro, Inc., and attached exhibit thereto; the supporting Declaration of Getty Images, Inc., and attached exhibit thereto, other pleadings and papers filed in this action, and other arguments and evidence that may properly com e before the Court. Defendants move for summary judgment on the ground that there are no genuine issues as to any material fact.

This Motion is made following several telephone discussions with plaintiff counsel pursuant to *District Local Rule 7-3*. Last effort to meet and confer took place on October 24, 2019 by telephone.

Respectfully submitted,

Dated: November 1, 2019

By */s/ Christopher Centurelli*
Caitlin C. Blanche
(State Bar No. 254109)
caitlin.blanche@klgates.com
K&L GATES LLP
1 Park Plaza, Twelfth Floor
Irvine, CA 92614
Tel: (949) 623-3526
Fax: (949) 253-0902

Christopher Centurelli (*pro hac vice*)
Jeffery S. Patterson (*pro hac vice*)
Morgan Nickerson (*pro hac vice*)
Natasha Pereira (*pro hac vice*)
christopher.centurelli@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Tel: (617) 261-3100
Fax: (617) 261-3175

*Attorneys for Defendants*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................1

II.     BACKGROUND FACTS ........................................................................1

        A.      Pool Floats, Unicorns and Inflatable Unicorns are Old ........................1

        B.      D'617 - Filing Date and Claim .................................................3

        C.      BigMouth's Accused Products ...............................................3

III.    LEGAL BACKGROUND..........................................................................5

        A.      Summary Judgment Is Favored In Design Patent Cases .....................5

IV.     LEGAL ARGUMENT ............................................................................9

        A.      BigMouth's Floats Are Plainly Dissimilar To D'617.........................9

        B.      BigMouth's Floats Look More Similar to the Prior Art ...................22

        C.      Plaintiff's D'617 Patent Should Be Invalidated If The Accused
                Products Infringe...................................................................24

V.      CONCLUSION .....................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applied Arts Corp. v. Grand Rapids Metalcraft Corp.*,
    67 F.2d 428 (6th Cir. 1933) ....................................................................... 8

*Arminak and Assoc., Inc. v. Saint-Gobain Calmar, Inc.*,
    501 F.3d 1314 (Fed. Cir. 2007) ......................................................... 9, 10

*Boiling Point Grp., Inc. v. Fong Ware Co.*,
    No. 2:16-CV-01672, 2017 WL 2930838 (C.D. Cal. Apr. 27, 2017) .....6-8, 12, 13

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008) .................................... 6-9, 11-13, 22, 23

*Elmer v. ICC Fabricating Inc.*,
    67 F.3d 1571 (Fed. Cir. 1995) ....................................................... 6, 7, 11

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
    No. 1:11-CV-871, 2014 WL 10212172 (S.D. Ohio Jan. 22, 2014) ..................... 8

*Ethicon Endo–Surgery, Inc. v. Covidien, Inc.*,
    796 F.3d 1312 (Fed. Cir. 2015) ....................................................................... 7

*Gorham Co. v. White*,
    81 U.S. 511 (1871) .................................................................................... 6, 10

*Harel v. K.K. Int'l Trading Corp.*,
    994 F. Supp. 2d 276 (E.D.N.Y. 2014) ......................................................... 9

*High Point Design LLC v. Buyers Direct, Inc.*,
    730 F.3d 1301 (Fed. Cir. 2013) ................................................................. 24

*HR U.S., LLC v. Mizco Int'l, Inc.*,
    2009 WL 890550 (E.D.N.Y. Mar. 31, 2009) ......................................... 8, 9

*In re Mann*,
    861 F.2d 1581 (Fed. Cir. 1988) ......................................................... 11, 22

*Lee v. Dayton-Hudson Corp.*,
    838 F.2d 1186 (Fed. Cir. 1988) ................................................................. 14

*Minka Lighting, Inc. v. Maxim Lighting Int'l, Inc.*,
    No. 3:06-CV-995-K, 2009 WL 691594 (N.D. Tex. Mar. 16, 2009) ................. 15

*MRC Innovations, Inc. v. Hunter Mfg., LLP*,
    747 F.3d 1326, 1331 (Fed. Cir. 2014) ................................................... 24

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
   122 F.3d 1396 (Fed. Cir. 1997) ............................................................ 7

*Pac. Handy Cutter, Inc. v. Quick Point, Inc.*,
   No. SA-CV- 96-399-GLT, 1997 WL 607501 (C.D. Cal. July 7, 1997) ............. 11

*Richardson v. Stanley Works, Inc.*,
   597 F.3d 1288 (Fed. Cir. 2010) ....................................................... 7, 9

*Sofpool LLC v. Kmart Corp.*,
   No. Civ. S-10-3333, 2013 WL 2384331 (E.D. Ca., May 30, 2013) ... 6, 11, 13, 14

*Wing Shing Prods. Co. v. Sunbeam Prods.*,
   665 F. Supp. 2d 357 (S.D.N.Y. 2009) .......................................... 8, 11, 14, 22, 23

*Zidell v. Dexter*,
   262 F. 145, 146 (9th Cir. 1920) ......................................................... 24


