Caitlin C. Blanche (State Bar No. 254109)
caitlin.blanche@klgates.com
**K&L Gates LLP**
1 Park Plaza, Twelfth Floor
Irvine, CA 92614
Tel: (949) 623-3526 / Fax: (949) 253-0902

Christopher Centurelli
Jeffery S. Patterson
Morgan Nickerson
Natasha C. Pereira
(Admitted *pro hac vice*)
**K&L Gates LLP**
State Street Financial Center
One Lincoln Street
Boston, MA  02111
Tel:  (617) 261-3100 / Fax: (617) 261-3175

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COVVES, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>DILLARD'S, INC. a Delaware Corporation;<br>KOHL'S CORPORATION, a Wisconsin Corporation;<br>SAKS & COMPANY LLC., a Delaware Corporation;<br>TARGET BRANDS, INC. a Minnesota Corporation;<br>EXPRESS INC., a Delaware Corporation;<br>TILLY'S, INC. a Delaware Corporation;<br>NORDSTROM, INC., a Washington Corporation;<br>WEST MARINE, INC., a Delaware Corporation,<br>and<br>ZULILY, INC. a Delaware Corporation.<br><br>        Defendants | **Case No. 2:18-cv-08518-RGK-AFM**<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>*Separate Statement of Uncontroverted Facts and Conclusions of Law and Declaration of Natasha Pereira filed concurrently herewith*<br><br>Hon. R. Gary Klausner<br>United States District Court Judge<br>Hearing Date: December 2, 2019<br>Time: 9:00 a.m.<br>Courtroom: 850, 255 E. Temple St., Los Angeles, CA 90012 |

# TABLE OF CONTENTS

**Page**

Memorandum of Points and Authorities................................................................1

I.      Introduction ...............................................................................................1

II.     BMI Did Not Copy Covves' Patented Designs......................................2

III.    This Dispute is Ripe for Summary Judgment ......................................3

IV.     Design Patents are Entitled to Almost No Scope ................................3

V.      The Accused Products are Plainly Dissimilar .....................................7

        A.      BMI's Pool Floats Do Not Infringe the Claimed D'617 Design ..............7

        B.      BMI's Beverage Boat Does Not Infringe the Claimed D'370 Design .... 11

VI.     Covves' Designs are Invalid for Obviousness ...................................14

        A.      If BMI's Pool Floats Infringe, D'617 is Invalid as Obvious ..................15

        B.      If BMI's Beverage Boat Infringes, D'370 is Invalid as Obvious ............16

VII.    Damages ..................................................................................................18

VIII.   Ms. McHale is a Qualified Expert........................................................19

IX.     Conclusion ..............................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bergstrom v. Sears, Roebuck & Co.*,
   496 F. Supp. 476 (D. Minn. 1980) ............................................................. 18

*Boiling Point Grp., Inc. v. Fong Ware Co.*,
   No. 2:16-CV-01672, 2017 WL 2930838 (C.D. Cal. Apr. 27, 2017)
       .................................................................... 3, 5, 6, 8, 10, 13, 20

*Deckers Outdoor Corp. v. ShoeScandal.com, LLC*,
   2012 WL 6185203 (C.D. Cal. Nov. 25, 2013) ........................................ 18

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
   543 F.3d 665 (Fed. Cir. 2008) (*en banc*) ............................ 1, 4, 5, 6, 7, 20

*Gorham Co. v. White*,
   81 U.S. 511 (1871) .................................................................................... 4

*In re Mann*,
   861 F.2d 1581 (Fed. Cir. 1988) ................................................................ 3

*McIntire v. Sunrise Specialty Co.*,
   944 F. Supp. 2d 933 (E.D. Cal. 2013) ...................................................... 4

*MRC Innovations, Inc. v. Hunter Mfg.*,
   LLP, No. 2013-1433, 2014 WL 1303368 (Fed. Cir. 2014) ...................... 3

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
   138 F.3d 1437 (Fed. Cir. 1998) .............................................................. 18

*Nordock, Inc. v. Systems Inc.*,
   803 F.3d 1344 (Fed. Cir. 2015) .............................................................. 18

*Payless ShoeSource, Inc. v. Reebok Int'l Ltd.*,
   998 F.2d 985 (Fed. Cir. 1993) ...................................................... 6, 7, 10

*Payless Shoesource, Inc. v. Reebok Intl Ltd.*,
   804 F. Supp. 206 (D. Kan. 1992) ............................................................. 7

*Richardson v. Stanley Works, Inc*,
   597 F.3d 1295 (Fed. Cir. 2010) ............................................................... 6

*Rocket Jewelry Box, Inc. v. Quality Int'l Packaging, Ltd.*,
   250 F. Supp. 2d 333 (S.D.N.Y. 2003) ...................................................... 18

*Schnadig Corp. v. Gaines Mfg. Co.*,
   620 F.2d 1166 (6th Cir. 1980) .................................................................. 18

**Statutes**

35 U.S.C. § 103(a) ............................................................................................ 14

35 U.S.C. § 289 ................................................................................................. 18

**Other Authorities**

Fed. R. Civ. P. 56(a) ........................................................................................... 3

U.S. Design Patent No. D783,370 .................................1, 2, 6, 9, 10, 12, 13, 16, 17, 20

U.S. Design Patent No. D787,617 .......................................1, 2, 6, 9, 10, 13, 15, 16, 20

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants' submit this Opposition to Plaintiff Covves, LLC's ("Covves" or "Plaintiff") Motion for Partial Summary Judgment.

