Stephen C. McArthur (State Bar No. 277712)
stephen@smcarthurlaw.com
Thomas E. Dietrich (State Bar No. 254282)
tom@smcarthurlaw.com
THE MCARTHUR LAW FIRM, PC
11400 W. Olympic Blvd. Suite 200
Los Angeles, CA 90064
Telephone: (323) 639-4455

*Attorney for Plaintiff Covves, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

COVVES, LLC,

Plaintiff,

v.

DILLARD'S, INC. a Delaware Corporation; KOHL'S CORPORATION, a Wisconsin Corporation; SAKS & COMPANY LLC, a Delaware Corporation; TARGET BRANDS, INC. a Minnesota Corporation; EXPRESS, INC., a Delaware Corporation; TILLY'S, INC. a Delaware Corporation; NORDSTROM, INC., a Washington Corporation; WEST MARINE, INC., a Delaware Corporation, and ZULILY, INC. a Delaware Corporation.

Defendants.

Case No. 2:18-CV-8518-RGK-AFM

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Hon. R. Gary Klausner
United States District Court Judge
**Hearing Date**: December 2, 2019
**Time**: 9:00 a.m.
**Courtroom**: 850, 255 E. Temple St., Los Angeles, CA 90012

It is undisputed Covves designed the first unicorn pool float ever. Unlike hot pots or nail buffers—where patent scope is narrowed by functionality and close prior art—this case involves a unique novelty float where every aspect of the claimed design is protectable. Though there are many alternate designs for unicorn floats, Defendants' supplier BigMouth appropriated Covves' design as a whole. Objective indicia of nonobviousness—copying and commercial success—counter the hindsight-ridden findings of Defendants' expert. Defendants have not identified primary references that are "basically the same" as either patent-in-suit or a suggestion to combine elements in prior art that is far afield from pool floats. Defendants failed to produce actual business records to support claimed deductible costs, leaving no genuine dispute over the amount of total profits.

## I. <u>The Imitation Unicorns Infringe the '617 Patent</u>

Defendants' noninfringement argument relies on functionality and prior art limitations that are not present here, and it misreads Federal Circuit law restricting reliance on elements extraneous to the claimed design.

### A. The Unicorn Design is Not Limited by Functionality or Prior Art

The '617 patent is not as narrow as Defendants argue. Defendants rely only on cases involving utilitarian products where many design elements were not protectable because they were functional. Dkt. 124 at 5-6. Here, the design elements at issue are all ornamental and purely aesthetic.

This Court explained "the scope of a design patent claim must be limited to the ornamental aspects of the design." *Boiling Point Group, Inc. v. Fong Ware Co.*, No. 2:16-CV-01672, at *4 (C.D. Cal. Apr. 27, 2017). The Court thus properly discounted many points of similarity for the hot pot in *Boiling Point*. *Id.* at *11-12; *see also Sofpool, LLC v. Kmart Corp.*, No. CIV S-10-333, at *12-14 (E.D. Cal. May 30, 2013) (discounting functional elements of pool structure). But the unicorn floats here are novelty products that—other than a raft-type center for a rider—are completely ornamental. *See* Dkt. 110-5 at DELM-057 (the patented designs are "not

dictated by function”). There is thus no cause to discount as functional any elements of similarity between the ‘617 patent and the Imitation Unicorns.

That point is driven home by the many alternative unicorn designs available. The “availability of alternative designs [is] an important—if not dispositive—factor in evaluating the legal functionality of a claimed design.” *Ethicon v. Covidien, Inc.*, 796 F.3d 1312, 1329-30 (Fed. Cir. 2015). After Covves released its commercial embodiments, the unicorn pool float market exploded. There are now dozens of unicorn floats with a variety of different, *non-infringing* designs. *See* Dkt. 110-6 at DELM-257-87. A few of these are shown below:

*See* Dkt. 110-6 at DELM-289-295. A unicorn float can have legs or wings. It can have a spiky mane, wavy mane, curving mane, or no mane at all. It can have a tail that spirals, is long and droopy, or it can be tailless. Its nose can be horse-like, square, pinched in, or narrow and pointed. A unicorn float can have a long, slender neck or nearly no neck. The variations are numerous. Indeed, as shown above, BigMouth also sells three other unicorn floats with non-infringing designs—two without tails, one with wings, and the manes on each design are drastically different than the patented design. The many alternate ways to make a unicorn float differentiates this case from *Boiling Point* in that there are no functional elements of the ‘617 patent design that must be discounted.

