Stephen C. McArthur (State Bar No. 277712)
stephen@smcarthurlaw.com
Thomas E. Dietrich (State Bar No. 254282)
tom@smcarthurlaw.com
THE MCARTHUR LAW FIRM, PC
11400 W. Olympic Blvd. Suite 200
Los Angeles, CA 90064
Telephone: (323) 639-4455

*Attorney for Plaintiff Covves, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COVVES, LLC,<br><br>              Plaintiff,<br><br>      v.<br><br>DILLARD'S, INC. a<br>Delaware Corporation;<br>KOHL'S CORPORATION,<br>a Wisconsin Corporation;<br>SAKS & COMPANY LLC,<br>a Delaware Corporation;<br>TARGET BRANDS, INC. a<br>Minnesota Corporation;<br>EXPRESS, INC., a<br>Delaware Corporation;<br>TILLY'S, INC. a Delaware<br>Corporation;<br>NORDSTROM, INC., a Washington<br>Corporation;<br>WEST MARINE, INC., a Delaware<br>Corporation,<br>and<br>ZULILY, INC. a<br>Delaware Corporation.<br><br>              Defendants. | Case No. 2:18-CV-8518-RGK-AFM<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF U.S. PATENT NO. D787,617**<br><br>Hon. R. Gary Klausner<br>United States District Court Judge<br>**Hearing Date**: December 9, 2019<br>**Time**: 9:00 a.m.<br>**Courtroom**: 850, 255 E. Temple St.,<br>Los Angeles, CA 90012 |

# TABLE OF CONTENTS

I.    Introduction ........................................................................................................ 1

II.   Additional Relevant Facts ................................................................................ 2

      A.    Covves Designed and Sold First Unicorn Float Design Ever ................ 2

      B.    BigMouth Copied Covves' Commercial Embodiment ........................... 2

      C.    There are Many Ways to Make a Unicorn Float .................................. 3

III.  Defendants Have Not Met Burden of Showing Noninfringement ...................... 3

      A.    The Patented Unicorn Design is Not Limited by Functionality............. 3

      B.    The Unicorn Design is Not Limited by Close Prior Art ....................... 5

      C.    It is Error to Rely on Unclaimed Printed-On Graphics ......................... 6

      D.    The Imitation Unicorns Closely Mimic the '617 Patent Design ............ 8

      E.    Defendants' Noninfringement Argument Has Critical Flaws............... 12

IV.   Defendants' Obviousness Argument Fails at the First Step ............................. 13

      A.    Primary Reference Must Be "Basically the Same"............................... 13

      B.    The Rita Horse is Not a Proper Primary Reference ............................. 14

      C.    No Suggestion to Combine Unrelated Secondary References.................. 16

      D.    Secondary Considerations Provide Strong Support for Covves ............ 18

Conclusion ................................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F. 2d 1350 (Fed. Cir. 1984) ....................... 16

*Apple, Inc. v. Samsung Elec. Co., Ltd.*, 678 F.3d 1314 (Fed. Cir. 2012) .......................... 14, 15, 18

*Auto. Body Parts Ass'n. v. Ford Global Techs., LLC*, Appeal No. 2018-1613 (Fed. Cir. July 23, 2019) ............................................................................................................................ 8

*Boiling Point Group, Inc. v. Fong Ware Co.*, No. 2:16-CV-01672 (C.D. Cal. Apr. 27, 2017) .. 4, 9, 11, 12

*Brown & Williamson v. Philip Morris*, 229 F. 3d 1120 (Fed. Cir. 2000) ...................................... 19

*Contessa Food Prods., Inc. v. Conagra*, 282 F.3d 1370 (Fed. Cir. 2002) .................................... 12

*Cornucopia Prods., LLC v. Dyson Inc.*, No. CV 12-234 (D. Ariz. Jul. 27, 2012) .......................... 7

*Durling v. Spectrum Furniture Co., Inc.*, 101 F. 3d 100 (Fed. Cir. 1996) .................................... 16

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d (Fed. Cir. 2008) .......................................... 5, 11

*Ethicon v. Covidien, Inc.*, 796 F.3d 1312 (Fed. Cir. 2015) ...................................................... 4

*FMC Corp. v. Hennessey Ind., Inc.*, 650 F.Supp. 688 (N.D. Ill. 1986) ....................................... 7

*High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301 (Fed. Cir. 2013) .. 13, 14, 16, 17, 19

*Hutzler Mfg. Co. v. Bradshaw Int'l., Inc.*, 11 Civ. 7211 (S.D.N.Y. Jul. 24, 2012) ........................ 7

*In re Borden*, 90 F.3d 1570 (Fed. Cir. 1996) ..................................................................... 16, 17

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117 (Fed. Cir. 1993) .............................. 12, 16

*Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186 (Fed. Cir. 1988) ................................................ 6, 8

*Liqwd, Inc. v. L'Oreal USA, Inc.*, No. 2018-2152, at *6 (Fed. Cir. Oct. 30, 2019) ................... 18, 19

*Livjo, Inc. v. Deckers Outdoor Corp.*, No. 10-cv-4557 (C.D. Cal. Sep. 27, 2011) ................... 14, 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...................................... 3