**Statutes**

*25 U.S.C. 103* .................................................................................. 21


**Other Authorities**

*District Local Rule 7-3* ....................................................................... 2

*Fed. R. Civ. P. 56(c)* .......................................................................... 6

*Patent No. 1,566,898* .......................................................................... 2

*Patent No. D302,718* ........................................................................... 2

*Patent No. D726,273* ........................................................................... 4

*Patent No. D759,182* ........................................................................... 4

*Patent No. D775,295* ........................................................................... 4

*Patent No. D783,370* ........................................................................... 1

*Patent No. D787,617* ....................................................... 1, 3-5, 16-22, 24, 25

*Patent No. US 2005/0233676 A1* .............................................................. 3

## I.     INTRODUCTION

Covves, LLC ("Covves" or "Plaintiff") asserts that all nine retail Defendants (collectively "Defendants") infringe U.S. Design Patent D787,617 ("D'617") by offering for sale and selling four models of unicorn pool floats supplied by BigMouth, Inc. ("BigMouth"). SF 1, 3-6.[1] BigMouth's pool floats ("BigMouth's Floats" or the "Accused Products"), however, are not substantially the same as the design claimed by D'617 such that an ordinary observer would be deceived into purchasing them thinking it was the float depicted by D'617. In fact, the Accused Products and the claimed design are plainly dissimilar—with D'617 claiming a ***passive, docile unicorn*** and BigMouth's Floats portraying ***active, attentive unicorns***. SF 8-12, 13. Consequently, the Court should grant Defendants summary judgment of non-infringement of D'617.[2]

## II.    BACKGROUND FACTS

### A.     Pool Floats, Unicorns and Inflatable Unicorns are Old

Animal-shaped pool floats are old and have existed since at least the 1920s. SF 14. Early novelty floats appeared in patents, in photographs of 1940s Hollywood actresses, and in the marketplace well before Plaintiff filed D'617. SF 15.

---

[1] "SF" refers to Defendants' Statement of Uncontroverted Facts and Conclusions of Law filed in support of this motion.

[2] Covves' asserts in Count 2 that a subset of Defendants infringe U.S. Patent No. D783,370 ("D'370") by selling a different unicorn float, specifically a beverage float, supplied by BigMouth.  SF 2, 7.  Those Defendants also move for Summary Judgment with respect to D'370 in a separate motion, filed concurrently herewith.

Recognizing animal-shaped pool floats as a used-and-tired concept is not disputed. SF 16. Example prior art pool floats are shown below:



| U.S. Patent No. 1,566,858 (filed Dec. 22, 1925). | *Rita on Water*, Getty Images, No. 3352151 (1940) | U.S. Patent No. D302,718 (filed Oct. 24, 1986). |
| --- | --- | --- |

Likewise, the unicorn design is old. Since antiquity, the unicorn motif has embodied specific and expected design elements, including a horse-shaped head, eyes, mouth, nose, ears, neck, mane, body, and tail. SF 17. The vast breath of prior art confirms the repetition of these design features which have become central to depicting unicorn characters. SF 18. Example prior unicorns are shown below:

| *The Unicorn in Captivity* (from the Unicorn Tapestries), 1495-1505. | Disney Fantasia, *Pastoral Symphony* (1940) | *Unicorn from Old State House in Boston*, Alamy Stock Photo, Photo from 2005. |
| --- | --- | --- |
| *Windy*, 1984 Hasbro Industries, Inc. | *Mean Unicorn* by Getty Images. Stock illustration ID: 123681782, Upload date: September 02, 2011 | "How To Draw A Unicorn (A Cute and Cuddly One)" Art for Kids Hub, March 20, 2014 |

Even combined, the idea of a unicorn pool float is not unique. For example, by 2005, designers recognized that animal-like inflatable toys could be easily adapted into unicorns when Patent US 2005/0233676A1, filed on April 15, 2005, noted that an inflatable toy animal "may also be a fictional animal, such as, for example, a dragon or ***unicorn***." SF 19, (emphasis added).

### B.   D'617 - Filing Date and Claim

Adam Krepack, an attorney with no design training, filed the patent application for D'617 with the United States Patent Office on August 24, 2015 (the "D'617 application"). SF 20. The Patent Office reviewed the D'617 application, initially objected to it, and required an adjustment to the claimed tail because "the change of shape and slope of the tail" was not consistently depicted. SF 21. To gain allowance, Krepack submitted a new drawing further limiting the claimed shape and slope of the tail. SF 22. On May 23, 2017, the Patent Office granted D'617. SF 23. D'617 claims "The ornamental design for an ***inflatable toy***, as shown and described." SF 1.