## I.   INTRODUCTION

Covves, LLC's ("Covves" or "Plaintiff") Motion (*Plf's Motion, Dkt. No. 110*) is legally and factually deficient. This Court should grant Defendants' Motions of Summary Judgement of Non-Infringement. (*Defs Motion, Dkt. Nos. 122, 123*). Even after drawing all reasonable inferences in Covves' favor, Defendants' four pool floats ("BMI's Pool Floats") and beverage boat ("BMI's Beverage Boat") (collectively, the "Accused Products") are ***plainly distinct*** from Covves' patented designs, U.S. Design Patent Nos. D787,617 ("D'617") and D783,370 ("D'370"). The proper question in a design patent case is not whether an accused product share some, or even many, similarities to a patented design. The question is whether there are ***differences***, and whether those differences are plain to an ordinary observer—not a paid expert—such that the ordinary observer would not be deceived into believing the accused product is the "***same*** as the patented design." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 681 (Fed. Cir. 2008) (*en banc*) (emphasis added).



| Fig. 6 of D'617 | BMI's Giant Unicorn Pool Float | Fig. 3 of D'370 | BMI's Beverage Boat |

Here as shown above, the differences between Covves' patents and the Accused Products are so numerous, so plain, and so unmistakable, that this Court should not permit Covves to proceed. As shown below, D'617 claims a ***passive, docile*** unicorn aimed at adult consumers (*Plf's Memo, Dkt. No. 110-1, p. 4*). BMI's Pool Floats portray ***active, attentive*** unicorns with a whimsical character more appealing to

youthful customers. Likewise, D'370 claims an ***oblong-bodied*** unicorn, while BMI's Beverage Boat showcases a ***circled-body*** unicorn. The designs are different. The differences are ***plainly distinct***.  No ordinary observer, conversant with the prior art, would be deceived into purchasing the Accused Products believing them to be ***the same*** as the patented designs.

## II.   BMI DID NOT COPY COVVES' PATENTED DESIGNS

BMI is a well-known designer of leisure products, including novelty pool floats. BMI has produced pool floats since at least 2012, years before Covves. (*Defs' Stmt. of Facts, Dkt. No. 122-1, SF 25; Decl. of M. McHale, Dkt. No. 122-2, ¶19*).  BMI's merchandise includes popular floats such as the Giant Frosted Donut Pool Float, the Ice Cream Sandwich float, the Flamingo Pool Float, and the Giant Pizza Slice Pool Float, all pictured below. BMI maintains a "beverage boats" product line, including its Donut and Tropical Birds Beverage Boats, pictured below. BMI has been granted numerous patents. (*Dkt. No. 122-2, ¶19*).

| | | | | | |
|---|---|---|---|---|---|
|  | |  |  | |  |
| Donut Float (2012) | US Patent No. D726273 Filed May 7, 2014 | US Patent No. D759,182 Filed March 16, 2015 | US Patent No. D775,295 Filed March 16, 2015 | Donut Beverage Boats (2012) | US Patent No. D759,182 Filed March 16, 2015 |

Covves' accusation that BMI unfairly copied D'617 and D'370 is false.  BMI's ***active, attentive*** Pool Float unicorns and ***circled-body*** Beverage Boat are not copies of Covves' ***passive, docile*** D'617 unicorn or ***oblong-bodied*** D'370 beverage holder. They are different, plainly distinct designs aimed at different consumers. (*Dkt. Nos. 122, pp. 7, 9, 17; 123, p. 18*).

D'617 and D'370 do not provide Covves a complete monopoly to prevent the sale of inflatable unicorns. Moreover, Covves' actions establish that industry practice includes using existing pool float designs to inspire better products. Covves itself

engaged in this a practice when it based its first #FLOATY White Swan design on Swimline's 2007 Swan Float (*Dkt. No. 122-1, SF 48*). Covves' founder, Benson Su, admitted to "improving" upon the existing swan design. (*Dkt. No. 122-1, p. 89*).

 

| Swimline's 2007 Swan Float | Covves' #FLOATY White Swan |

## III.  THIS DISPUTE IS RIPE FOR SUMMARY JUDGMENT

A court may grant summary judgment only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if a "dispute about them may affect the outcome of the case under applicable substantive law." *Boiling Point Grp., Inc. v. Fong Ware Co.*, No. 2:16-CV-01672, 2017 WL 2930838, *1 (C.D. Cal. Apr. 27, 2017). A dispute is "'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmovant." *Id*. There are no genuine issues of material fact regarding non-infringement or invalidity as evidenced by both parties moving for summary judgment on these issues. (*Dkt. Nos. 110-1, 122, 123*). There is no disagreement about the patents at issue or the Accused Products. (*Dkt. Nos. 110-1, p. 4; 122, pp. 7, 9 and 123, p. 7*). Given that summary judgment is particularly apt for design patents and there are no genuine disputed material facts on non-infringement or invalidity, this matter is ripe for summary judgment on these issues.

## IV.  DESIGN PATENTS ARE ENTITLED TO ALMOST NO SCOPE

Design patents are exceptionally narrow. Unlike utility patents, which claim novel articles of manufacture or methods, design patents claim a ***singularity***—*i.e.*, they are strictly construed to claim the design as described and shown in the figures. For this reason, courts repeatedly caution that, unlike utility patents, design patents have "***almost no scope***." *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988); see also *MRC Innovations, Inc. v. Hunter Mfg.*, LLP, No. 2013-1433, 2014 WL 1303368, at *3

n.1 (Fed. Cir. 2014) ("[W]e have often noted that design patents have 'almost no scope' beyond the precise images shown in the drawings"); *McIntire v. Sunrise Specialty Co.*, 944 F. Supp. 2d 933, 940 (E.D. Cal. 2013) (explaining that a design patent "by its nature . . . has no scope beyond the drawings of the patent itself").