Nor are any elements unprotectable because they were disclosed in prior art. Defendants now agree the Twilight Zone prop is a horse, meaning it is undisputed there are *no* prior art unicorn pool floats. The ‘617 patent design was the first

unicorn pool float design ever created. By contrast, in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008), the patent scope was narrow because several prior art buffer blocks were very similar to the accused product. *Id*. at 681-82. The plaintiff could not show "why an ordinary observer would regard the accused design as being closer to the claimed design than to the [cited] prior art patent." *Id*. at 682. Similarly, in *Wing Shing Prods. v. Sunbeam Prods, Inc.*, 665 F.Supp. 2d 357 (S.D.N.Y. 2009), the "cluttered world of the drip-coffeemakers" meant the design patent there had a very narrow scope. *Id*. at 364-68. While in a field crowded with prior art the range of equivalents is construed narrowly, a patent in a field without close prior art must necessarily have a broader scope and cover a broader range of equivalents. *See Egyptian Goddess*, 543 F.3d at 676-77.

It was not a "cluttered world" of unicorn floats in August 2015 when Covves filed the '617 patent application. It was a world of one. While Defendants claim the field was crowded, horse floats are not close prior art. There is no dispute the USPTO considered *eight* horse floats, along with other animal-shaped floats, in prosecuting the '617 patent. Dkt. 124-1 ¶¶ 21, 24. Covves created the field of unicorn pool floats, and its composition of design elements is fully protectable. BigMouth could have chosen innumerable other designs for its unicorn floats. *See* Dkt. 110-6 at DELM-257-295. Instead, the Imitation Unicorns copy every element and the overall composition of elements from Covves' patented design.

**B. It is Error to Rely on Unclaimed Printed-On Graphics**

Defendants err by relying primarily on printed-on graphics on the Imitation Unicorns. The Federal Circuit in *Payless Shoesource, Inc. v. Reebok Int'l, Ltd*., 998 F.2d 985 (Fed. Cir. 1993) stated "the record in the instant case clearly shows that the district court was improperly influenced by features *extraneous to the claimed design* and that its decision turned on those features." *Id*. at 990 (emphasis added). The trial court relied on elements—including an orange basketball and additional black coloring—found on the accused products but not claimed in the patented

designs, as shown at right. Because those features were not "part of the claimed designs . . . they may not serve as a valid basis for comparison in a design patent infringement analysis." *Id*. The Federal Circuit later relied on *Payless* in *Unique Functional Prods., Inc. v. Mastercraft Boat Co., Inc.*, 82 F. App'x 683, 690 (Fed. Cir. 2003) to find that the trial court erred by considering size and color of the accused trailer hitch when those features were not claimed. *Id*. at 690; *see also Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1189 (Fed. Cir. 1988) (finding it would be error if "the court's decision turned on the color differences."). Other courts have also held unclaimed elements are not a basis to find noninfringement. *See Hutzler Mfg. Co. v. Bradshaw Int'l., Inc*., 11 Civ. 7211, at *21-22 (S.D.N.Y. Jul. 24, 2012) ("Where—as here—the design patent is not limited to a particular size, color, or construction material, such factors should not be taken into consideration in performing an infringement analysis."); *Cornucopia Prods. v. Dyson Inc.*, No. CV 12-234, at *13 (D. Ariz. Jul. 27, 2012) ("The company logo undoubtedly helps ordinary observers distinguish products, but design patent protection would essentially collapse if putting one's own logo on an otherwise identical product could defeat the ordinary observer test.").

**Reebok D'809 Figures** **Reebok D'353 Figures**

Design patent protection would collapse if exterior graphics alone sufficed to avoid infringement. For example, below are figures from Tesla Motors' patent D683,268 for the exterior design of its Model X:

**Tesla patent** **Noninfringing design?**

By Defendants' logic, one could steal this entire claimed design and sell a copy without liability—as long as they painted flames on the sides or wings on the roof. Similarly, Ford has many patents on ornamental designs for auto body parts. *See Auto. Body Parts Ass'n. v. Ford Global Techs., LLC*, Appeal No. 2018-1613 (Fed.