*MRC Innov. Inc. v. Hunter Mfg. LLP*, 747 F.3d 1326 (Fed. Cir. 2014) ................................... 14, 16

*Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*, 998 F.2d (Fed. Cir. 1993) ................................. 6, 8

*Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348 n.5 (Fed. Cir. 2007) .............................................. 13

*Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253 (Fed. Cir. 2012) .............................................. 16

*Sofpool, LLC v. Kmart Corp.*, No. CIV S-10-333 (E.D. Cal. May 30, 2013) .................................. 4

*Stratoflex, Inc. v. Aeroquip Corp.*, 713 F. 2d 1530 (Fed. Cir. 1983). ......................................... 19

*Unique Functional Prods., Inc. v. Mastercraft Boat Co., Inc.*, 82 F. App'x 683 (Fed. Cir. 2003) .. 6

*Wing Shing Prods. v. Sunbeam Prods, Inc.*, 665 F.Supp. 2d (S.D.N.Y. 2009) .......................... 5, 11

# I.     Introduction

Defendants' motion for summary judgment on U.S. Patent No. D787,617 (the "'617 patent") should be denied. It is undisputed that Plaintiff Covves, LLC ("Covves") designed and sold the first unicorn pool float ever. There are *zero* prior art unicorn floats. Unlike hot pots or nail buffers—where patent scope is narrowed by functionality and close prior art—this case involves a unique novelty float where every aspect of the claimed design is protectable. Though there are many alternate designs for unicorn floats, BigMouth, Inc. ("BigMouth") appropriated Covves' design as a whole to make the ridable unicorn-shaped floats ("Imitation Unicorns") that Defendants sold across the country.

In arguing for noninfringement, Defendants improperly compare in isolation various elements of the Imitation Unicorns, rather than considering the design and accused products as a whole. Defendants' expert, Ms. McHale, is a graphic artist without the expertise necessary to opine on noninfringement or invalidity. And Defendants' "vector comparison" has never been accepted by any court and stands as proof they fundamentally misunderstand the ordinary observer test.

Defendants have failed to show invalidity by clear and convincing evidence. The Rita Hayworth horse float from the 1940s cannot be a primary reference, as it is a realistic horse design that is plainly not "basically the same" as the '617 patent design. It also appears to be a commercial embodiment of a patent the USPTO did consider in prosecuting the '617 patent. Even if the Court were to consider secondary references (which it should not), Defendants have not identified a suggestion to combine elements a 1940s photograph, a random clipart unicorn found on the internet, and a screenshot from a children's how-to-draw video.

Defendants further failed to consider objective indicia of nonobviousness— copying and commercial success. Just this month the Federal Circuit reiterated how important copying is to support a finding of nonobviousness, and undisputed evidence shows BigMouth copied Covves' commercial embodiment of the '617

patent. Defendants also did not consider Covves' commercial success. Such objective indicia of nonobviousness counters Defendants' hindsight-ridden analysis and bolsters the conclusion Covves' design is not obvious.

## II.     Additional Relevant Facts

### A.     Covves Designed and Sold First Unicorn Float Design Ever

Covves owner, Benson Su, and several others collaborated to create the unicorn float design covered by the patents-in-suit. *See* SGD ¶¶ 76-77.[1] The unicorn was made to look minimalist and stylized to appeal to consumers who were part of a growing segment interested in novelty pool floats popular on social media sites like Instagram. *Id*. In August 2015, Covves released the "Giant Unicorn," a commercial embodiment of the '617 patent design. SGD ¶¶ 76, 78. This was the first unicorn-shaped pool float ever.

Covves' unicorn floats were a hit and became extremely popular in 2016-2017. SGD ¶ 81. Covves' commercial embodiments were featured on The Today Show, Vogue, Elite Daily, Popsugar, and Harper's Bazaar, among other outlets. *Id*. In June 2016, Observer magazine wrote Covves' Giant Unicorn had unseated the swan as the most popular pool float. *Id*. Covves' unicorn floats were also popular on social media, featured in many celebrity Instagram posts. SGD ¶ 82.

### B.     BigMouth Copied Covves' Commercial Embodiment

To advertise its unicorn floats, Covves worked with a social media personality named Emily Rose Hannon. *Id*. Covves gave Ms. Hannon a Giant Unicorn float in exchange for her posting photos on Instagram and tagging Covves' #GETFLOATY page. *Id*. BigMouth had been in the novelty float business since 2012. In late 2016—about one year after Covves started selling its Giant Unicorn float—BigMouth wanted to produce its own unicorn pool floats. SGD ¶ 83. In November 2016, a BigMouth designer sent two design documents to its manufacturer which included a photograph of Covves' Giant Unicorn, as shown on

---

[1] Citations to "SGD" refer to the concurrently-filed Statement of Genuine Disputes.

Ms. Hannon's Instagram page. *Id*. The BigMouth designer referred to the photo of Covves' commercial embodiment of the '617 patent as a "reference image." *Id*. Based at least in part on that photo, BigMouth's manufacturer produced a sample float and then the final floats that are accused products in this case. *Id*. Other than the two design documents containing photos of Covves' Giant Unicorn, BigMouth has not produced any other documentation relating to its design of the Imitation Unicorns. SGD ¶ 84. Covves' expert has opined the evidence indicates the design for BigMouth's floats was copied from Covves' Giant Unicorn, a commercial embodiment of the '617 patent. SGD ¶ 83. Defendants sold the Imitation Unicorns distributed by BigMouth at retail. SGD ¶ 85.