### C.   BigMouth's Accused Products

BigMouth is a well-known designer and distributor of leisure lifestyle products, including novelty pool floats. SF 24. BigMouth has produced pool floats since at least 2012, including well know floats such as the Giant Frosted Donut Pool Float, the Ice Cream Sandwich float, the Flamingo Pool Float, and the Giant Pizza Slice Pool Float, all pictured below, and has been issued over twenty United States Patents. SF 25.

| | | | |
|---|---|---|---|
| Donut Float (2012) | US Patent No. D726273 Filed May 7, 2014 | US Patent No. D759,182 Filed March 16, 2015 | US Patent No. D775,295 Filed March 16, 2015 |

Covves alleges four[3] BigMouth floats infringe D'617: (1) the Giant Unicorn Pool Float; (2) the Giant Sparkly Unicorn Float; (3) the Unicorn Pride Float; and (4) Sparkles The Unicorn Lil Float. SF 3-6. The Giant Unicorn Pool Float is shown below as a representative example:



| | |
|---|---|
| Unicorn Pool Float (Left-Facing) | Unicorn Pool Float (Right-Facing) |

Since this action was filed, Defendants have, through counsel, tried to explain to Plaintiff that they did not infringe on D'617 because BigMouth's Floats have different design elements, common to all unicorns, and are plainly distinct from D'617. SF 8-11, 33-47. Most significantly, BigMouth's Floats are ***active unicorns*** suggested by their upward curved tail which are attached at the top of the swim ring for an attentive pose. SF 26. Conversely, D'617 showcases a ***passive unicorn*** design

---

[3] Covves' Expert Report identifies four Accused Products as infringing D'617. SF 3-6. Covves' Second Amended Complaint had previously identified BigMouth's Beverage Boat as also infringing D'617. Should Covves attempt to maintain that BigMouth's Beverage Boat infringe D'617, it is plainly dissimilar and does not infringe D'617 for at least the same reasons as the Accused Products stated below.

indicated by its lower attached and downward sweeping tail for a relaxed pose. SF 27. In addition to this stark tail difference which impacts the overall design by changing the float's mood, there are many additional elements that distinguish the designs. For example, BigMouth's Floats have: a more active, vertical neck angle; facial features not present in D'617, such as a winking and open eye and nostrils; a different narrower and squarish head shape; different larger ears; a different longer and thicker mane with wavy lock markings; different painted-on wings; and a spiraled horn. SF 28.



| Fig. 6 of D'617 Patent | BigMouth's Giant Unicorn Pool Float |

It is also important that the Patent Office did not consider very relevant prior art in the prosecution of D'617. Particularly, the following prior art was not before the Patent Office and demonstrates design elements used in D'617 are old. SF 29-32.

  

| *Rita on Water*, Getty Images, No. 3352151 (1940) | *Mean Unicorn* by Getty Images, Stock illustration ID: 123681782, Upload date: September 02, 2011 | "How To Draw A Unicorn (A Cute and Cuddly One)" Art for Kids Hub, March 20, 2014 |

## III.   LEGAL BACKGROUND

### A.   Summary Judgment Is Favored In Design Patent Cases

Summary judgment often applies in design patent cases. Fed. R. Civ. P. 56(c). Design patents are entitled to almost no scope beyond the precise content of the design patent's drawing. *Elmer v. ICC Fabricating Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995) (reversing denial of summary judgment of non-infringement). As a threshold matter, a patented design does not cover the universe of designs that remotely resemble the claim. Rather, a design patent merely protects the ornamental features the patentee recites and leaves other ornamental design features to the imagination of other designers. *See Sofpool LLC v. Kmart Corp.*, No. CIV-S-10-3333, 2013 WL 2384331, at *1, 5 (E.D. Cal., May 30, 2013) (granting summary judgement of non-infringement noting the patent protects the shapes and proportions the patentee chooses, not every conceivable shape and proportion that could arise).

A design patent is infringed only "[i]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as ***to deceive*** such an observer, inducing him to purchase one supposing it to be the other." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 683 (Fed. Cir. 2008) (affirming summary judgment of non-infringement) (citing *Gorham Co. v. White,* 81 U.S. 511, 528 (1871)).

As such, it is quite common for the court, acting as the 'ordinary observer,' to find non-infringement based solely on a side-by-side comparison of the design patent images and the images of the product. *Boiling Point Grp., Inc. v. Fong Ware Co.*, No. 2:16-CV-01672, 2017 WL 2930838, at *6 (C.D. Cal. Apr. 27, 2017). Where "the

claimed design and the accused designs are **sufficiently distinct** and **plainly dissimilar**, the patentee fails to meet its burden of proving infringement as a matter of law." *Id.* at *3 (deciding summary judgment of non-infringement) (citing *Ethicon Endo–Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015)). If the claimed and accused designs are not plainly dissimilar, the inquiry may benefit from comparing the claimed and accused designs with prior art to identify differences that are not noticeable in the abstract but would be significant to the hypothetical ordinary observer familiar with the prior art. *Egyptian Goddess*, 543 F.3d at 678. Ultimately, the burden rests with the patentees (Plaintiff) to demonstrate that the patented design and the accused designs are not "plainly dissimilar." *Id.*

The ordinary observer test is applied by comparing similarities in overall design, that is overall ornamental visual impression, rather than the broader general design concept or functionality of the products. *See OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). Similarly, in situation where the claimed design includes several elements, the ordinary observer test must be applied by comparing similarities in overall designs, not similarities of ornamental features in isolation. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010).