This rule necessarily leads to a second. To infringe a patent that has "almost no scope," there must be almost no difference between the accused product and the patented design. Consequently, courts repeatedly caution that, to infringe a design patent, an accused product must be more than simply similar to a patented design. The accused product must be virtually the same, substantially the same, or substantially identical. *See, e.g., Egyptian Goddess*, 543 F.3d at 681 (substantial similarity test means that an ordinary observer would mistake the accused design as the "*same* as the patented design" (emphasis added)); *Gorham Co. v. White*, 81 U.S. 511, 528 (1871) (accused design must be "*substantially the same*" as the patent design (emphasis added)); *id.* at 526-27 (requiring "*sameness of appearance*" or "*substantial identity of design*" (emphasis added)).

The question, therefore, is not whether an accused product shares ornamental features—or even many ornamental features—with a patented design. The question is whether the accused product and the patented design are deceptively similar. Sometimes that question may benefit from an examination of the prior art. However, such an examination is not mandatory, especially where, as here, an accused product and a patented design are "plainly dissimilar." *Egyptian Goddess*, 543 F.3d at 678 (prior art can be helpful "when the claimed and accused designs are not plainly dissimilar"). Where, as here, a simple visual inspection reveals a host of plain and unmistakable differences between an accused product and a patented design, "it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer." *Id*.

*Egyptian Goddess* dictates that infringement can only be found where the "ordinary observer, familiar with the prior art, **would be deceived** into thinking that

the accused design *was the same* as the patented design." *Egyptian Goddess*, 543 F.3d at 682 (emphasis added). The Federal Circuit affirmed, as a matter of law, that the singular difference of having *four* raised, abrasive pads versus a claim to *three* raised, abrasive pads so impacted a nail buffer's overall appearance that the ordinary observer would not be deceived into mistaking the designs (shown below).



| Patented Design | Accused Product |

This Court, applying *Egyptian Goddess,* found non-infringement on summary judgment for two hot-pot designs. *Boiling Point Grp., Inc.*, 2017 WL 2930838. When comparing the accused product to the patent, this Court held, as a matter of law, that the "two designs look *sufficiently distinct*" so as not the deceive or induce the ordinary observer to purchase the accused product supposing it to be the patented design. *Id.* at *15.



| Patented Design | Accused Product |

Plaintiff's Motion does not address this Court's analysis in *Boiling Point*. (*Dkt No. 110-1, p. 3*). Instead, Plaintiff almost exclusively relies upon pre-*Egyptian Goddess* cases to support its infringement analysis and only cites to *Egyptian Goddess* for the proposition that the ordinary observer is familiar with the prior art. (*See Dkt No. 110-1, pp. 15-16*). Plaintiff's overreliance on pre-*Egyptian Goddess* cases is a critical flaw since *Egyptian Goddess* dictates the standard for evaluating design patent infringement claims. As held by *Egyptian Goddess* and the cases that apply its

standard—like this Court did in *Boiling Point*—the scope of a design patent infringement is extremely narrow and courts are unwilling to find infringement where the ordinary observer ***would not be deceived*** into mistaking the designs even when they are similar. In this way, similarities do not provide *de facto* infringement, as Plaintiff suggests. Such a rudimentary analysis conflicts with *Egyptian Goddess* and this Court's application of it in *Boiling Point*.

Additionally, Covves unduly limits the ordinary observer test in its Motion by minimizing its ***deception*** requirement (*Dkt. No. 110-1, p. 15*). If an ordinary observer is not deceived then there can be no infringement. It is Plaintiff's burden to prove by a preponderance of the evidence that the ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design. *See Richardson v. Stanley Works, Inc*, 597 F.3d 1295 (Fed. Cir. 2010). Plaintiff presents no evidence, except for conclusory expert testimony, that supports deception. Instead, Plaintiff over emphasizing BMI's design reference sheets, which contain a picture of the purported commercial embodiment of D'617, as purported evidence of "copying." (*See Dkt. No. 110-1, p. 5*). Plaintiff's reliance on the BMI reference sheets is both exaggerated. Plaintiff's patents had not been approved, and were not publically available, at the time BMI created its design reference sheet. BMI's design sheets were developed on September 12 and November 21, 2016. *(Dkt. No. 110-4, p. 21-22)*. Plaintiff's patents were not granted until April 11 (D'370) and May 23, 2017 (D'617). *(Dkt. No. 122-1, SF 1-2)*. The Accused Products are not copies of D'617 or D'370. They are different unicorns. Plaintiff's uproar about BMI's design sheet does no satisfy its burden of showing that the ordinary observer, familiar with the prior art, would be deceived into purchasing the Accused Products believing them to be D'617 or D'370.