Cir. July 23, 2019). If Defendants' position were law, those patents could be circumvented by merely adding a graphic:

That you could avoid infringement with a printed-on graphic would turn design patent law on its head, because—as seen in patents by Covves, Tesla, and Ford—design patents virtually never claim printed-on graphics. Designers would be forced to file patents on every conceivable exterior graphic to protect any one design. That cannot be, and is not, correct. *Payless* clearly holds the Court's infringement comparison cannot turn on "features extraneous to the claimed design[.]" 998 F.2d at 990. Here, that includes the Imitation Unicorns' painted-on graphics such as wings, wavy markings, horn swirls, and facial features. Those graphics should be given minimal weight in an infringement analysis. That is not to say considering the painted-on graphics would mean there is no infringement. The floats and the design remain nearly identical, with only minor differences that would not be noticeable to an ordinary observer making a low-investment purchase for short-term use. *See* Dkt. 110-5 at DELM-044, 059-83. As explained below, the similarities are especially strong in light of very different prior art.

**C. The Imitation Unicorns Closely Mimic the '617 Patent Design**

A proper analysis in light of the prior art plainly shows infringement of the '617 patent. "The scope of the claim of a patented design encompasses its visual appearance as a whole, and in particular the visual impression it creates." *Boiling Point*, No. 2:16-CV-01672, at *11. "Thus, the proper infringement inquiry asks 'whether the accused design has appropriated the claimed design as a whole,' or whether the designs have the same 'general appearance and effect.'" *Id.*

Defendants do not dispute that the photos of accused products in Covves' expert report are accurate. A few comparisons are shown below:

| Patented Design | Accused Product | Patented Design | Accused Product |
|---|---|---|---|
| Patented Design | Accused Product | Patented Design | Accused Product |

*See* Dkt. 110-5 at DELM-059-83 for full analysis. Covves' patented design presents the overall visual impression of a streamlined, simplified representation of a unicorn with a conical horn and ears, a smooth raised mane running down the neck, rounded and smooth nose and head, and an S-curved swooping tail. *Id.* at DELM-047-50.[1] Each of the Imitation Unicorns is substantially similar in every design element and visibly creates the same "general appearance and effect." *Id*. at DELM-059-083. The differences are slight, particularly where the ordinary observer—as Defendants do not dispute—is someone making a "low investment purchase" for short-term use. *Id*. at DELM-044. Comparing the claimed design to the Imitation Unicorns to the nearest prior art underscores that the Imitation Unicorns are *far* closer to the '617 patent than to any prior art design. *Id*. at DELM-010-14, 142-184.

Defendants' analysis is misguided in several respects.[2] The "active" versus

---

[1] Defendants' claim of prosecution history estoppel on the tail shape is wrong. The USPTO objected to an overhead view of the tail because it lacked contour lines showing the tail curved, as was shown in the side-views. Dkt. 122-1 at 95. The prosecuting attorney added contour lines to the overhead view to match what was shown in the side-views. *Id.* at 100-104. No material was surrendered for reasons of patentability, and the accused floats are not within the scope of a surrender. *See Advantek Mktg. v. Shanghai Walk-Long*, 898 F.3d 1210, 1215 (Fed. Cir. 2018).

[2] Ms. McHale remains unqualified. That she worked for two years at Intex nearly 40 years ago is not expertise in the art. Intex makes many products, including air mattresses, pools, furniture, and air pumps. See https://www.intexcorp.com/products/. Ms. McHale did not state she designed floats while at Intex. Ms. McHale is unqualified even using Defendants' definition of the pertinent art: "novelty floats, unicorns, unicorn floats, beverage floats, and unicorn beverage floats." Dkt. 124-1 ¶ 14. She has no expertise in any of those areas and has never designed a three-dimensional toy, unicorn-shaped or otherwise.