### C.    There are Many Ways to Make a Unicorn Float

In the years *after* Covves released its commercial embodiments, others in addition to BigMouth began selling unicorn floats but with significantly different designs. SGD ¶ 89. There are now dozens of other unicorn pool floats on the market that look very different from Covves' patented design. *Id*. Even BigMouth now makes three other unicorn-shaped floats that are different from the patented design and which Covves has not alleged are infringing. SGD ¶ 90.

### III.    Defendants Have Not Met Burden of Showing Noninfringement

To obtain summary judgment of noninfringement, Defendants must show no rational trier of fact could find the Imitation Unicorns are substantially similar to the '617 patent's design. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). They cannot meet that burden. Defendants' noninfringement argument relies on functionality and prior art limitations that are not present here, and it misreads Federal Circuit law restricting reliance on elements extraneous to the claimed design.

### A.    The Patented Unicorn Design is Not Limited by Functionality

The '617 patent is not as narrow as Defendants argue. Defendants rely only on cases involving utilitarian products where many design elements were not

protectable because they were functional. Dkt. 124 at 5-6. Here, the design elements at issue are all ornamental and purely aesthetic.

This Court explained "the scope of a design patent claim must be limited to the ornamental aspects of the design." *Boiling Point Group, Inc. v. Fong Ware Co.*, No. 2:16-CV-01672, at *4 (C.D. Cal. Apr. 27, 2017). The Court thus properly discounted many points of similarity for the hot pot in *Boiling Point*. *Id*. at *11-12; *see also Sofpool, LLC v. Kmart Corp.*, No. CIV S-10-333, at *12-14 (E.D. Cal. May 30, 2013) (discounting functional elements of pool structure). But the unicorn floats here are novelty products that—other than a raft-type center for a rider—are completely ornamental. *See* SGD Ex. C at DELM-057 (the patented designs are "not dictated by function"). There is thus no cause to discount as functional any elements of similarity between the '617 patent and the Imitation Unicorns.

That point is driven home by the many alternative unicorn designs available. The "availability of alternative designs [is] an important—if not dispositive—factor in evaluating the legal functionality of a claimed design." *Ethicon v. Covidien, Inc.*, 796 F.3d 1312, 1329-30 (Fed. Cir. 2015). After Covves released its commercial embodiments, the unicorn pool float market exploded. There are now dozens of unicorn floats with a variety of different, *non-infringing* designs. *See* SGD ¶ 89. A few of these are shown below:



BigMouth                    BigMouth                    BigMouth

SGD ¶¶ 89-90. A unicorn float can have legs or wings. It can have a spiky mane, wavy mane, curving mane, or no mane at all. It can have a tail that spirals, is long and droopy, or it can be tailless. Its nose can be horse-like, square, pinched in, or narrow and pointed. A unicorn float can have a long, slender neck or nearly no neck. The variations are numerous. Indeed, as shown above, BigMouth also sells three other unicorn floats with non-infringing designs—two without tails, one with wings, and the manes on each design are drastically different than the patented design. The many alternate ways to make a unicorn float differentiates this case from *Boiling Point* in that there are no functional elements of the '617 patent design that must be discounted. *All* similarities between ornamental elements of the patented design and accused products must be considered.

### B.   The Unicorn Design is Not Limited by Close Prior Art

Nor are any elements unprotectable because they were disclosed in prior art. Defendants now agree the Twilight Zone prop is a horse, meaning it is undisputed there are *no* prior art unicorn pool floats. The '617 patent design was the first unicorn pool float design ever created. By contrast, in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008), the patent scope was narrow because several prior art buffer blocks were very similar to the accused product. *Id*. at 681-82. The plaintiff could not show "why an ordinary observer would regard the accused design as being closer to the claimed design than to the [cited] prior art patent." *Id*. at 682. Similarly, in *Wing Shing Prods. v. Sunbeam Prods, Inc.*, 665 F.Supp. 2d 357 (S.D.N.Y. 2009), the "cluttered world of the drip-coffeemakers" meant the design patent there had a very narrow scope. *Id*. at 364-68. While in a field crowded with prior art the range of equivalents is construed narrowly, a patent in a field without close prior art must necessarily have a broader scope and cover a broader range of equivalents. *See Egyptian Goddess*, 543 F.3d at 676-77.

It was not a "cluttered world" of unicorn floats in August 2015 when Covves filed the '617 patent application. It was a world of one. While Defendants claim the

1   field was crowded, horse floats are not close prior art. There is no dispute the

2   USPTO considered *eight* horse floats, along with other animal-shaped floats, in

3   prosecuting the '617 patent. Dkt. 124-1 ¶¶ 21, 24. Covves created the field of

4   unicorn pool floats, and its composition of design elements is fully protectable.

5   BigMouth could have chosen innumerable other designs for its unicorn floats. *See*

6   SGD ¶¶ 89-90. Instead, the Imitation Unicorns copy every element and the overall

7   composition of elements from Covves' patented design.