To determine whether an ordinary observer would be deceived, the trier of fact looks solely to features that are non-functional; features that are functional are not relevant to the test. *Elmer*, 67 F.3d at 1577. Where a design maintains both ornamental and functional features, the court will exclude the functional aspects

7

when construing the claims. *See Boiling Point Grp., Inc.*, 2017 WL 2930838, at *6.

In an infringement analysis, the ordinary observer "though not an expert, has reasonable familiarity with such objects, and is capable of assessing the similarity of the patented and accused designs in light of the similar objects in the prior art. *Egyptian Goddess*, 543 F.3d at 675 (citing *Applied Arts Corp. v. Grand Rapids Metalcraft Corp.*, 67 F.2d 428, 430 (6th Cir. 1933)). As is the case here, the "ordinary observer" may be a retail or online purchaser of novelty items and would be attuned to subtle differences between the accused and patented designs, especially given the vast breadth of prior art.

Given the limited scope of protection afforded design patents, summary judgment of non-infringement is particularly apt. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, No. 1:11-CV-871, 2014 WL 10212172, at *3 (S.D. Ohio Jan. 22, 2014) ("Courts frequently grant summary judgment of non-infringement in design patent cases"). To be sure, ***even expert testimony cannot create a triable of fact*** where the accused design is clearly distinguishable from the patented design. *HR U.S., LLC v. Mizco Int'l, Inc.*, No. CV-07-2394, 2009 WL 890550, at *13 (E.D.N.Y. Mar. 31, 2009); *see Egyptian Goddess*, 543 F.3d at 681-82 (granting summary judgment of non-infringement over opposing expert affidavit); *Wing Shing Prods. Co. Ltd. v. Sunbeam Prods., Inc.*, 665 F. Supp. 2d 357, 368 (S.D.N.Y. 2009) (summary judgment of non-infringement granted over competing expert testimony).

Courts routinely grant summary judgment through a visual determination that the compared products are plainly dissimilar despite expert testimony purporting to establish factual disputes. *See HR U.S. LLC*, 2009 WL 890550, at \*13 ("[E]xpert testimony submitted by a Plaintiff cannot create a material issue of fact where the visual comparison reveals that the alleged infringing product is not substantially similar . . . ."); *see also Harel v. K.K. Int'l Trading Corp.*, 994 F. Supp. 2d 276, 284 (E.D.N.Y. 2014) ("[B]ecause a visual comparison alone is sufficient to determine non-infringement [], the Court finds that the expert testimony submitted by plaintiffs cannot create a material issue of fact, where the visual comparison reveals that the alleged infringing [product] is not substantially similar to the [claimed design].").

To succeed, the patentee must prove by a preponderance of the evidence that an ordinary observer, familiar with the prior art designs, ***would be deceived*** into believing that the accused product is the same as the patented design. *See Richardson*, 597 F.3d at 1295.

## IV.   LEGAL ARGUMENT

### A.   BigMouth's Floats Are Plainly Dissimilar To D'617

Courts evaluate design-patent infringement in a two-step process. *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1319 (Fed. Cir. 2007), abrogated on other grounds by *Egyptian Goddess*, 543 F.3d 665.   Courts first "construe the claims of the design patent to determine their meaning and scope." *Id.* Courts then "compare the construed claims to the accused design." *Id.* at 1320.

Once construed, Covves must prove that an ordinary observer, conversant with the prior art, would be deceived into buying an Accused Product thinking that it was the same design as the patented design. *See Arminak & Assocs., Inc.*, 501 F.3d at 1324 ("This test requires an objective evaluation of the question of whether a hypothetical person called the 'ordinary observer' would find substantial similarities between the patented design and the accused design, so as to be deceived into purchasing the accused design believing it is the patented design."). The Supreme Court so held in *Gorham Co.*, 81 U.S. at 528: "We hold, therefore, that if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." Therefore, a finding of ***deception is required***:

> It is persons of the latter class [i.e., ordinary observers] who are the principal purchasers of the articles to which designs have given novel appearances, and if they are misled, and induced to purchase what is not the article they supposed it to be, if, for example, they are led to purchase forks or spoons, ***deceived by an apparent resemblance into the belief that they bear the —cottage design***, and, therefore, are the production of the [patent holder]..., when in fact they are not, the patentees are injured, and that advantage of a market which the patent was granted to secure is destroyed. *Id.* (emphasis added).

As a matter of law, "a design patentee limits the scope of his patent by including ornamental features that give the overall design a distinctive ornamental appearance." *Sofpool LLC*, 2013 WL 2384331, at *1 (citing *Elmer*, 67 F.3d at 1577).

D'617 Patent does not cover the universe of unicorn pool float designs that remotely resemble it. *See Elmer*, 67 F.3d at 1577 (patentee included in its drawings certain features that gave the design "a distinctive ornamental appearance," and "thus effectively limited the scope of its patent claim by including those features in it"). In other words, D'617 Patent does not grant Plaintiff a monopoly over all possible variations of a unicorn pool floats.