In addition to overstating pre-*Egyptian Goddess cases* and ignoring this Court's application of *Egyptian Goddess* in *Boiling Point*, Plaintiff also misreads *Payless ShoeSource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985 (Fed. Cir. 1993). Plaintiff relies on

*Payless* for the proposition that "it is erroneous to consider features of an accused product that are extraneous to the claimed design." (*Dkt. No. 110-1, p. 15*). Plaintiff's application of *Payless*, however, is simply wrong. *Payless* found that the district court erred when it "compared the accused footwear with the commercial embodiments of the patent, rather than the claimed designs." *Id.* at 990. Because the district court was "improperly influenced by features extraneous to the claimed design" (*i.e.* found on the **commercial embodiment** of the product, but not in the patented design), the Federal Circuit explained that the district court did not conduct the correct comparison.[1] *Id.* Plaintiff incorrectly reads *Payless* to mean that any extraneous feature on an accused product (rather than the commercial embodiment of the patented design) cannot be used in the infringement analysis. *Payless* did not set this limitation; and such a restriction would stand in sharp contrast to the narrow scope afforded to design patents. *Egyptian Goddess*, 543 F.3d at 682. The eyes, nostrils, wavy markings, and wings on Defendants' Accused Products are relevant to this Court's inquiry.

## V.    THE ACCUSED PRODUCTS ARE PLAINLY DISSIMILAR

Covves' Motion is fatally deficient. It is grounded on the opinions of its expert, Joel G. Delman, who is a former corporate attorney with no professional design experience with inflatable toys. *(Ex. C, Decl. of J. Delman, Dkt. No. 110-5, pp. 33-34).* Mr. Delman opines for 198 pages that the Accused Products are allegedly substantially similar to D'617 and D'370 by (1) pointing to elements common to all unicorns; (2) focusing on functional elements of pool floats; or (3) acknowledging then dismissing differences between the Accused Products and the D'617 and D'370 patented designs.

### A.    BMI's Pool Floats Do Not Infringe the Claimed D'617 Design

---

[1] *See also Payless Shoesource, Inc. v. Reebok Intl Ltd.*, 804 F. Supp. 206, 215 (D. Kan. 1992) (improperly finding "The similarities between the shoes in question are overshadowed by the many differences. Thus, Reebok has not shown a reasonable likelihood of success on the merits of its patent infringement claim").

To support his "substantially similar" conclusions, Mr. Delman points to both designs having a "tall conical horn." (*Dkt. No. 110-5, pp. 64-86*). A tall conical horn, however, is a quintessential feature that distinguishes all unicorns from a horse and is always present in depictions of unicorns as seen in the prior art below. (*Dkt. No. 122-1, SF 17-18; Dkt. 122-5, p. 8*). Moreover, BMI's Pool Floats have a ***spiraled*** horn design consistent with its embellished whimsical look whereas the D'617 horn is unadorned and true to its "minimalist" design. (*Dkt. No. 110-1, p.4*).

|  |  |  |  |
|---|---|---|---|
| *The Unicorn in Captivity* (from Unicorn Tapestries), 1495-1505 | Disney Fantasia, *Pastoral Symphony* (1940) | *Unicorn from Old State House in Boston*, Alamy Stock Photo, 2005. | *Windy*, 1984 Hasbro Industries, Inc. |

Mr. Delman then points to the designs both having "short conical ears." (*Dkt. No. 110-5, pp. 64-86*). This is an inaccurate observation. First, ears, like a horn, are common core features of unicorns which again can be seen through the prior art above. Second, all BMI's Pool Floats have ears that are nearly doubled in size from the minimalized D'617 design.



| Fig. 4 of D'617 | BMI's Giant Unicorn Pool Float | BMI's Unicorn Pride Float | BMI's Giant Sparkly Unicorn Float | BMI's Sparkles the Lil Float |
|---|---|---|---|---|

Next, Mr. Delman cites to the "rounded head which transitions without interruption or visible transition to the ovoid neck." (*Dkt. No. 110-5, pp. 64-86*). This is not an ornamental feature of the design, but a functional element of how to make usable pool floats. Because functional elements are not proper for the design patent analysis, this observation is moot. *Boiling Point,* 2017 WL 2930838, *2. It is important to emphasis that Mr. Delman acknowledges that the "head is shown to have

a slightly more squared nose shape from this perspective" but dismisses it as "trivial and insignificant." (*Dkt. No. 110-5, pp. 64-86*).

Mr. Delman then moves on to the "bulbous tail incorporating a prominent S-curve in its upper contour, which tapers to a point at its end, appear nearly identical to the ornamental design of the patent at issue." (*Dkt. No. 110-5, pp. 64-86*). Again, this is a clearly erroneous observation. The tails in the BMI Floats and D'617 are visually distinct and are significant in portraying an ***active*** unicorn (Accused Products) versus a ***docile*** unicorn (D'617).  D'617 has a tail shape with a high sweeping downward curve and BMI's Pool Floats have tails with a less sweeping slope and an upward curve. These tails are not the same and Plaintiff is only entitled to the tail shape and placement illustrated in its design especially because it was a precondition under which the Patent Office approved D'617 (and also D'370) (*Dkt. No. 122-1, SF 21-23*). A "sweeping" tail design is a well-known and generic design which is repeatedly found throughout the prior art as shown in *Mean Unicorn*, below on page 16.



| Fig. 6 of D'617 Patent | BMI's Giant Unicorn Pool Float | BMI's Unicorn Pride Float | BMI's Giant Sparkly Unicorn Float | BMI's Sparkles the Lil Float |
|---|---|---|---|---|

Although not is his analysis excerpted for Plaintiff's summary judgment motion, Mr. Delman admits that the "angle of the neck" for three of the four Accused Products is "slightly less forward," or "not leaning forward" (*Dkt. No. 110-5, pp. 69,76,79*).  The ***different neck angles*** are important to the overall appearance of an ***active*** versus ***docile*** unicorn design The neck in D'617 is angled forward while the neck of BMI's Pool Floats is almost vertical jutting up, at attention, from the body rather than forward. These disparate designs reinforce the different personalities between the D'617 unicorn (docile) and BMI's Pool Floats (attentive).