"docile" unicorn theory is contrived—Ms. McHale is not qualified to testify as to an ordinary observer's impressions of unicorn (or horse) moods. Based on Covves' search, no court has *ever* accepted "vector comparisons" as evidence in a design patent case. Ms. McHale did these comparisons by "converting the design of the Accused Products into a 2D figure" and "superimpos[ing] the 2D models of the Accused Products" over the patent figures. Dkt. 124-2 at 55. That is irrelevant to the ordinary observer test. The products are three-dimensional. Ms. McHale's vector analysis is akin to flattening an accused float with a steamroller then putting it on top of a patent drawing to see if the outlines match. That is not how people compare products. Lastly, Defendants' noninfringement argument is based on comparing individual elements in isolation. The side-by-side and prior art comparisons demonstrate the Imitation Unicorns create the same general appearance and effect as the '617 patent design. *See Boiling Point*, No. 2:16-CV-01672, at *11; *L.A. Gear, Inc. v. Thom McAn Shoe Co*., 988 F.2d 1117, 1126 (Fed. Cir. 1993) (affirming infringement where "placement of all the major design elements is the same, creating the same distinctive overall look"). Summary judgment of infringement is thus warranted.

## II. <u>The Beverage Boats Infringe the '370 Patent</u>

All of the arguments above apply equally to Defendants' Beverage Boats, which are substantially similar to Covves' '370 patent, as shown below:

*See* Dkt. 110-5 at DELM-084-090 for full analysis. Defendants again wrongly rely on minor differences in isolated elements and differences in printed-on graphics. But the side-by-side comparisons show the indisputable substantial similarity between the Beverage Boats and the '370 patent.

That is supported by three-way comparisons with the nearest prior art, consisting mostly of horse floats and donut-shaped drink floats. *Id*. at DELM-185-210. While the P&P prior art is a unicorn-shaped cupholder, the Beverage Boats appropriate every distinctive element of the '370 patent design—including the rounded nose, protruding ears, three-dimensional mane, and claimed circular eye. *Id*. at DELM-019. It cannot be seriously disputed that an ordinary observer would find Defendants' Beverage Boats is closer to the claimed design than to the P&P float or other prior art. The side-by-side and prior art comparisons demonstrate the Beverage Boats are colorable imitations of, and thus infringe, the '370 patent design. *See Egyptian Goddess*, 543 F.3d at 678.

## III. Neither Patent-in-Suit is Invalid

Defendants have dropped defenses of anticipation and inequitable conduct, Dkt. 124-1, Resp. to Concl. of Law ¶¶ 1, 6, meriting summary judgment for Covves on those issues. Also, the patented designs are not obvious.

### A. Copying and Commercial Success Support Nonobviousness

Defendants do not offer evidence to dispute copying or commercial success. "Objective indicia are essential safeguards that protect against hindsight bias." *Liqwd, Inc. v. L'Oreal USA, Inc.*, No. 2018-2152, at *6 (Fed. Cir. Oct. 30, 2019). "Evidence of copying may include internal documents, direct evidence such as photos of patented features or disassembly of products, or access and similarity to a patented product." *Id*. "[W]here there is evidence of actual copying efforts, that evidence is always relevant." *Id*. at *9. BigMouth's *only* unicorn design documents contain photos of Covves' commercial embodiment of the '617 patent. Dkt. 110-4 at 21-22. And the Imitation Unicorns were manufactured with the same features as Covves' patented design, not with the wavy mane and horse-shaped ears and nose of the other drawing in those documents. *See id*. at 21-32. Copying is clear. Defendants have also not rebutted Covves' evidence of commercial success. Commercial success "cannot be rebutted with mere argument; evidence must be put

forth." *Brown & Williamson v. Philip Morris*, 229 F. 3d 1120, 1130 (Fed. Cir. 2000). Defendants do not dispute Covves' sales figures or offer any evidence to rebut that $726,000 in sales over two years, and wide-spread media popularity, show commercial success. Dkt. 124-1 ¶ 4. These indicia support nonobviousness.

**B. No Primary Reference to '617 Patent Requires Ruling for Covves**

Defendants' photo of a horse float ridden by Rita Hayworth ("Rita horse") cannot be a proper primary reference. Just one angle of the Rita horse is available, but there are substantial differences from the '617 patent design.