### C.    It is Error to Rely on Unclaimed Printed-On Graphics

9         Defendants err by relying primarily on printed-on graphics on the Imitation

10   Unicorns. The Federal Circuit stated in *Payless Shoesource, Inc. v. Reebok Int'l,*

11   *Ltd*., 998 F.2d 985 (Fed. Cir. 1993) that "the record in the instant case clearly shows

12   that the district court was improperly influenced by features *extraneous to the*

13   *claimed design* and that its decision turned on those features." *Id*. at 990 (emphasis

14   added). The trial court relied on elements—including an orange basketball and

15   additional black coloring—found on the accused products but not claimed in the

16   patented designs, as shown at right. *Id*.

17   The Federal Circuit held that because an

18   orange basketball and additional black

19   coloring were not "part of the claimed





**Reebok D'809 Figures**          **Reebok D'353 Figures**

20   designs . . . they may not serve as a valid basis for comparison in a design patent

21   infringement analysis." *Id*. The Federal Circuit later relied on *Payless* in *Unique*

22   *Functional Prods., Inc. v. Mastercraft Boat Co., Inc*., 82 F. App'x 683, 690 (Fed.

23   Cir. 2003) to find that the trial court erred by considering size and color of the

24   accused trailer hitch when those features were not claimed in the patent. *Id*. at 690;

25   *see also Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1189 (Fed. Cir. 1988)

26   (finding it would have been error if "the court's decision turned on the color

27   differences."). Other courts have also held unclaimed elements are not a basis to

28   find noninfringement. *See Hutzler Mfg. Co. v. Bradshaw Int'l., Inc*., 11 Civ. 7211,

PLAINTIFF'S OPP. TO DEFENDANTS' MOT.
FOR SUMM. JUDG. ON '617 PATENT
Case No. 2:18-cv-8518-RGK-AFM

at *21-22 (S.D.N.Y. Jul. 24, 2012) ("this Court will not consider the size, color, sheen, or construction material of the products, as these features are not claimed in [plaintiff's] design patents."); *FMC Corp. v. Hennessey Ind., Inc.*, 650 F.Supp. 688, 702 (N.D. Ill. 1986) ("It is not enough to say that no one would confuse the two designs because one is red and the other is green and both have prominently displayed logos. The test is not palming off; color and designations are not part of the patented design and must be ignored."); *Cornucopia Prods., LLC v. Dyson Inc.*, No. CV 12-234, at *13 (D. Ariz. Jul. 27, 2012) ("The company logo undoubtedly helps ordinary observers distinguish products, but design patent protection would essentially collapse if putting one's own logo on an otherwise identical product could defeat the ordinary observer test.").

From a practical standpoint, design patent protection would collapse if exterior graphics alone sufficed to avoid infringement. For example, Tesla Motors was issued U.S. Patent D683,268 for the ornamental appearance of its Model X:



If another company created a car substantially similar to this design, as shown below at left, there is little dispute it would be liable for infringement. But by Defendants' logic, one could steal this *entire* claimed design and sell copies without liability—as long as they painted wings on the sides or flames on the hood.





**Infringing Car Design**                                    **Noninfringing Car Design?**

PLAINTIFF'S OPP. TO DEFENDANTS' MOT.
FOR SUMM. JUDG. ON '617 PATENT
Case No. 2:18-cv-8518-RGK-AFM

Similarly, Ford has many patents on ornamental designs for auto body parts such as hoods and tailgates. *See Auto. Body Parts Ass'n. v. Ford Global Techs., LLC*, Appeal No. 2018-1613 (Fed. Cir. July 23, 2019). If Defendants' position were law, those patents could be circumvented by merely adding a graphic:



That you could avoid infringement with a printed-on graphic would turn design patent law on its head, because—as seen in patents by Covves, Tesla, and Ford—design patents virtually never claim printed-on graphics. Designers would be forced to file patents on every conceivable exterior graphic to protect any one design. That cannot be, and is not, correct. *Payless* clearly holds the Court's infringement comparison cannot turn on "features extraneous to the claimed design[.]" 998 F.2d at 990. Just as it would be error if an infringement comparison "turned on the color differences," *Lee*, 838 F.2d at 1189, so too would it be error if the Court's decision turned on painted-on graphics, even though the underlying product designs are substantially similar. Here, that includes the Imitation Unicorns' exterior graphics such as wings, wavy markings, horn swirls, and facial features. Those features should be given no weight in an infringement analysis.

That is not to say considering the painted-on graphics would mean there is no infringement. The floats and the design remain nearly identical, with only minor differences that would not be noticeable to an ordinary observer making a low-investment purchase for short-term use. *See SGD Ex. C at DELM-044, 059-83.* As explained below, the similarities are especially strong in light of different prior art.