Although courts recognize that the designs do not have to be identical to infringe, they also recognize that the scope of a design patent is extremely narrow. *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988); *see also Pac. Handy Cutter, Inc. v. Quick Point, Inc*., No. SA-CV- 96-399-GLT, 1997 WL 607501, at *1 (C.D. Cal. July 7, 1997) ("Design patents are extremely narrow in scope."). This is especially true when the patent falls in a "field…crowded with many references." *Wing Shing Prods. Co. Ltd.*, 665 F. Supp. 2d at 364–65.

*Egyptian Goddess* provides the standard on infringement for design patents. In this case, the Federal Circuit, *en banc*, affirmed summary judgment of non-infringement holding that the singular "difference between the accused design [right] and the patented design [left] cannot be considered minor." *Egyptian Goddess*, 543 F.3d at 678.

11

| Patented Design | Accused Product |

The court examined two nail buffer designs, and noted that the claimed design had raised, abrasive pads on *three* sides while the accused design had raised, abrasive pads on all *four* sides. *Id.* at 680. The court acknowledged that the "general shape of the accused nail buffer… [was] the same as that of the patented buffer design." *Id.* at 682. However, the Federal Circuit ultimately agreed with the district court that "a fourth side without a pad [was] not substantially the same as a fourth side with a pad." *Id. Egyptian Goddess* thus confirms the restricted, narrow scope of a design patent as the court affirmed a summary judgement finding that the ordinary observer could identify the singular distinction between the similar nail buffer designs.

Relying on *Egyptian Goddess,* this Court held as a matter of law that the accused hot-pot stove (right) was "***sufficiently distinct***" from the patented stove (left), to grant summary judgment of non-infringement. *Boiling Point Grp., Inc.*, 2017 WL 2930838, at *6. After identifying six ornamental differences, this court declared that the ordinary observer would not be deceived into purchasing the accused product because the designs were not "so much alike that in the market and with purchasers they would pass for the same thing." *Id.*



| Patented Design | Accused Product |

This Court acknowledge many similarities between the hot-pot designs, including: the "roughly… same proportions," "square tops [with] raised rims and a large circular opening in the center," "openings on the sides and on the frustoconical bowl," and "four equally-spaced, dual-tentacle prongs around the top rim of the frustoconical bowl." *Id.* at 11. Notwithstanding these similarities, this ourt identified "significant ornamental differences" and concluded that these "differences, taken together, create a visual impression of the [accused product] sufficiently distinct from that of the…claimed design." *Id.* at 12-13. As such, no ordinary observer would be deceived or induced into purchasing the accused product supposing it to be the claimed design. *Id.* at 15 (citing *Egyptian Goddess,* 543 F.3d at 670).

Similarly, in deciding summary judgment of non-infringement, the court in *Sofpool LLC*, 2013 WL 2384331, found the patented drawings (left) and the accused design (right) plainly distinct.



| Patented Design | Accused Product |

The *Sofpool* court observed that both pools shared an oval shaped design, with a tubular top and featured side struts all around the sides. Although there were many similarities, there also existed many differences, particularly the two designs have completely different proportions. The *Sofpool* court elaborated further by stating that:

> Indeed, the accused design is less than four (4) times longer… A design patent cannot, of course, claim every conceivable shape and proportion that could arise from its basic design. But that would appear to be the point of permitting design patents in the first place. ***The patent protects the shape and proportion the patentee chooses, but leaves other shapes and proportions to the imagination of other designers.***

*Id.* at *5 (quoting *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988)) (emphasis added). Given the foregoing, the *Sofpool* court held "that no reasonable juror could find that an ordinary observer would conclude that the taller, more elegant accused pool embodies the squat pool plaintiff patented..." *Id.*

Likewise, in *Wing Shing Prods. Co. Ltd.*, 665 F. Supp. 2d 357, the court identified "evident differences" between the design of the accused coffeemaker (right) and the patented coffeemaker (left) to find non-infringement as a matter of law. When engaging in a side-by-side analysis, the court isolated two "major" and "apparent" differences between the designs, namely the different bases and tops. *Id.* at 362. In addition to acknowledging the "manifest differences in the overall appearance," the court also consulted prior art. It further recognized that in the "cluttered world of drip-coffeemakers" the ordinary observer would consult the prior art for reference and be able to distinguish the designs. *Id.* at 364–65.

14



In *Minka Lighting, Inc. v. Maxim Lighting Int'l, Inc.*, No. 3:06-CV-995-K, 2009 WL 691594 (N.D. Tex. Mar. 16, 2009), the court examined the following accused light fixtures and concluded that no reasonable observer could confuse the accused designs (second and fourth) with the patented designs (third and fourth), awarding summary judgment for non-infringement. Regarding the first light fixture, the court identified four features that distinguished the designs that "would [have been] readily apparent to the ordinary observer." *Id*. at *5. The *Minka* court declared that the "aggregation of these differences create a distinct overall visual impression and overwhelm the similarities between the designs." *Id.* at *6. Similarly, the court also found the "silhouettes and contours" of the second light fixture to be "markedly distinct" thereby "leaving an overall dissimilar impression." *Id.* at *8.