Finally, Mr. Delman acknowledges, "the mane of the accused product extends slightly lower along the back of the neck than the patented design when seen from this view" but again dispels this difference by calling it "trivial and insignificant." (*Dkt. No. 110-5, pp. 64-86*). Again, Mr. Delman mischaracterizes the designs and minimizes the distinction. BMI's Pool Floats have manes that are taller, thicker and extends the ***almost the entire*** neck height—not just "slightly lower." Conversely, D'617 mane is slender and covers approximately three-fourths of the neck height.

Furthermore, Mr. Delman looks past ***three*** plainly visible distinctions between BMI's Pool Floats and D'617. First, Mr. Delman neglects the ***different facial features***. All of BMI's Pool Floats have asymmetrical-styled eyes (one open, one winking) and nostrils. The winking eye with exaggerated eyelashes contributes to BMI's Pool Floats whimsical character. The eyes and nostrils in BMI's Pool Floats— which are absent from D'617— significantly affects the floats' overall appearance and makes each visually distinctive from D'617.[2] Second, Mr. Delman neglects the ***different wavy markings***, which exists on the BMI Floats' tail and mane to mimic the stereotypical flowing unicorn mane. In designing a simple unicorn, D'617 has no markings. Third, Mr. Delman neglects the ***different wing markings*** that appear on the Accused Products.

The ***ten*** design distinctions are shown in the vector comparisons below. (*Dkt. No. 122-1, SF 8-11, pp. 57-71*). These differences demonstrate that the ordinary observer would find the claimed designs and the Accused Products ***plainly distinct***.

\\\
\\\
\\\
\\\

---

[2] Like Covves, Mr. Delman neglects *Boiling Point* and misapplies *Payless*, misreading it to disallow the different facial features in the Accused Products from creating an overall distinct design from D'617 and D'370. *(Dkt. Nos. 110-5, p. 9, ¶42.)*

DEFS' OPP TO PLTF'S MTN FOR PARTIAL SUMMARY JUDGMENT      CASE NO.: 2:18-CV-08518-RGK-AFM



| Overlay of BMI Giant Unicorn Pool Float and Figures 1 (top) and 6 of D'617 (bottom) | Overlay of BMI's Giant Sparkly Unicorn Float and Figures 1 (top) and 6 of D'617 (bottom) | Overlay of BMI's Sparkles the Lil Float and Figures 6 (top) and 1 of D'617 (bottom) |
|---|---|---|

### B.  BMI's Beverage Boat Does Not Infringe the Claimed D'370 Design

Akin to his observations above, Mr. Delman identifies the "conical horn," "shorter conical ears," rounded head transitioning uninterrupted to an ovoid neck, and a bulbous S-curved tail to be similar design elements. (*Dkt. No. 110-5, pp. 88-93*). These observations are flawed. A "conical horn" is a core unicorn design element. Even still, Mr. Delman recognizes that the BMI Beverage Boat has a ***different horn***, stating that "the horn...[is] slightly more bulbous." (*Dkt. No. 110-5, pp. 88-93*). D'370 has a thin horn that narrows as it comes to a pronounced point with linear markings. BMI's Beverage Boat has a thicker and rounded horn that is unmarked.



| Fig. 2 of D'370 Patent | Beverage Boat (Right-Facing) | Beverage Boat (Reversed Left-Facing) |
|---|---|---|

1    Mr. Delman's statement that both designs have "shorter conical ears" is
2    inaccurate. The designs have ***different ears***, which Mr. Delman recognizes: "the ears
3    of the accused product are slightly more bulbous." (*Dkt. No. 110-5, pp. 88-93*).  D'370
4    displays perfectly coned ears that sit towards the top of head. BMI's Beverage Boat
5    have thick bulbous ears that fall lower on either side of the head.

6    Similar to above, Mr. Delman's reference to a "rounded head which transitions
7    without interruption or visible transition to an ovoid neck" is a functional aspect that
8    is not appropriate in an infringement analysis. (*Dkt. No. 110-5, pp. 88-93*).

9    Mr. Delman's observation that both designs maintain a "bulbous tail featuring a
10   prominent S-curve in its upper surface as it tapers to a point" is misleading. (*Dkt. No.
11   110-5, pp. 88-93*). The designs have ***different tail placements and shapes***. D'370 has
12   a thick and short tail that is positioned towards the back and lowered. BMI's Beverage
13   Boat has a long and narrow tail that sits closer to the top of the swim ring and is
14   attached at a shorter circumference. Where D'370 has a high sweeping curve BMI's
15   Beverage Boat has a less sweeping and less sloped tail. A "sweeping" tail design is a
16   well-known and generic design. See page 16, below.