In contrast to Covves' simplified unicorn design, the Rita horse is realistically horse-shaped in all aspects—head, neck, body, rump, and ears. The visual impression is of a simulated horse, without a tail. The Rita horse also appears to be a commercial embodiment of U.S. Patent No. 2,404,729, which was considered by the USPTO in prosecution of the '617 patent (along with seven other horse floats). *See* Dkt. 110-7 at DELM-303-05. The realist Rita horse plainly does not create "basically the same" visual impression as the patented design, and the obviousness inquiry must end in Covves' favor. *See Apple Inc. v. Samsung Elec. Co.*, 678 F.3d 1314, 1330-32 (Fed. Cir. 2012). Even if the Court were to consider the Rita horse as a primary reference, Defendants have not shown a suggestion to combine it with elements from a random clipart unicorn and a children's how-to-draw video. *See In re Borden*, 90 F.3d 1570, 1574-75 (Fed. Cir. 1996).

**C. No Primary Reference to '370 Patent or Suggestion to Modify**

Covves does *not* concede the P&P float is a proper primary reference. Defendants agree the P&P float has many different features than the '370 patent—no three-dimensional mane or ears, a square, horse-shaped head, and a printed-on

eye that differs in appearance and expression from Covves' claimed design. Dkt. 124-1 ¶ 31. The P&P float looks much more like prior art horse floats. Further, Defendants' secondary reference analysis is baseless. They claim a designer could have "with minimal effort" modified the P&P float by taking elements from a 1940s photo, a 1950 patent, random unicorn clipart, and a how-to-draw video. Dkt. 124 at 17. Yet there is no suggestion to undertake such prior art gymnastics, and Defendants' references from unrelated fields should be rejected. *See Cornucopia*, No. CV 12-234, at *14. Also, Ms. McHale is not an ordinary designer of skill in the art and not qualified to opine on this issue. There is neither a primary reference to the '370 patent nor "some basis whereby a designer of ordinary skill would be led to create this particular design." *LA Gear*, 988 F.2d at 1124. Summary judgment of validity of the '370 patent should therefore be granted.

## IV. Summary Judgment on Total Profits Amount is Appropriate

Covves is not seeking total profits equal to total sales—cost of goods is deducted where Defendants produced such information. As the case law Defendants cite states, it is their burden to prove other deductible costs. *Deckers Outdoor Corp. v. Shoescandal.com, LLC*, No. 12-cv-7382, at *1 (C.D. Cal. Nov. 25, 2013). Target has undisputedly deducted taxes, which is not permitted. *Nike, Inc. v. Wal-Mart Stores, Inc*., 138 F.3d 1437, 1448 (Fed. Cir. 1998). Defendants argue they have "submitted computations of their net profits[.]" Dkt. 124 at 18. But they do not dispute they have not produced actual business records to support the computations or show a nexus to infringing sales. Defendants have thus failed their burden of proving additional deductible expenses, *see Nike*, 138 F.3d at 1447-48, and there is no genuine dispute as to the amount of total revenue minus total cost of goods sold.

## Conclusion

For the reasons stated in Covves' motion and reply, the Court should find the patents-in-suit valid and infringed and award total profits to Covves.

DATED: November 18, 2019

Respectfully submitted,

THE MCARTHUR LAW FIRM, PC

By: */s/ Thomas Dietrich*
    Stephen McArthur
    Thomas Dietrich
    *Attorneys for Plaintiff Covves, LLC*

**CERTIFICATE OF SERVICE**

Case Name: *Covves, LLC v. Dillard's, Inc. et al.*
Case No.: 2:18-cv-8518-RGK-AFM

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 11400 West Olympic Boulevard, Suite 200, Los Angeles, CA 90064. I am not a party to the above-entitled action.

I have caused service of the following documents, described as:

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

on the following parties by electronically filing the foregoing on November 18, 2019, with the Clerk of the District Court using its ECF System, which electronically notifies them.

Morgan Nickerson
K&L Gates LLP
Morgan.Nickerson@klgates.com
1 Lincoln St.
Boston, MA 02111

*Attorneys for Defendants*

Caitlin C. Blanche
K&L Gates LLP
caitlin.blanche@klgates.com
1 Park Plaza, 12th Floor
Irvine, CA 92618

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 11/18/2019 By: */s/ Thomas Dietrich*
Thomas Dietrich