### D.   The Imitation Unicorns Closely Mimic the '617 Patent Design

A proper analysis in light of the prior art plainly shows a rational factfinder could find the Imitation Unicorns substantially similar to the patented design. "The scope of the claim of a patented design encompasses its visual appearance as a

1   whole, and in particular the visual impression it creates." *Boiling Point*, No. 2:16-
2   CV-01672, at *11. "Thus, the proper infringement inquiry asks 'whether the
3   accused design has appropriated the claimed design as a whole,' or whether the
4   designs have the same 'general appearance and effect.'" *Id.*

5       Defendants do not dispute that the photos of accused products in Covves'
6   expert report are accurate. A few comparisons are shown below:



16  *See* SGD Ex. C at DELM-059-83 for full analysis. Covves' patented design
17  presents the overall visual impression of a streamlined, simplified representation of
18  a unicorn with a conical horn and ears, a smooth raised mane running down the
19  neck, rounded and smooth nose and head, and an S-curved swooping tail. *Id.* at
20  DELM-047-50.[2] Each of the Imitation Unicorns is substantially similar in every
21  design element and visibly creates the same "general appearance and effect." *Id.* at
22  DELM-059-083. The differences are slight, particularly where the ordinary
23  observer—as Defendants do not dispute—is someone making a "low investment
24  purchase" for short-term novelty use. SGD ¶¶ 86-87; *see Hutzler*, 11 Civ. 7211, at

---

25  [2] Defendants' claim of prosecution history estoppel on the tail shape is wrong. The USPTO
26  objected to an overhead view of the tail because it lacked contour lines showing the tail curved, as
    was shown in the side-views. Dkt. 122-1 at 95. The prosecuting attorney added contour lines to
27  the overhead view to match what was shown in the side-views. *Id.* at 100-104. No material was
    surrendered for reasons of patentability, and the accused floats are not within the scope of a
28  surrender. *See Advantek Mktg. v. Shanghai Walk-Long*, 898 F.3d 1210, 1215 (Fed. Cir. 2018).

*12-13 (S.D.N.Y. Jul. 24, 2012) ("In considering the degree of attention a typical consumer is likely to bring to a purchase, it is reasonable to assume that consumers will bring greater attention to an expensive purchase, and give less attention where the cost is inconsequential.") (citing cases).

Comparing the claimed design to the Imitation Unicorns to the nearest prior art underscores that the Imitation Unicorns are *far* closer to the '617 patent than to any prior art design. *Id.* at DELM-010-14, 142-184. For example:





PLAINTIFF'S OPP. TO DEFENDANTS' MOT. FOR SUMM. JUDG. ON '617 PATENT
Case No. 2:18-cv-8518-RGK-AFM

| Figure 6 | Large Raft Float Photo 6 | Meyer Fig. 1 |

From this three-way comparison of analogous views, the Accused Product appears substantially more similar to the ornamental design claimed in the '617 patent than it does to the nearest prior art. In this view, the '617 patent and the Accused Product both present the overall impression of a streamlined, simplified unicorn with smooth, rounded heads, conical horns and ears, tubular necks, manes shaped in a constant, unadorned arc, and bulbous S-curved tails which extend horizontally as they taper to a point.

In contrast, in this view the nearest prior art evidences a much more realistic representation of a horse, not a unicorn. The nearest prior art design incorporates a mouth, nostrils, wavy mane, complex multi-part bridle, and thin, stringy tail which hangs straight downward.

        The prior art consisted mostly of pool floats shaped like realistic horses or other animals such as giraffes or cows. *See* SGD Ex. C at DELM142-184. There were no unicorn floats or even minimalist horse floats similar to the composition Covves' design. Unlike the nail buffer in *Egyptian Goddess*, the hot pot in *Boiling Point*, or the coffee maker in *Wing Shing*, there is no close prior art to the '617 patent design. The Federal Circuit explained in *Egyptian Goddess*:

> An ordinary observer, comparing the claimed and accused designs in light of the prior art, will *attach importance to differences between the claimed design and the prior art depending on the overall effect of those differences on the design*. If the claimed design consists of a combination of old features that creates an appearance deceptively similar to the accused design, even to an observer familiar with similar prior art designs, a finding of infringement would be justified.

543 F.3d at 677-78 (emphasis added). The differences between the '617 patent design and the prior art are stark. While Defendants make much ado about small variances in isolated elements of the Imitation Unicorns, any reasonable factfinder would find the accused floats far closer to the '617 patent design than any prior art. The side-by-side and prior art comparisons demonstrate the Imitation Unicorns create the same general appearance and effect as the '617 patent design. *See Boiling*

*Point*, No. 2:16-CV-01672, at *11; *L.A. Gear, Inc. v. Thom McAn Shoe Co*., 988 F.2d 1117, 1126 (Fed. Cir. 1993) (affirming infringement where "placement of all the major design elements is the same, creating the same distinctive overall look"). Thus, not only have Defendants failed to show they are entitled to summary judgment of noninfringement, a grant of summary judgment of infringement in Covves' favor is warranted. *See Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1565 (Fed. Cir. 1988).

### E.    Defendants' Noninfringement Argument Has Critical Flaws

Defendants' noninfringement analysis is at odds with precedent in numerous respects.[3] Their expert, Ms. McHale based her opinions on comparing just one or two patent figures and one or two photos of a single accused product. "[T]he 'ordinary observer' analysis is not limited to . . . a subset of the drawings, but instead *must* encompass the claimed ornamental features of *all figures* of a design patent." *Contessa Food Prods., Inc. v. Conagra*, 282 F.3d 1370, 1379 (Fed. Cir. 2002) (emphasis added). The "comparison must extend to all ornamental features visible during normal use of the product . . . ." *Id*. at 1380. The failure to compare all accused products to every patent figure is a significant flaw.