15

Consistent with the above cases, BigMouth's Floats share similarities with D'617. However, like the accused products above, BigMouth's Floats maintain plainly distinct and unique shapes, slopes placements, and markings that create a dissimilar overall design that an ordinary observer would clearly recognize.

Here, D'617 claims should be construed as limited to "the ornamental design for an inflatable toy as shown" in Figures 1-6 excluding the functional aspects, like, the float ring depicted in dotted lines. When viewed under a ***proper*** construction, and just like the designs at issue in *Egyptian Goddess*, *Boiling Point Grp.*, *Sofpool*, *Wing Shing*, and *Minka Lighting*, BigMouth's Floats are ***plainly distinct*** from D'617.

The most obvious differences are different tail placement, the different neck slope, the facial features present in BigMouth's Floats, omitted from D'617, as well as different head shape, different mane shape and different markings of its other core design features. SF 33. As shown below, D'617, Figure 6, claims a simple unicorn design with a simplistic head, neck, horn, ears, mane, tail and no eyes or nostrils. Creating a "minimalist" unicorn was the stated intention of its inventor as recognized during Su's deposition. SF 34. In contrast, BigMouth's Floats are embellished with spiraled horns, wavy manes, winking and open eyes, and nostrils. SF 35. An ordinary observer would readily distinguish the simple D'617 claimed design from the ornate BigMouth Unicorn Pool Floats. SF 36.

Comparing Figure 6 of D'617, below, with BigMouth's Floats reveals the plainly visible disparities between the designs. Contrary to the claimed design,

BigMouth's Floats maintain distinct unicorn design elements with different shapes, slopes, proportions, placements, and markings. Table 1 shows Figure 6 of D'617 compared to the same view of the Accused Product.

| TABLE 1 | | | | |
|---|---|---|---|---|
| | | | | |
| Fig. 6 of D'617 Patent | BigMouth's Giant Unicorn Pool Float | BigMouth's Unicorn Pride Float | BigMouth's Giant Sparkly Unicorn Float | BigMouth's Sparkles the Lil Float |

First, the tail placement varies significantly between BigMouth's Floats and the claimed design. As seen in Table 1, the tail in D'617 sits towards the back of the swim ring and is lowered. The D'617 tail wraps from the top of the swim ring around the back. Conversely, the tails on BigMouth's Floats sit at the top of the swim ring and are only attached at the top of the body. The tail placement is a critical difference between the designs because it was *a precondition* under which the Patent Office approved D'617. SF 21-22. As noted above, the Patent Office objected to D'617 because of inconsistent tail renderings. SF 21. An amended drawing was required and approved with a *specific* tail placement and shape. SF 22.

Second, the tail shape is visually distinct. As shown in Table 1, D'617 has a tail shape with a high sweeping downward curve. Contrary to the claimed design, BigMouth's Floats have tails with a less sweeping slope and an upward curve. The tail shape is particularly important because it impacts the design's overall

appearance. Where D'617 portrays *a passive unicorn* with a downward sweeping tail, the BigMouth's Floats are *active unicorns* with tails having a continuous upward slope. Consequently, *these disparate designs create different personalities* between the *D'617 unicorn (docile)* and *BigMouth's Floats (attentive)*. SF 37.

Third, the neck angle is another plainly dissimilar element between the designs. The neck in D'617 is severely angled forward and appears thicker, relative to the head. Contrary to the claimed design, the neck of BigMouth's Floats is almost vertical jutting up from the body of the swim ring rather than outwards. Again, these disparate designs reinforce different personalities between the D'617 unicorn (docile) and BigMouth's Floats (attentive). SF 38.

Fourth, D'617 lacks any facial features. Contrary to the claimed design, all BigMouth's Floats have asymmetrical-styled eyes (one open, one winking) and nostrils, as shown below using the Giant Unicorn Pool Float as an example. The winking eye with three exaggerated eyelashes, especially contributes to the BigMouth Floats' whimsical character.

| TABLE 2 | | |
|---|---|---|
| | | |
| Fig. 6 of D'617 Patent | BigMouth's Giant Unicorn Pool Float (Left-Side) | BigMouth's Giant Unicorn Pool Float (Right-Side) |

These facial features are visually commanding and create a focal point and playful character to BigMouth's Float. As such, the eyes and nostrils in BigMouth's Floats significantly affects the floats' overall appearance and makes each visually distinctive from D'617's simple design. The lack of these facial design elements in D'617 makes the design of BigMouth's Floats plainly dissimilar. SF 39.

Fifth, as evidenced in Table 3 below, the head shape in the claimed design is shorter and rounder than the head shape in the BigMouth's Floats. The D'617 head is egg-shaped and juts downwards. In stark contrast, BigMouth's Floats do not have an oval head shape, but have a more cone-like design as the head narrows at the bottom. SF 40. From the side angle, as seen in Table 2, the "squarish" head-shape of the BigMouth Floats is especially noticeable.



| TABLE 3 | | | | |
|---|---|---|---|---|
| Fig. 4 of D'617 | BigMouth's Giant Unicorn Pool Float | BigMouth's Unicorn Pride Float | BigMouth's Giant Sparkly Unicorn Float | BigMouth's Sparkles the Lil Float |

Sixth, the ear position and size differ. In the claimed design, the ears are substantially smaller than those in the BigMouth's Floats. In Table 3, comparing Figure 4 of D'617 reveals the noticeable difference in ear size where the BigMouth Unicorn Float ears are almost doubled in size. SF 41.