17   Mr. Delman notes that the "body of the accused product" has a "more circular
18   shape than the elongated body of the patented design," and alleges this "trivial and
19   insignificant difference is not relevant to whether the two designs are substantially
20   similar." *(Dkt. No. 110-5, p. 90-91)*. His observation, without reason, minimizes this
21   stark design difference and discredits his opinion. BMI's Beverage Boat is a ***circle***
22   whereas D'370 has an ***oblong*** body. These are not the same shape in the same way
23   that a rectangle and a square are widely recognized as different shapes. Any ordinary
24   observer would readily be able to distinguish these designs. Moreover, Mr. Delman
25   notes that the "circular aperture centered in the body appear nearly identical to the
26   ornamental design of the patent at issue." *(Dkt. No. 110-5, p. 90-91)*. The circular
27   beverage holder is a ***functional aspect*** of the design to accommodate a beverage cup
28   or can, and therefore an improper consideration. *Boiling Point,* 2017 WL 2930838, *2.



| Fig. 3 of D'370 Patent | BMI's Beverage Boat | | Fig. 4 of D'370 Patent | BMI's Beverage Boat |

Mr. Delman then points to the eye as a "circle-in-a-circle graphic" that "appear[s] nearly identical to the ornamental design of the patent at issue." (*Dkt. No. 110-5, p. 89*). Mr. Delman overstates this feature and disregards BMI's Beverage Boat asymmetrical eye design that produces ***different eye designs***. D'370's "circle-in-a-circle graphic" is a well-known and generic design choice for depicting simplified figures. *(Dkt. No. 122-1, SF 31; Decl. of R. Jensen Dkt. 122-4, p. 14)*. D'370 has symmetrical eyes with a smaller circle enclosed at the bottom of a larger circle, which make the figure appear to be "looking" down. In contrast, BMI's Beverage Boat has a winking with eyelashes on its right side that gives the character a feminine personality and an open eye with a smaller circle at the top of a larger circle on the left side which makes figure "look" up. The looking-down versus looking-up eyes contributes to the overall appearance of BMI's active unicorn with a raised gaze compared to D'370's docile unicorn with a lowered gaze.

Mr. Delmans neglects to mention ***five*** additional distinctions. First, the designs have ***different nostrils***. D'370 lacks nostrils, which are prominently discernible on BMI's Beverage Boat. Second, the designs have ***different head shapes***—an observation Mr. Delman made with regards to the D'617 design but missing from his D'370 analysis. D'370 has a shorter and rounder head shape akin to an oval. BMI's Beverage Boat has a longer head shape that narrows in the nostril/mouth area. Third, the designs have ***different mane lengths***. D'370 has a shorter mane that covers less of the float's neck. BMI's Beverage Boat has a longer mane that runs downs almost to the entire back of the neck. Fourth, the designs have ***different mane patterning***. The

claimed design has linear shell-like striations in its mane while BMI's Beverage Boat has wavy locks. Fifth, the designs have *different wing markings* with only the Accused Product having this design element.

The *ten* design distinctions are shown in the vector comparison below. (*Dkt. No. 122-1, SF 12, pp. 72-76).* These differences demonstrate that the ordinary observer would find the claimed designs and the Accused Product *plainly distinct*.



| Overlay of BMI Beverage Boat and Figure 1 of D'370 | Overlay of BMI Beverage Boat and Figure 2 of D'370 | Overlay of BMI Beverage Boat and Figure 3 of D'370 |
|---|---|---|

## VI.   COVVES' DESIGNS ARE INVALID FOR OBVIOUSNESS

An invention is obvious if "the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). Plaintiff challenges one of Defendants' Twilight Zone inflatable and the P&P Beverage Float primary references through unnecessary trumpeting. Ms. McHale submitted an updated report clarifying her observations of the Twilight Zone inflatable. While the inflatable is a horse—a fact Ms. McHale acknowledged in her updated report—the figure captured at Screen Still 22:32 can reasonably be viewed as a unicorn. *(Ex. A to N. Pereira Decl., ¶¶ 68-69 filed herewith).* The inflatable's identity only becomes apparent from another camera angle shown in the opening credits. Plaintiff's close-up screen shot misrepresents the prominence in which the float appears during the opening credits.



| | |
|---|---|
| Screen Still at 3:15, *The Bewitchin' Pool*, the Twilight Zone, Season 5, Episode 36. | Screen Still at 22:32, *The Bewitchin' Pool*, the Twilight Zone, Season 5, Episode 36. |

Plaintiff disservices Ms. McHale by suggesting that she knew the inflatable was a horse at the time of her initial report. The accusation is not consistent with her unprompted updated report she provided to ensure her opinions are accurate.

### A. If BMI's Pool Floats Infringe, D'617 is Invalid as Obvious

If this Court construes D'617 broadly to read on the Accused Products, then D'617 is invalid as obvious in view of the prior art. For example, *Rita on Water* serves as the primary reference from which to conduct the obvious analysis with respect to D'617. It is a proper primary reference because the horse float in *Rita on Water* creates "basically the same impression" as D'617 as both are inflatable pool floats with rounded heads, elongated necks and the same separate mane. *(Dkt. No. 122-1, SF 29; Decl. of Getty Images Dkt. 122-6, p. 4).* The Patent Office **did not** consider the horse float in *Rita on Water* during the prosecution of D'617. *(Dkt. No. 122-1, SF 29).* The two floats are shown below:



| | |
|---|---|
| Fig. 6 of D'617 Patent | Rita On Water, Getty Images, No. 3352151 (1940) |

The secondary references are also proper and "so related" because a designer of ordinary skill would consult the prior art depicting unicorns when developing his/her

design. In fact, the idea to create an inflatable unicorn is old. *(Dkt. No. 122-1, SF 17, 19; Dkt. 122-2, ¶13)*. Recognizing that unicorn images exist over a vast range of time and mediums, the non-inflatable secondary images are appropriate because they depict unicorns and would provide a reference. As such, when adding the *Mean Unicorn (Dkt. No. 122-1, SF 30; Decl. of Getty Images Dkt. 122-6, p. 5)* and *How to Draw a Unicorn (Dkt. No. 122-1, SF 31; Decl. of R. Jensen Dkt. 122-4, p. 14)* into the analysis all the design features of D'617 are accounted for. Like *Rita on Water*, The Patent Office ***did not*** consider *Mean Unicorn* or *How to Draw a Unicorn* during the prosecution of D'617. *(Dkt. No. 122-1, SF 32; Dkt. 122-2, ¶12)*.