Defendants also rely entirely on isolating individual design elements such as head, horn, neck angle, mane, and tail shape and position, and claiming an ordinary observer would find single elements different on the one accused float Ms. McHale reviewed. Dkt. 122-2 at 9-10. An infringement analysis must focus on the patented design "viewed in its entirety" and "whether the effect of the whole design is

---

[3] As Covves pointed out in its own summary judgment motion, Ms. McHale lacks expertise in the pertinent art. She stated she worked for two years at Intex nearly 40 years ago, but that is not expertise in the art. Intex makes many products in addition to pool floats, including air mattresses, swimming pools, furniture, and air pumps. See https://www.intexcorp.com/products/. Ms. McHale did not state she designed floats for Intex. Ms. McHale is unqualified even using Defendants' definition of the pertinent art: "novelty floats, unicorns, unicorn floats, beverage floats, and unicorn beverage floats." Dkt. 124-1 ¶ 14. She has no expertise in any of those areas and has never designed a three-dimensional toy, unicorn-shaped or otherwise. Ms. McHale is thus not qualified to testify on invalidity and noninfringement and her opinions should be given little weight. *Sundance, Inc. v. DeMonte Fab. Ltd*., 550 F.3d 1356, 1363-64 (Fed. Cir. 2008).

substantially the same." *Payless*, 998 F.2d at 990-91 (holding trial court "erred by failing to consider the ornamental aspects of the design as a whole and not merely isolated portions of the patented design."). Defendants failed to consider the designs in their entirety, a consistent flaw throughout their motion. They cover this up by broadly labeling one design "active" and the other "docile." But those designations are completely contrived and unsupported by a scintilla of evidence. Their expert is not qualified to testify on unicorn (or horse) moods.

Lastly, Defendants lean heavily on Ms. McHale's "vector comparisons" to support noninfringement. Based on Covves' search, no court has *ever* accepted "vector comparisons" as evidence in a design patent case. Ms. McHale did these by "converting the design of the Accused Products into a 2D figure" and "superimpos[ing] the 2D models of the Accused Products" over the patent figures. Dkt. 124-2 at 55. That is irrelevant to the ordinary observer test. SGD ¶ 8, Ex. C at Delman Rebut. ¶¶ 34-40. The products are three-dimensional. Ms. McHale's vector analysis is akin to flattening an accused float with a steamroller then placing it on top of a patent drawing to see if the outlines match. People do not compare products that way. The "vector comparisons" should be disregarded. For these reasons, the Court should deny Defendants' motion for summary judgment of noninfringement.

## IV.     Defendants' Obviousness Argument Fails at the First Step

Defendants need to prove the '617 patent is obvious by clear and convincing evidence. *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359 n.5 (Fed. Cir. 2007). They cannot get past the first step of the analysis.

### A.     Primary Reference Must Be "Basically the Same"

For design patents, "the ultimate inquiry in an obviousness analysis is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved." *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1312 (Fed. Cir. 2013). "The first step in the obviousness analysis for design patents is to identify a primary reference, 'the

design characteristics of which are basically the same as the claimed design.'" *Livjo, Inc. v. Deckers Outdoor Corp.*, No. 10-cv-4557, at *5 (C.D. Cal. Sep. 27, 2011); *MRC Innov. Inc. v. Hunter Mfg. LLP*, 747 F.3d 1326, 1331 (Fed. Cir. 2014). This "'basically the same' test requires consideration of the visual impression created by the patented design as a whole." *MRC Innov.*, 747 F.3d at 1331.

A "trial court judge may determine almost instinctively whether the two designs create basically the same visual impression, but must communicate the reasoning behind that decision." *Id*. The Federal Circuit held it is reversible error to find a primary reference meets the "basically the same" test when a "side-by-side comparison of two designs shows substantial differences in the overall appearance between the patented design and the [proposed primary] reference . . . ." *Apple, Inc. v. Samsung Elec. Co., Ltd.*, 678 F.3d 1314, 1330-31 (Fed. Cir. 2012). If the defendant fails to identify a primary reference that satisfies the "basically the same" test, that ends the inquiry and the patent is not obvious. *See Livjo*, No. 10-cv-4557, at *5-6 ("Because the Defendant has failed to identify a proper primary reference, the Court cannot consider secondary references.").