Seventh, the mane width and length maintain obvious variations. As seen in

Tables 1 and 4, the D'617 mane is slender and covers approximately three-fourths of the neck height. Conversely, the mane on the BigMouth's Floats is taller, thicker and extends the almost the entire neck height. SF 42.

| **TABLE 4** | | | | |
|---|---|---|---|---|
| | | | | |
| Fig. 5 of D'617 | BigMouth's Giant Unicorn Pool Float | BigMouth's Unicorn Pride Float | BigMouth's Giant Sparkly Unicorn Float | BigMouth's Sparkles the Lil Float |

Eight, the mane and tail also have different patterning, which make them readily distinguishable. In designing a simple unicorn, D'617 has no markings. In sharp contrast, BigMouth's Floats have "wavy" markings decorating the tail and mane. As seen above in Table 4, the wavy markings extend from the mane and cover the entire back of neck. These markings reconstruct the quintessential "flowing" unicorn mane and give the BigMouth Floats their whimsical character. The wavy tail and mane designs, are absent from D'617 and a plainly visible disparity. SF 43.

Ninth, Accused Products have distinct wing markings on the either side of the swim ring as shown below in Table 5. SF 44.

| TABLE 5 | | | | |
|---|---|---|---|---|
| Fig. 1 of D'617 | BigMouth's Giant Unicorn Pool Float | BigMouth's Unicorn Pride Float | BigMouth's Giant Sparkly Unicorn Float | BigMouth's Sparkles the Lil Float |

Figure 1 of D'617 has no wing markings consistent with its simple unicorn design. Adding wing markings transforms the unicorn's character into a flying creature and is a commanding visual component of the design. No ordinary observer would be deceived into purchasing the winged BigMouth Floats thinking them to be the simple D'617 design. SF 45.

Tenth, the horn on both designs also differ. True to its simple composition, D'617 contains an unadorned horn. Conversely, and also true to its embellished design, BigMouth's Floats have spiraled horns. SF 46.

Together these **ten** distinctions affect the design's overall appearance. Vector outline overlay comparisons between D'617 and BigMouth's Floats clearly demonstrates the design differences. SF 8-11.



| Overlay of BigMouth Giant Unicorn Pool Float and Figure 1 of D'617 | Overlay of BigMouth Giant Unicorn Pool Float and Figure 6 of D'617 |
|---|---|

Larger pictures of the accused products and vector outline overlay comparisons between D'617 and each BigMouth's Floats are attached as Exhibits 3-7 and 8-12 for the Court's review.  SF 3-12.  No ordinary observer would mistake a BigMouth Float for the D'617. SF 47.

"Design patents have almost no scope [and are] limited to what is shown in the application drawings." *In re Mann*, 861 F.2d at 1582. Plaintiff does not have a monopoly right in simple unicorn pool floats. The BigMouth's Floats have at least *ten* visually distinctive design elements from the claimed design. Most notably, the inclusion of unique facial features—a winking and an open eye and nostrils—on BigMouth's Floats serve as the most visually commanding feature of the design. This focal point provides a clear differentiation from the D'617. Taking into account all the differences, variances, and dissimilarities from all visual perspective, an ordinary observer would not confuse one for the other.

## B.   BigMouth's Floats Look More Similar to the Prior Art

Courts may consult prior art where the "accused and claimed designs appear substantially the same in the first instance." *Wing Shing Prods. Co. Ltd.*, 665 F. Supp. 2d at 362 (quoting *Egyptian Goddess*, 543 F.3d at 678). Here, it is not necessary to do so, given the distinctive visual impression of the competing designs. Notwithstanding, BigMouth's Floats look more like the prior art than the claimed design in that both maintain similar facial features, head shape, a spiraled horn, mane shape, and tail shape. The ordinary observer will be able to identify the differences

between BigMouth's Floats and D'617 after having considered the prior art.

"When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art. And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Egyptian Goddess*, 543 F.3d at 676; *see also*, *Wing Shing Prods. Co., Ltd.*, 655 F. Supp. 2d at 361 (granting summary judgment of non-infringement of coffeemaker design and noting that if "the patent and the prior art are particularly close, the scale of comparison between the accused and patented designs shrinks").

Moreover, when the patented design consists of "only of bringing together old elements with slight modifications of form," it is not infringed by "another who uses the same elements with his own variations of form ... if his design is distinguishable by the ordinary observer from the patented design." *Zidell v. Dexter*, 262 F. 145, 146 (9th Cir. 1920).