| Fig. 6 of D'617 Patent | Primary Reference Rita Hayworth, Getty Images, No. 3352151 (1940) | Secondary Reference 1 *Mean Unicorn* by Getty Images. Stock illustration ID: 123681782, Upload date: September 02, 2011 | Secondary Reference 2 "How To Draw A Unicorn (A Cute and Cuddly One)" Art for Kids Hub, March 20, 2014 |
|---|---|---|---|

## B.    If BMI's Beverage Boat Infringes, D'370 is Invalid as Obvious

If this Court construes D'370 broadly to read on the Accused Product, then D'370 is invalid as obvious. For example, the P&P Float serves as a primary reference. Plaintiff concedes that the P&P Float is "basically the same" as D'370 by contending that it infringed Covves' patents. *(Decl. P. Engler, Dkt. No. 122-3, pp. 53-68)*. The two floats are shown below. The Patent Office ***did not*** consider the P&P Float during the prosecution of D'370.

| | |
|---|---|
|  | |
| Fig. 1 of D'370 | P&P Imports Float Primary Reference |

The secondary references are "so related" because unicorn images are ubiquitous and the idea to create an inflatable unicorn is old. *(Dkt. No. 122-1, SF 17, 19; Dkt. 122-2, ¶13)*. D'370 is a simple and obvious combination of the primary reference with supplemental designs from the secondary references. Using the P&P Float, a float designer with ordinary skill could, with minimal effort, add the separate mane from the *Rita on Water* horse float, tail from the *Mean Unicorn*, eye and rounded face from the *How to Draw a Unicorn*, and oblong shape from the Meyer Inflatable to arrive at the D'370 design.

| | |
|---|---|
| Figure 1 of D'370 | **Primary Reference** - P&P Imports Float |

| | | | |
|---|---|---|---|
| **Secondary Reference 1** *Rita on Water*, Getty Images, No. 3352151 (1940) | **Secondary Reference 2** *Mean Unicorn* by Getty Images. Stock illustration 123681782, Upload date: Sept. 02, 2011 | **Secondary Reference 3** "How To Draw A Unicorn (A Cute and Cuddly One)" Art for Kids Hub, Mar. 20, 2014 | **Secondary Reference 4** Figure 2 of U.S. Patent Des. 163,061 (filed August 15, 1950) |

DEFS' OPP TO PLTF'S MTN FOR PARTIAL SUMMARY JUDGMENT      CASE NO.: 2:18-CV-08518-RGK-AFM

## VII.  **DAMAGES**

Plaintiffs misunderstands the law regarding what constitutes total profits. The owner of an infringed-upon design patent may recovery the infringer's "total profit." 35 U.S.C. § 289 "In arriving at [an infringer]'s total-profit figure under § 289, [a plaintiff] cannot look solely to [the infringer]'s gross sales figures. Rather, *it must subtract from the gross sales all of [the infringer]'s direct and indirect expenses*." *Deckers Outdoor Corp. v. ShoeScandal.com, LLC*, 2012 WL 6185203, at * 3 (C.D. Cal. Nov. 25, 2013) (citing *Nike, Inc. v. Wal-Mart Stores, Inc.,* 138 F.3d 1437, 1447 (Fed. Cir. 1998) (emphasis added)). These deductible expenses include both fixed and variable costs, including overhead such as administrative costs and utilities. *Schnadig Corp. v. Gaines Mfg. Co.*, 620 F.2d 1166, 1171-72 (6th Cir. 1980).

Plaintiff's contention that it is entitled to summary judgment for gross profits because Defendants failed to prove their expenses is a misapplication of law. Defendants submitted computations of their net profits that included legally permissible deductions for various expenses consistent with proving total profit under § 289. Plaintiff is dissatisfied and inappropriately seeks *more than* Defendants' total profits. Plaintiff is not entitled to such a windfall.  Furthermore, every case Plaintiff cites for the proposition that expenses are not deductible when a defendant fails to prove expenses were *post-trial* decisions, not summary judgment findings. *See Nordock, Inc. v. Systems Inc.*, 803 F.3d 1344 (Fed. Cir. 2015) (appeal following a jury trial); *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437 (Fed. Cir. 1998) (appeal following a bench trial); *Rocket Jewelry Box, Inc. v. Quality Int'l Packaging, Ltd.*, 250 F. Supp. 2d 333 (S.D.N.Y. 2003) (bench trial); *Bergstrom v. Sears, Roebuck & Co.*, 496 F. Supp. 476 (D. Minn. 1980) (bench trial). The timing confirms that damages are a genuine issue of material fact that requires adjudication by the trier of fact. In this regards, the issue of total profits is here, and regularly, a genuine issue of material fact that precludes summary judgment.

## VIII.  MS. MCHALE IS A QUALIFIED EXPERT

Plaintiff's treatment of Ms. McHale is unfortunate and unfounded. Ms. McHale has almost **forty-years' experience** in the toy and design industry. Unlike Mr. Delman, Ms. McHale has **direct professional experience** with inflatable toys design despite Plaintiff's statements to the contrary. Most significantly, Ms. Hale worked for two years at an inflatable toy manufacture, Intex Plastics (*Dkt. No. 122-2, ¶5; Dkt. No. 110-10, p. 6)*. Moreover, since 2015, Ms. McHale's company has been responsible for the package design for Play Day, Walmart's private summer seasonal brand that includes inflatable pools and inflatable swimming pool toys such as swim rings, mats, armbands and novelty floats. *(Dkt. No. 110-10, p. 6)*. Throughout Ms. McHale's long design career, she has worked in tandem with inflatable products and three-dimensional figural articles.