### B.     The Rita Horse is Not a Proper Primary Reference

Defendants fail the first step of the section 103 analysis—they have not identified a proper primary reference. "To identify a primary reference, one must: (1) discern the correct visual impression created by the patented design as a whole; and (2) determine whether there is a single reference that creates 'basically the same' visual impression." *High Point*, 730 F.3d at 1312. Defendants rely on this 1940s photo of Rita Hayworth astride a horse toy ("Rita horse") in a pool:

 

PLAINTIFF'S OPP. TO DEFENDANTS' MOT. FOR SUMM. JUDG. ON '617 PATENT
Case No. 2:18-cv-8518-RGK-AFM

The '617 patent design creates the visual impression of a streamlined simplified unicorn with a rounded and smooth nose and head, raised mane, conical horn, protruding conical ears, and a swooping S-shaped tail. SGD ¶ 91. From what side-by-side comparison is allowed—as only one angle of the Rita horse is available—there are substantial differences between it and the patented design. SGD ¶ 92. In contrast to a stylized and simplified unicorn, the Rita horse creates the visual impression of a real horse. *Id*. It is realistically horse-shaped in all aspects—head, neck, body, rump, and ears. It also has no tail, unlike Covves' design. Defendants' arguing the Rita horse creates "basically these same" visual impression as the '617 design is like arguing the Rita horse and Pablo Picasso's "Le Chaval" (at right) are basically the same. The difference between a simplified, stylized design and a realistic simulated horse are glaring and substantial. And of course the Rita horse is not a unicorn with a horn, because no unicorn pool float existed until Covves made one. For Defendants' expert to opine the Rita horse and the patented design are "basically the same" merely shows a misunderstanding of the test for obviousness. A side-by-side comparison shows substantial differences in the overall appearance between Covves' patented design and the Rita horse. *See Apple*, 678 F.3d at 1330-32 (rejecting reference due to differences in designs).



**Le Chaval**

     Defendants also fail to mention that the Rita horse appears to embody U.S. Patent No. 2,404,729 to Hurt, shown below, which *was* considered by the USPTO in prosecution of the '617 patent.

SGD ¶ 32. Indeed, the USPTO considered *eight* horse-shaped pool floats during prosecution. SGD ¶ 93. The realist Rita horse plainly therefore cannot be found to

create "basically the same" visual impression as the patented design. *See Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F. 2d 1350, 1360 (Fed. Cir. 1984) ("When an attacker simply goes over the same ground travelled by the PTO, part of the *burden* is to show that the PTO was wrong in its decision to grant the patent."); *Sciele Pharma Inc. v. Lupin Ltd*., 684 F.3d 1253, 1260-61 (Fed. Cir. 2012) ("[I]t may be harder to meet the clear and convincing burden when the invalidity contention is based upon the same argument on the same reference that the PTO already considered."). For all of these reasons, the Court should reject the Rita horse as a primary reference, and the obviousness inquiry must end in Covves' favor. *See Apple*, 678 F.3d at 1332; *Livjo*, No. 10-cv-4557, at *5; *Durling v. Spectrum Furniture Co., Inc*., 101 F. 3d 100, 103-105 (Fed. Cir. 1996); *High Point*, 730 F.3d at 1314.

### C.   No Suggestion to Combine Unrelated Secondary References

Even if the Court found the Rita horse was a primary reference, Defendants' obviousness argument fails at the second step. If the defendant "points to a satisfactory primary reference, then other references in the prior art may be considered." *Livjo*, No. 10-cv-4557, at *5; *see also MRC Innov*., 747 F.3d at 1331. "In order for secondary references to be considered, however, there must be some suggestion in the prior art to modify the basic design with features from the secondary references." *In re Borden*, 90 F.3d 1570, 1574 (Fed. Cir. 1996). Thus, "the teachings of prior art designs may be combined only when the designs are so related that the appearance of certain ornamental features in one would suggest the application of those features to the other." *Id*. at 1575. Even if a patented design is a "reconstruction of known elements," it is not obvious unless there is "some basis whereby a designer of ordinary skill would be led to create this particular design." *L.A. Gear, Inc. v. Thom McAn Shoe Co*., 988 F.2d 1117, 1124 (Fed. Cir. 1993).

Defendants rely on two random drawings pulled from the internet as secondary references—a "mean unicorn" drawing posted among thousands of

unicorn images on the Getty Images website, and a screenshot from a short video showing how to draw a cute unicorn. Dkt. 122-2 at 6. These are shown below:


**Mean Unicorn**


**Cute Unicorn**

The *total* analysis of secondary references by Defendants' expert is: "It would have been obvious to a designer of ordinary skill to add the tail from the Mean Unicorn, and eye and rounded face from the Cute Unicorn to the horse float depicted in Rita on Water, which would result in the D'617 design." Dkt. 122-2 at 15 ¶ 45.

There are several problems with this conclusory finding. First, Ms. McHale is not a "designer of ordinary skill who designs articles of the type involved," *High Point*, 730 F.3d at 1312, so she cannot opine as to what would have been obvious to such a designer. Second, this is not a scavenger hunt for random references with singular elements that look like isolated parts of the patented design. It is not determinative "that some components of [plaintiff's] designs exist in prior art references." *Avia*, 853 F.2d at 1564. Third, to rely on elements from the Mean and Cute Unicorn references, Defendants must show there was "some suggestion in the prior art" to modify the basic design of the Rita horse using features from those secondary references to create the minimalist, streamlined unicorn pool float claimed in the '617 patent. *See id.* (holding "[i]f the combined teachings suggest only components of the claimed design but *not its overall appearance*, a rejection under section 103 is inappropriate.") (emphasis added); *In re Borden*, 90 F.3d at 1574-75. Defendants must further proffer evidence that the relied upon designs "are so related that the appearance of certain ornamental features in one would suggest the application of those features to the other." *Id.* at 1575. Defendants and Ms. McHale have not identified any suggestion in the prior art to pull elements from a random piece of clipart and a children's how-to-draw video and use them to modify

1  a realistic horse toy from a photo taken in the 1940s. SGD Ex. C at Delman Rebut.