BigMouth employed standard and common design elements long held in prior art to create its girly, embellished unicorn floats. A review of the following examples of prior art confirm that none of the design elements themselves are new.

|  |  |  |  |
|---|---|---|---|
| BigMouth's Giant Unicorn Pool Float | **Prior Art Example 1** Rita Hayworth, Getty Images, No. 3352151 (1940) | **Prior Art Example 2** Istockphotos.com by Getty Images. Stock illustration ID: 123681782, Upload date: September 02, 2011 | **Prior Art Example 3** "How To Draw A Unicorn (A Cute and Cuddly One)" Art for Kids Hub, March 20, 2014 |

### C. Plaintiff's D'617 Patent Should Be Invalidated If The Accused Products Infringe

In order to be patentable, a design must not only be new (or novel), it must also be sufficiently nonobvious. *See* 25 U.S.C. §103. For design patents, "the ultimate inquiry is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved." *MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1331 (Fed. Cir. 2014) (internal citations omitted).

There are two steps in assessing the obviousness of a design patent. First, "one must find a single reference, a something in existence, the design characteristics of which are basically the same as the claimed design." *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1311 (Fed. Cir. 2013). Second, "[o]nce this primary reference is found, other references may be used to modify it to create a design that has the same overall visual appearance as the claimed design." *Id.*

Here, to the extent D'617 is construed so broadly as to encompass the Accused Products, as proposed by Covves, a comparison between the claimed design, and the

prior art shows no "novel" designs that could be patented. Animal-shaped pool floats are old. Similarly, unicorn depictions are old. The idea of a simple unicorn pool float would have be obvious to a designer of ordinary skill who designs inflatables. The Rita Hayworth image (Prior Art Example 1 above) provides the primary reference for the obviousness comparison. The 1940s actress sits upon a horse pool float with the same mane as D'617. The head shape and neck are also similar to D'617. When adding the Mean Unicorn (Prior Art Example 2) and "How to Draw a Unicorn" (Prior Art Example 3) into the analysis as secondary references, all the design features of D'617 are accounted for. A designer of ordinary skill in the art would be motivated to combine these features as suggested by Patent US 2005/0233676A1, which explicitly mentions creating a unicorn inflatable. Accordingly, if the claimed design of D'617 is expanded to encompass the Accused products, it must be invalidated as obvious in view of the Prior Art Examples 1-3 above.

## V.   CONCLUSION

Plaintiff has not met its burden to demonstrate a "substantial" similarity of the protected ornamental features sufficient to deceive an ordinary observer familiar with the prior art. BigMouth's Floats are plainly dissimilar from D'617 to even a casual ordinary observer. Moreover, BigMouth's Floats looks more like the prior art than D'617 and an ordinary observer will, therefore, be drawn to the differences between BigMouth's Floats and D'617. For these reasons, summary judgment of non-infringement should be granted.

1

2    DATED: November 1, 2019

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

K&L GATES LLP

By */s/ Christopher Centurelli*
Caitlin C. Blanche
(State Bar No. 254109)
caitlin.blanche@klgates.com
K&L GATES LLP
1 Park Plaza, Twelfth Floor
Irvine, CA 92614
Tel: (949) 623-3526
Fax: (949) 253-0902

Christopher Centurelli (*pro hac vice*)
Jeffery S. Patterson (*pro hac vice*)
Morgan Nickerson (*pro hac vice*)
Natasha Pereira (*pro hac vice*)
christopher.centurelli@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Tel: (617) 261-3100
Fax: (617) 261-3175

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

At the time of the service, I was over the age of 18 years, employed in the County of Suffolk, Commonwealth of Massachusetts and not a party to the above-entitled cause. My business address is One Lincoln Street, State Street Financial Center, Boston, MA 02111.

On November 1, 2019, I served true copies of the following document(s) described DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT on the interested party in this action as follows:

> Stephen C. McArthur
> Thomas E. Dietrich
> THE MCARTHUR LAW FIRM, PC
> 11400 W. OLYMPIC BLVD. SUITE 200
> LOS ANGELES, CA 90064

☐ BY Mail: I deposited such sealed envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the United States Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

☐ BY PERSONAL SERVICE: I caused such envelope to be delivered by hand to the addressee at the address mentioned above.

☐ BY FEDEX: I deposited such envelopes at Los Angeles, California for collection and delivery by Federal Express with delivery fees paid or provided for in accordance with ordinary business practices. I am "readily familiar" with the firm's practice of collection and processing packages for overnight delivery by Federal Express. They are deposited with a facility regularly maintained by Federal Express for receipt on the same day in the ordinary course of business.

☐ ELECTRONIC TRANSMISSION: I caused the above-referenced document (s) to be sent to the persons at the e-mail address(es) listed above on said date. I did not receive, within a reasonable time after the transmission any electronic message or other indication that the transmission was unsuccessful.

☒ BY CM/ECF NOTICE OF ELECTRONIC FILING: I caused said document(s) to be served by means of this Court's electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, to the parties and/or counsel who are registered CM/ECF Users set forth in the service listed obtained

from this Court.

I declare under penalty of perjury under the laws of the State of California or United States of America that the foregoing is true and correct and executed on the date indicated above at Los Angeles, California.


Date:   November 1, 2019   *By:*   */s/ Christopher Centurelli*
                                      Christopher Centurelli

28