Plaintiff's attempt to discredit Ms. McHale's qualifications without presenting a proper *Daulbert* challenge is nothing but unsupported mudslinging. This is especially curious given that Krepack is a corporate attorney and Su is a business major—neither having any substantial design experience. Similarly, Mr. Delman's experience with inflatable toys appears limited to having "a large swimming pool" and "own[ing] many pool floats over the years." *(Dkt. No. 110-5, p.33, ¶12)*. Aside from his personal pool ownership, Mr. Delman's next best experience is his consulting work with The Design Room Group regarding their "rubber ducky craze." *(Dkt. No. 110-5, p.33, ¶9)*. Rubber ducks are not inflatable items.

Finally, Plaintiff alleges that Ms. McHale failed "to consider the designs in their entirety..." *(Dkt. No. 110-1, p. 20)*. This is wrong. Ms. McHale clearly found ordinary observer "would not find the overall appearance of each Accused Product substantially similar" to the asserted patents. *(Dkt. No. 110-10, p. 41, 47; Ex. A to N. Pereira Decl., ¶¶ 85, 94 filed herewith)*.

# IX. __CONCLUSION__

Plaintiff's Motion for Partial Summary Judgment should be denied and rather, Defendants' Motions for Summary of Non-infringement, (*Dkt. Nos. 122 and 123*) should be granted, because the Accused Products are plainly dissimilar from the claimed D'617 and D'370 designs. Throughout its motion, Plaintiff seeks to emphasize the "similarities" its expert observed—often times inaccurately—while ignoring clearly visible and apparent design differences. Even if this Court is convinced by Plaintiff's flawed list of similarities, it is important to note that similarities alone are not enough to find infringement under *Egyptian Goddess*.

In *Egyptian Goddess*, the similarities between the claimed nail buffer and the accused nail buffer were many—both had the same general shape, both had a hollow tub, both had a square in the cross section, and both were rectangular in length. Yet, the Federal Circuit sitting *en banc* still found as a matter of law that the designs were distinguishable to the ordinary observer because one nail buffer had three raised abrasive pads where the other only had four. Here, the Accused Products have more than one visually significant difference from the claimed design—there are *ten*. Despite their similarities, there are just too many differences for an ordinary observer, informed with the prior art, to mistake the ***active, embellished*** BMI Pool Floats with the ***passive, minimalistic*** D'617 design or the ***circular*** BMI Beverage Boat with the ***oblong*** D'370 design. Consistent with *Egyptian Goddess* and its application in *Boiling Point*, this Court should deny Plaintiff's Motion (*Dkt. No. 110*), and grant Defendants' Motions for Summary of Non-infringement (*Dkt. Nos. 122 and 123*).

\\\
\\\
\\\
\\\
\\\
\\\

1

2                                              Respectfully submitted,

3     DATED:   November 8, 2019              K&L GATES LLP

4

5

6                                          By */s/ Christopher Centurelli*
                                            Caitlin C. Blanche (State Bar No. 254109)
7                                           caitlin.blanche@klgates.com
                                            K&L GATES LLP
8                                           1 Park Plaza, Twelfth Floor
                                            Irvine, CA 92614
9                                           Tel: (949) 623-3526 / Fax: (949) 253-0902

10                                          Christopher Centurelli (*pro hac vice*)

11                                          Jeffery S. Patterson (*pro hac vice*)

                                            Morgan Nickerson (*pro hac vice*)
12                                          Natasha Pereira (*pro hac vice*)

13                                          christopher.centurelli@klgates.com
                                            K&L GATES LLP
14                                          State Street Financial Center

15                                          One Lincoln Street
                                            Boston, MA 02111
16                                          Tel: (617) 261-3100 / Fax: (617) 261-3175
                                            *Attorneys for Defendants*
17

18

19

20

21

22

23

24

25

26

27

28

DEFS' OPP TO PLTF'S MTN FOR PARTIAL SUMMARY JUDGMENT     CASE NO.: 2:18-CV-08518-RGK-AFM

# <u>CERTIFICATE OF SERVICE</u>

Case Name: Covves, LLC v. Dillard's, Inc. et al.
Case No.: 2:18-cv-8518-RGK-AFM

IT IS HEREBY CERTIFIED THAT:

 I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 1 Park Plaza, Twelfth Floor, Irvine, CA 92614.  I am not a party to the above entitled action.

 I have caused service of the following documents, described as:

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

on the following parties by electronically filing the foregoing on November 8, 2019, with the Clerk of the District Court using its ECF System, which electronically notifies them.

 Stephen C. McArthur    *Attorneys for Plaintiff*
 Thomas E. Dietrich
 THE MCARTHUR LAW FIRM, PC
 11400 W. OLYMPIC BLVD. SUITE 200
 LOS ANGELES, CA 90064

 I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: <u>November 8, 2019</u> *By:* <u>*/s/ Caitlin Blanche*</u>
           Caitlin Blanche

DEFS' OPP TO PLTF'S MTN FOR PARTIAL SUMMARY JUDGMENT  **CASE NO.: 2:18-CV-08518-RGK-AFM**