2  ¶¶ 65-71, 74-85. Those references are clearly not "so related" that an ordinary

3  designer would have known to use ornamental features from one to modify the

4  other. *See id*.

5  In their motion, Defendants claim a suggestion is found in U.S. Patent App.

6  2005/023367A1 to Bohart. But they misrepresent Bohart's content. Bohart is a

7  utility patent application for an inflatable four-legged, rotund animal meant to be

8  placed on the ground and bounced on or ridden by a child. Dkt. 122-2 at 28-39. It

9  has nothing to do with pool floats. Further, there is *nothing* about Bohart that is

10  suggestive of the overall appearance of a minimalist unicorn:



**Bohart Fig. 1**

16  The fact is horse-shaped floats have been around since at least 1952, and the

17  USPTO considered eight horse floats in prosecuting the '617 patent and found the

18  patented design novel. But *for 63 years no one made a unicorn pool float* until

19  Covves released its Giant Unicorn, an embodiment of the '617 patent. Defendants

20  have not identified any prior art to even get past the first step of an obviousness

21  analysis, and the Court must deny their request for summary judgment of invalidity

22  under section 103. analysis. *See Apple*, 678 F.3d at 1332; *Avia*, 853 F.2d at 1564.

23  **D.    Secondary Considerations Provide Strong Support for Covves**

24  Defendants completely ignore objective indicia supporting nonobviousness.

25  "Objective indicia are essential safeguards that protect against hindsight bias."

26  *Liqwd, Inc. v. L'Oreal USA, Inc.*, No. 2018-2152, at *6 (Fed. Cir. Oct. 30, 2019).

27  "[E]vidence rising out of the so-called 'secondary considerations' must always

28  when present be considered en route to a determination of obviousness." *High*

*Point*, 730 F.3d at 1315. Objective indicia "may often establish that an invention appearing to have been obvious in light of the prior art was not" and are "to be considered as part of all the evidence, not just when the decisionmaker remains in doubt after reviewing the art." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F. 2d 1530, 1538-39 (Fed. Cir. 1983).

Copying by a competitor is one indicator of nonobviousness. "Evidence of copying may include internal documents, direct evidence such as photos of patented features or disassembly of products, or access and similarity to a patented product." *Liqwd*, No. 2018-2152, at *6. "[W]here there is evidence of actual copying efforts, that evidence is always relevant." *Id*. at *9. Here, BigMouth's *only* unicorn design documents contain photos of Covves' commercial embodiment of the '617 patent. SGD ¶¶ 83-84. And the Imitation Unicorns were manufactured with the same features as Covves' patented design, not with the wavy mane and horse-shaped ears and nose of the other drawing in those documents. *See* SGD Ex. B, Att. 4. Copying is clear and Defendants have not offered any evidence to dispute that conclusion.

Defendants have also not rebutted Covves' evidence of commercial success. Commercial success "cannot be rebutted with mere argument; evidence must be put forth." *Brown & Williamson v. Philip Morris*, 229 F. 3d 1120, 1130 (Fed. Cir. 2000). Defendants do not dispute Covves' sales figures or offer any evidence to rebut that $726,000 in sales over two years shows commercial success. Dkt. 124-1 ¶ 4; SGD ¶ 79. Covves' design was also hugely popular and earned considerable media attention. SGD ¶ 81. These objective indicia support nonobviousness, and the Court should deny Defendants' motion for summary judgment of invalidity and find the '617 patent valid and infringed.

## Conclusion

Defendants made nearly $2.5 million selling Imitation Unicorns that are substantially similar to Covves' novel designs. Covves respectfully requests that the Court deny Defendants' motion and grant summary judgment in Covves' favor.

DATED:  November 18, 2019

Respectfully submitted,

THE MCARTHUR LAW FIRM, PC

By: */s/ Thomas Dietrich*
   Stephen McArthur
   Thomas Dietrich
   *Attorneys for Plaintiff Covves, LLC*

## CERTIFICATE OF SERVICE

Case Name: *Covves, LLC v. Dillard's, Inc. et al.*
Case No.: 2:18-cv-8518-RGK-AFM

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 11400 West Olympic Boulevard, Suite 200, Los Angeles, CA 90064. I am not a party to the above-entitled action.

I have caused service of the following documents, described as:

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF U.S. PATENT NO. D787,617**

on the following parties by electronically filing the foregoing on November 18, 2019, with the Clerk of the District Court using its ECF System, which electronically notifies them.

Morgan Nickerson                         *Attorneys for Defendants*
K&L Gates LLP
Morgan.Nickerson@klgates.com
1 Lincoln St.
Boston, MA 02111

Caitlin C. Blanche
K&L Gates LLP
caitlin.blanche@klgates.com
1 Park Plaza, 12th Floor
Irvine, CA 92618

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  11/18/2019          By:  */s/ Thomas Dietrich*
                                Thomas Dietrich