1  Stephen C. McArthur (State Bar No. 277712)
   stephen@smcarthurlaw.com
2  Thomas E. Dietrich (State Bar No. 254282)
   tom@smcarthurlaw.com
3  THE MCARTHUR LAW FIRM, PC
   11400 W. Olympic Blvd. Suite 200
4  Los Angeles, CA 90064
   Telephone: (323) 639-4455
5
   *Attorney for Plaintiff Covves, LLC*
6

7              UNITED STATES DISTRICT COURT

8            CENTRAL DISTRICT OF CALIFORNIA
9

10  COVVES, LLC,                          Case No. 2:18-CV-8518-RGK-AFM

11              Plaintiff,                 **PLAINTIFF'S STATEMENT OF
                                           GENUINE DISPUTES IN
12        v.                               OPPOSITION TO DEFENDANTS'
                                           MOTIONS FOR SUMMARY
13  DILLARD'S, INC. a                      JUDGMENT**
    Delaware Corporation;
14  KOHL'S CORPORATION,                    Hon. R. Gary Klausner
    a Wisconsin Corporation;              United States District Court Judge
15  SAKS & COMPANY LLC,                    **Hearing Date**: December 9, 2019
    a Delaware Corporation;                **Time**: 9:00 a.m.
16  TARGET BRANDS, INC. a                  **Courtroom**: 850, 255 E. Temple St.,
    Minnesota Corporation;                Los Angeles, CA 90012
17  EXPRESS, INC., a
    Delaware Corporation;
18  TILLY'S, INC., a Delaware
    Corporation;
19  NORDSTROM, INC., a Washington
    Corporation;
20  WEST MARINE, INC., a Delaware
    Corporation,
21  and
    ZULILY, INC. a
22  Delaware Corporation.

23              Defendants.

24

25

26

27

28

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56-2, Plaintiff Covves, LLC ("Covves") submits the following Statement of Genuine Disputes. Because Defendants filed one Statement of Uncontroverted Facts and Conclusions of Law in support of both of their motions for summary judgment, Covves files one response in support of both of its oppositions. While Covves identifies genuine disputes here in relation to Defendants' motions, Covves believes there is no genuine dispute regarding issues Covves raised in its own motion for partial summary judgment and that Covves' motion should be granted.

## I.      Genuine Disputes

| No. | Defendants' Stated Fact | Covves' Response and Supporting Evidence |
|---|---|---|
| 1. | Plaintiff asserts Patent No. D787,617 (the "D'617 Patent"), which is a design patent claiming the ornamental design of an inflatable toy. | Undisputed. |
| 2. | Plaintiff asserts Patent No. D783,370 (the "D'370 Patent"), which is a design patent claiming the ornamental features of an inflatable unicorn beverage float. | Undisputed. |
| 3. | Plaintiff alleges that the Defendants infringe on the D'617 Patent by offering for sale and selling the Giant Unicorn Pool Float supplied by BigMouth, Inc. ("BigMouth"). A true and accurate representation of the Giant Unicorn Pool Float is attached as Exhibit 3. | Undisputed. |
| 4. | Plaintiff alleges that the Defendants infringe on the D'617 Patent by offering for sale and selling the Unicorn Pride Float supplied by BigMouth. A true and accurate | Undisputed. |

| | | | |
|---|---|---|---|
| | | representation of the Unicorn Pride Float is attached as Exhibit4. | |
| | 5. | Plaintiff alleges that the Defendants infringe on the D'617 Patent by offering for sale and selling the Giant Sparkly Unicorn Float supplied by BigMouth. A true and accurate representation of the Giant Sparkly Unicorn Float is attached as Exhibit 5. | Undisputed. |
| | 6. | Plaintiff alleges that the Defendants infringe on the D'617 Patent by offering for sale and selling Sparkles the Lil Float supplied by BigMouth. A true and accurate representation of Sparkles the Lil Float is attached as Exhibit 6. | Undisputed. |
| | 7. | Plaintiff alleges that a subset of the Defendants infringe on the D'370 Patent by offering for sale and selling BigMouth's Beverage Boat. A true and accurate representation of BigMouth's Beverage Boat is attached as Exhibit 7. | Undisputed. |
| | 8. | A true and accurate vector comparison of D'617 and the Giant Unicorn Pool Float is attached as Exhibit 8. | Disputed. Defendants have not offered any evidence that their "vector comparisons" are accurate or the product of reliable principles and methods. Further, no court has ever accepted vector comparisons as evidence in a design patent case and they are inappropriate for consideration here. Ex. C at Delman Rebut. ¶¶ 34-40.[1] |
| | 9. | The vector comparison for the Giant Unicorn Pool Float also applies to the Unicorn Pride Float | Undisputed the referenced designs are nearly identical other than exterior graphics. Disputed regarding |

[1] To preserve the Bates numbering of Joel Delman's expert reports filed with Covves' motion for partial summary judgment, Covves has added Mr. Delman's rebuttal to the front of Exhibit C and refers to it herein as "Delman Rebut.," while continuing to refer to his supplemental and initial reports by the previously-provided Bates numbers.

|   | | |
|---|---|---|
|   | as these designs are nearly identical. | vector comparisons. *See* ¶ 8. |
| 10. | A true and accurate vector comparison of D'617 and the Giant Sparkly Unicorn Float is attached as Exhibit 9. | Disputed. *See* ¶ 8. |
| 11. | A true and accurate vector comparison of D'617 and Sparkles the Lil Float is attached as Exhibit 10. McHale ¶ 35. | Disputed. *See* ¶ 8. |
| 12. | A true and accurate vector comparison of D'370 and BigMouth's Beverage Boat is attached as Exhibit 11. | Disputed. *See* ¶ 8. |
| 13. | D'617 claims a passive, docile unicorn and BigMouth's Floats portray active, attentive unicorns. | Disputed. Ms. McHale is not qualified to testify as to an ordinary observer's impressions of unicorn (or horse) moods. A proper comparison of the patent to the accused products as a whole shows substantial similarity. Ex. C at Delman Rebut. ¶¶ 31-33, DELM-059-83. |
| 14. | Animal-shaped pool floats are old and have existed since at least the 1920s. | Undisputed. |
| 15. | Early novelty floats appeared in patents, in photographs of 1940s Hollywood actresses, and in the marketplace well before Plaintiff filed D'617. | Undisputed. |
| 16. | Animal-shaped pool floats are a used-and-tired concept. | Disputed. Covves has no point of reference for what a "used-and-tired" concept is. By Ms. McHale's logic, automobiles would have been a "used-and-tired" concept by the 1920s. Ex. C at Delman Rebut. ¶¶ 57-64. |
| 17. | Since antiquity, the unicorn motif has embodied specific and expected design elements, | Undisputed. |

| | | | |
|---|---|---|---|
| 1<br>2 | | including a horseshaped head, eyes, mouth, nose, ears, neck, mane, body, and tail. | |
| 3<br>4<br>5<br>6 | 18. | The vast breath of prior art confirms the repetition of a horseshaped head, eyes, mouth, nose, ears, neck, mane, body, and tail, which have become central to depicting unicorn characters. | Undisputed, though Covves questions whether Ms. McHale's limited analysis covers the "vast breath [sic]" of historic unicorn figures. |
| 7<br>8<br>9<br>10<br>11<br>12 | 19. | Patent US 2005/0233676A1, filed on April 15, 2005, noted that an inflatable toy animal "may also be a fictional animal, such as, for example, a dragon or unicorn." | Objection as incomplete. Ms. McHale implies the Bohart application referenced has some relation to pool floats. It does not. The Bohart application is for an animal-shaped toy mean to be bounced upon by children on the ground. *See* Ex. C at DELM-112-117; Dkt. 122-2 at 27-39.[2] |
| 13<br>14<br>15<br>16 | 20. | Adam Krepack, a corporate attorney with no art or design training, filed the patent application for D'617 with the United States Patent Office on August 24, 2015 (the "D'617 application"). | Disputed. A prosecuting attorney filed the application. Ex. B, Att. 1 at 1. |
| 17<br>18<br>19<br>20<br>21 | 21. | The Patent Office reviewed the D'617 application, initially objected to it, and required an adjustment to the claimed tail because "the change of shape and slope of the tail" was not consistently depicted. Ex. 14 at 36-40. | Objection as incomplete. The USPTO objected to an overhead view of the claimed tail because it lacked contour lines showing the tail curved, as was already shown in the side-views. Dkt. 122-1 at 95. |
| 22<br>23<br>24<br>25<br>26<br>27 | 22. | To gain allowance, Krepack submitted a new drawing further limiting the claimed shape and slope of the tail. Ex. 15 at 70-77. | Disputed as to any limitation on claimed shape and slope of tail. The prosecuting attorney merely added contour lines to the overhead view to match what was already shown in the side-views, and the USPTO accepted the amended overhead drawing. Dkt. 122-1 at 100-104. |

[2] References to filed documents use the pagination given by the ECF system.

| | | | |
|---|---|---|---|
| | 23. | On May 23, 2017, the Patent Office granted D'617. | Undisputed. |
| | 24. | BigMouth is a well-known designer and distributor of leisure lifestyle products, including novelty pool floats. | Undisputed. |
| | 25. | BigMouth has produced pool floats since at least 2012, including well know floats such as the Giant Frosted Donut Pool Float, the Ice Cream Sandwich float, the Flamingo Pool Float, and the Giant Pizza Slice Pool Float. | Undisputed. |
| | 26. | BigMouth's Floats have an upward curved tail attached at the top of the swim ring for an active pose. | Disputed. Defendants have not provided any evidence to support the "active" designation of their floats' tails. The overall impression of the patented design and accused products is the same. Ex. C at DELM-059-89. |
| | 27. | D'617 has a lower attached and downward sweeping tail for a relaxed pose. | Disputed. The tails on the accused products are nearly identical to the patented design. The overall impression of the patented design and accused products is the same. Ex. C at DELM-059-89. |
| | 28. | Compared to D'617, BigMouth's Floats have: a more active, vertical neck angle; facial features not present in D'617, such as a winking and open eye and nostrils; a different, narrower and squarish head shape; different larger ears; a different longer and thicker mane with wavy lock markings; different painted-on wings; and a spiraled horn. Ex. 8-11; McHale Decl. ¶¶ 21-31. | Undisputed the Large Ring Float and Pride Float have a more vertical neck angle than the claimed design. It is disputed however that the difference in neck angle renders those accused products dissimilar from the claimed design, given the many other similarities and substantially similar overall impression.<br><br>Disputed whether the other accused floats have a more vertical neck angle; the neck angles are nearly identical to the claimed design. |

| | | | |
|---|---|---|---|
| | | | Disputed regarding alleged different head shape; head shapes are nearly identical to the claimed design.<br><br>Undisputed regarding extraneous painted-on graphics on the accused products, which are not claimed in the '617 patent.<br><br>Overall characterization of accused products is disputed. The overall impression of the patented design and accused products is the same. Ex. C at Delman Rebut. ¶¶ 41-46, DELM-059-89. |
| | 29. | Getty Images, No. 3352151, Rita on Water, depicts Actress Rita Hayworth riding a horse pool float in the early 20th century and predates D'617. | Undisputed. |
| | 30. | Getty Images, Stock Illustration ID 123681782, depicts a unicorn illustration and predates D'617. | Undisputed. |
| | 31. | "How To Draw A Unicorn (A Cute and Cuddly One)" by Art for Kids Hub, is a still image from an instructional children's art video about drawing unicorns and predates D'617. | Undisputed. |
| | 32. | The Patent Office did not consider Getty Images, No. 3352151, Rita on Water (depicting Actress Rita Hayworth riding a horse pool float in the early 20th century), Getty Images, Mean Unicorn ID 123681782 (depicting a unicorn illustration), or "How To Draw A Unicorn (A Cute and Cuddly One)" by Art for Kids Hub as prior art to D'617. | Undisputed the USPTO did not consider the Mean Unicorn or How-to-Draw Unicorn.<br><br>Objection as incomplete regarding Rita on Water photo. The USPTO did consider what appears to be a patent for the commercial embodiment of the toy Ms. Hayworth is riding in the photo, U.S. Patent No. 2,404,729 to Hurt. Ex. C at DELM-303-05. |

| 33. | The most obvious differences are different tail placement, the different neck slope, the facial features present in BigMouth's Floats, omitted from D'617, as well as different head shape, different mane shape and different markings of its other core design features. | Disputed. The overall impression of the patented design and accused products is the same. Ex. C at DELM-059-89. |
|---|---|---|
| 34. | Creating a "minimalist" unicorn was the stated intention of the inventor of D'617. | Undisputed that that was one intention of one inventor. |
| 35. | D'617, Figure 6, claims a simple unicorn design with a simplistic head, neck, horn, ears, mane, tail and no eyes or nostrils. In contrast, BigMouth's Floats are embellished with spiraled horns, wavy manes, winking and open eyes, and nostrils. Exs. 3-6, 8-11; McHale Decl., ¶¶ 21-31. | Disputed. The overall impression of the patented design and accused products is the same. Further, the painted-on exterior graphics should carry no weight. Ex. C at Delman Rebut. ¶¶ 41-46, DELM-059-89. |
| 36. | An ordinary observer would readily distinguish the simple D'617 claimed design from the ornate BigMouth Unicorn Pool Floats. | Disputed. The overall impression of the patented design and accused products is the same. An ordinary observer, someone making a "low-investment" purchase for short-term novelty use, would be likely to confuse the accused products with the patented design. Ex. C at Delman Rebut. ¶¶ 47-52, DELM-044, 059-89. |
| 37. | D'617 portrays a passive unicorn with a downward sweeping tail, and the BigMouth's Floats are active unicorns with tails having a continuous upward slope. These disparate designs create different personalities between the D'617 unicorn (docile) and BigMouth's Floats (attentive). Exs. 3-6, 8-11; McHale Decl. ¶¶ 23, 30, 27 | Disputed. Defendants have produced no evidence regarding unicorn or horse moods. The overall impression of the patented design and accused products is the same. An ordinary observer, someone making a "low-investment" purchase for short-term novelty use, would be likely to confuse the accused products with the patented design. Ex. C at Delman Rebut. ¶¶ 47-52, DELM-044, 059-89. |

| 38. | The neck in D'617 is severely angled forward and appears thicker, relative to the head. The neck of BigMouth's Floats is almost vertical jutting up from the body of the swim ring rather than outwards. These disparate designs reinforce different personalities between the D'617 unicorn (docile) and BigMouth's Floats (attentive). | Disputed. Defendants have produced no evidence regarding unicorn or horse moods. The overall impression of the patented design and accused products is the same. An ordinary observer, someone making a "low-investment" purchase for short-term novelty use, would be likely to confuse the accused products with the patented design. Ex. C at Delman Rebut. ¶¶ 47-52, DELM-044, 059-89. |
|---|---|---|
| 39. | The eyes and nostrils in BigMouth's Floats significantly affects the floats' overall appearance and makes each visually distinctive from D'617's simple design. The lack of these facial design elements in D'617 makes the design of BigMouth's Floats plainly dissimilar. | Disputed. The overall impression of the patented design and accused products is the same. An ordinary observer, someone making a "low-investment" purchase for short-term novelty use, would be likely to confuse the accused products with the patented design. Further, the painted-on exterior graphics should carry no weight. Ex. C at Delman Rebut. ¶¶ 41-52, DELM-044, 059-89. |
| 40. | The D'617 head is egg-shaped and juts downwards. BigMouth's Floats do not have an oval head shape, but have a more cone-like design as the head narrows at the bottom. | Disputed. The heads of the floats are nearly identical to the patented design, and the overall impression of the patented design and accused products is the same. Ex. C at DELM-059-89. |
| 41. | The BigMouth Unicorn Float ears are almost doubled in size of D'617's ears. | Disputed. The ears of the floats are nearly identical to the patented design, and the overall impression of the patented design and accused products is the same. Ex. C at DELM-059-89. |
| 42. | The D'617 mane is slender and covers approximately three-fourths of the neck height. The mane on the BigMouth's Floats is taller, thicker and extends the almost the entire neck height. | Disputed. The manes of the floats are nearly identical to the patented design, and the overall impression of the patented design and accused products is the same. Ex. C at DELM-059-89. |

| 43. | The wavy tail and mane designs are absent from D'617 and a plainly visible disparity from the BigMouth Unicorn Floats. | Disputed. The tails and manes of the floats are nearly identical to the patented design, and the overall impression of the patented design and accused products is the same. Further, the painted-on exterior graphics should carry no weight. Ex. C at Delman Rebut. ¶¶ 41-46, DELM-059-89. |
|---|---|---|
| 44. | BigMouth's Unicorn Floats have distinct wing markings on the either side of the swim ring. Figure 1 of D'617 has no wing markings consistent with its simple unicorn design. | Undisputed that the '617 patent does not claim any exterior graphics and as such does not claim the particular set of wings painted on the accused products.<br><br>Disputed that the painted-on wings are relevant or distinguish the accused products from the patented design. The overall impression of the patented design and accused products is the same. Further, the painted-on exterior graphics should carry no weight. Ex. C at Delman Rebut. ¶¶ 41-46, DELM-059-89. |
| 45. | An ordinary observer would not be deceived into purchasing the winged BigMouth Floats thinking them to be the simple D'617 design. | Disputed. The overall impression of the patented design and accused products is the same. An ordinary observer, someone making a "low-investment" purchase for short-term novelty use, would be likely to confuse the accused products with the patented design. Further, the painted-on exterior graphics should carry no weight. Ex. C at Delman Rebut. ¶¶ 41-52, DELM-044, 059-89. |
| 46. | D'617 contains an unadorned horn. BigMouth's Floats have spiraled horns. | Undisputed that the '617 patent does not claim any exterior graphics and as such does not claim the particular spiral painted on the horn on some of the accused products. |

| | | | |
|---|---|---|---|
| | | | Disputed that the painted-on spiral is relevant or distinguishes the accused products from the patented design. The overall impression of the patented design and accused products is the same. Further, the painted-on exterior graphics should carry no weight. Ex. C at Delman Rebut. ¶¶ 41-46, DELM-059-89. |
| | 47. | An ordinary observer would not mistake a BigMouth Float for D'617. | Disputed. Defendants have not offered any evidence on who the ordinary observer is; Ms. McHale completely omitted that analysis from her report. The overall impression of the patented design and accused products is the same. An ordinary observer, someone making a "low-investment" purchase for short-term novelty use, would be likely to confuse the accused products with the patented design. Further, the painted-on exterior graphics should carry no weight. Ex. C at Delman Rebut. ¶¶ 41-52, DELM-044, 059-89. |
| | 48. | Covves designed a swan float based on Swimline's 2007 Swan Float. | Disputed. Saying Covves' owner "based" the swan design on Swimline's swan is like saying he based it on a real swan. Mr. Su drew out his own design for the Covves' swan on pen and paper. Dkt. 113-13 at 3. |
| | 49. | Benson Su, Covves' founder, has no significant formal design training. | Disputed. The evidence cited by Defendants, Dkt. 113-13, does not support the claimed fact. Mr. Su has significant training and experience in hand drawing and computerized design. |
| | 50. | Patents for beverage floats have existed since at least 1958. | Undisputed. |

| | | | |
|---|---|---|---|
| | 51. | Early beverage float patents were simple circular designs that were basically miniature swim rings capable of holding a can or bottle. | Undisputed. |
| | 52. | People began to develop more exciting animal-shaped beverage floats, such as a duck-shaped beverage float patented in 2011. | Undisputed. |
| | 53. | In 2011, Terrence B. Ressel and Amy L. Ressel filed a patent for a duck-shaped beverage float. | Objection as incomplete. Defendants fail to mention the Ressel application was considered by the USPTO in prosecution of the '370 patent. Ex. C at DELM-396-403. |
| | 54. | P&P Imports, Inc., released its unicorn drink boats in its 2016 Lookbook, first published on January 2, 2016, more than eleven months before D'370 was filed. | Undisputed. |
| | 55. | P&P Imports sold its first unicorn drink boats on June 26, 2016, five months before D'370 was filed. | Undisputed. |
| | 56. | The P&P Float shows a standard unicorn design complete with a circular body, horse-shaped head, angled neck, thick horn, painted-on mane, painted-on pointed ears, downward sweeping tail, eyes and nostrils. | Disputed regarding the P&P float showing a "standard unicorn design." There are innumerable ways to make a unicorn float, as shown in the many alternate designs included with Mr. Delman's report. BigMouth even makes a unicorn beverage float with an alternate non-infringing design. Ex. C at DELM-257-87. |
| | 57. | The Patent Office reviewed the D'370 application, initially objected to it, and required an adjustment to the claimed tail because "the change of shape and slope of the tail" was not consistently depicted. Ex. 18 at 47-50. | Objection as incomplete. The USPTO objected to an overhead view of the claimed tail because it lacked contour lines showing the tail curved, as was already shown in the side-views. Dkt. 122-1 at 119. |
| | 58. | To gain allowance, Su and Krepack submitted a new drawing further limiting the claimed shape and slope | Disputed as to any limitation on claimed shape and slope of tail. The prosecuting attorney merely added |

|  |  | | |
|---|---|---|---|
|  |  | of the tail. | contour lines to the overhead view to match what was already shown in the side-views, and the USPTO accepted the amended overhead drawing. Dkt. 122-1 at 128. |
|  | 59. | BigMouth's Beverage Boat is circular and D'370 has an oblong shape making them visually distinctive. | Disputed. The accused product is nearly identical to the patented design. The overall impression of the two is the same. An ordinary observer, someone making an extremely low-investment purchase for short-term use, would be likely to confuse the accused product with the patented design. Ex. C at DELM-044, 084-90. |
|  | 60. | D'370 has a thick and short tail that is positioned towards the back and lowered. BigMouth's Beverage Boat has a long and narrow tail that sits closer to the top of the swim ring and is attached at a shorter circumference. | Disputed. The tail on the accused product is nearly identical to the patented design. The overall impression of the two is the same. Ex. C at 084-90. |
|  | 61. | D'370 has a high sweeping curve BigMouth's Beverage Boat has a less sweeping and less sloped tail. | Disputed. The tail on the accused product is nearly identical to the patented design. The overall impression of the two is the same. Ex. C at 084-90. |
|  | 62. | The eye feature on the BigMouth Beverage Boat's right side is winking with three extended eyelashes that gives the character a feminine personality. | Undisputed one eye on the Beverage Boat is winking. Disputed regarding the "feminine personality," as men too can wink. Further, the eye on the other side of the Beverage Boat is the exact same circle-within-circle design as claimed in the '370 patent, and the overall impression of the Beverage Boat and the patented design is the same. Ex. C at 084-90. |
|  | 63. | On the left side, the float has an open eye with a smaller white circle at the top of a larger black circle. | Undisputed. The eye on the accused product is nearly identical to the eye claimed in the patented design. The |

| | | | |
|---|---|---|---|
| | | | overall impression of the two is the same. Ex. C at 084-90. |
| 64. | | D'370 lacks nostrils, which are prominently discernible on BigMouth's Beverage Boat. | Undisputed that the '370 patent does not claim painted-on nostrils.<br><br>Disputed that the painted-on nostrils are relevant or distinguish the accused products from the patented design. The overall impression of the patented design and accused product is the same. Further, the painted-on exterior graphics should carry no weight. Ex. C at Delman Rebut. ¶¶ 41-46, DELM-084-90. |
| 65. | | The head shapes between the designs also differ. D'370 has a shorter and rounder head shape akin to an oval. Conversely, BigMouth's Beverage Boat has a longer head shape that narrows in the nostril/mouth area. | Disputed. The head shape on the accused product is nearly identical to the patented design. The overall impression of the two is the same. Ex. C at 084-90. |
| 66. | | Bigmouth's Beverage Boat has larger ears than D'370. | Disputed. The ears on the accused product are nearly identical to the patented design. The overall impression of the two is the same. Ex. C at 084-90. |
| 67. | | The mane width and length maintain obvious variations. D'370 has a shorter mane that covers less of the float's neck. BigMouth's Beverage Boat has a longer mane that runs downs almost to the entire back of the neck. | Disputed. The mane on the accused product is nearly identical to the patented design. The overall impression of the two is the same. Ex. C at 084-90. |
| 68. | | The claimed design has linear shelllike striations its mane. Conversely, BigMouth's Beverage Boat is patterned with wavy locks that mimic the typical flowing style of a unicorn mane. | Disputed. The mane on the accused product is nearly identical to the patented design. The overall impression of the two is the same. It is also disputed that the painted-on "wavy locks" are relevant or distinguish the accused product from |

| | | | |
|---|---|---|---|
| | | | the patented design. Ex. C at Delman Rebut. ¶¶ 41-46, DELM-084-90. |
| 69. | The Accused Product has distinct wing markings on the either side of the swim ring. D'370 does not have any wings in its design. | | Undisputed that the '370 patent does not claim exterior graphics and as such does not claim the particular set of wings painted on the accused product.<br><br>Disputed that the painted-on wings are relevant or distinguish the accused product from the patented design. The overall impression of the patented design and accused products is the same. Further, the painted-on exterior graphics should carry no weight. Ex. C at Delman Rebut. ¶¶ 41-46, DELM-084-90. |
| 70. | D'370 has a thin horn that narrows as it comes to a pronounced point. Like its ears and mane, the D'370 horn has a linear marking. Contrary to the claimed design, BigMouth's Beverage Boat has a thicker and rounded horn that is unmarked. | | Disputed. The horn on the accused product is nearly identical to the patented design. The overall impression of the two is the same. It is also disputed that the painted-on "linear marking" is relevant or distinguish the accused product from the patented design. Ex. C at Delman Rebut. ¶¶ 41-46, DELM-084-90. |
| 71. | No ordinary observer would mistake BigMouth's Beverage Boat for the claimed design. | | Disputed. The accused product is nearly identical to the patented design. The overall impression of the two is the same. An ordinary observer, someone making an extremely low-investment purchase for short-term use, would be likely to confuse the accused product with the patented design. Ex. C at DELM-044, 084-90. |
| 72. | Plaintiff previously asserted infringement claims against P&P Imports' unicorn floats, including its unicorn beverage float. | | Disputed. Defendants' own exhibits show that P&P filed a declaratory judgment action against Covves relating to the '617 patent, which had |

| | | |
|---|---|---|
| | | nothing to do with the '370 patent or P&P's cupholder float. Dkt. 111-4, Exhibit D. Covves further agreed P&P's cupholder float was *not* infringing any of Covves' patents. Dkt. 111-4, Exhibit E at 3 (ECF page numbering is illegible). |
| 73. | D'617 is a simple and obvious combination of the primary reference with supplemental core designs from the secondary references. | Disputed. The '617 patent claims a unicorn float design that is novel and nonobvious. Defendants have not identified any proper primary reference that is "basically the same" as the patented design, or any suggestion to combine features from disparate secondary references to create a similar design. Ex. C at Delman Rebut. ¶¶ 65-91, DELM-010-14, 092-118 |
| 74. | D'370 is a simple and obvious combination of the primary reference with supplemental core designs from the secondary references. | Disputed. The '370 patent claims a unicorn cupholder design that is novel and nonobvious. Defendants have not identified any proper primary reference that is "basically the same" as the patented design, or any suggestion to combine features from disparate secondary references to create a similar design. Ex. C at Delman Rebut. ¶¶ 65-91, DELM-015-21, 119-142. |
| 75. | Using the P&P Float, a float designer with ordinary skill could, with minimal effort, add the raised mane from the Rita Float, tail from the Mean Unicorn, and eye and rounded face from the Cute Unicorn to arrive at the D'370 design. | Disputed. Defendants' expert is not an ordinary designer of skill in the art and is not qualified to opine. The '370 patent claims a unicorn cupholder design that is novel and nonobvious. The P&P float is not a proper primary reference, as it is not "basically the same" as the patented design. Nor have Defendants identified any suggestion to combine features from disparate secondary |

| | | references to create a similar design. Nor have Defendants considered objective indicia of nonobviousness. Ex. C at Delman Rebut. ¶¶ 65-91, DELM-015-21, 119-142. |
|---|---|---|

## II.  Plaintiff's Additional Material Facts

| No. | Additional Material Fact | Evidence |
|---|---|---|
| 76. | Covves designs and sells inflatable pool toys under the brand #GetFloaty. In August 2015, Covves started selling the "Giant Unicorn" pool float. In August 2016, Covves started selling the "Mini Unicorn Cup Holder," an inflatable cupholder shaped like a unicorn. In August 2016, Covves started selling its "Big Unicorn" pool float, a slightly smaller version of the Giant Unicorn. | Ex. A ¶ 2 |
| 77. | The design of Covves' unicorn float was developed through collaboration between Covves' owner, Benson Su, Louis Lo, Adam Krepack, and Tomislav Vuksic. The float was designed to look minimalist and stylized, rather than realistic. The intent was to appeal to adult consumers who were part of a growing segment interested in novelty pool floats popular on social media sites like Instagram, rather than children, to whom most earlier pool floats were marketed. | Ex. A ¶ 3 |
| 78. | Covves owns all right, title, and interest in and to U.S. Patent Nos. D787,617 and D783,370 (the "patents-in-suit"). The '617 patent covers the design embodied in Covves' Giant Unicorn float. The '370 patent covers the design embodied in Covves' Mini Unicorn Cupholder. | Ex. A ¶ 4 |
| 79. | Covves' unicorn floats were a commercial success. In 2016, Covves sales of the Giant Unicorn float exceeded $420,000, and sales in 2017 exceeded $306,000. The Giant Unicorn was Covves' best-selling float in 2016-17. | Ex. A ¶ 8 |
| 80. | Covves' Mini Unicorn Cupholder was also very successful commercially. From the release date in August 2016 through August 2019, Covves has sold more than 17,800 cupholder floats for revenues exceeding $121,000. | Ex. A ¶ 9 |
| 81. | The Giant Unicorn float became extremely popular in 2016- | Ex. A ¶ 5, |

| | | |
|---|---|---|
| | 2017 and received much media attention, including features on The Today Show, Vogue, Elite Daily, Popsugar, and Harper's Bazaar, and other media outlets. In June 2016, Observer magazine stated Covves' Giant Unicorn had unseated the swan as the most popular pool float. | Attachment ("Att.") 1 |
| 82. | Covves has built a strong social media presence and its unicorn floats have been featured in many celebrity Instagram accounts. Covves worked with Emily Rose Hannon, a social media influencer. Covves gave Ms. Hannon a Giant Unicorn float in exchange for her posting photos on Instagram and tagging Covves' #GetFloaty brand. The float in photos attached to Exhibit A is the Giant Unicorn float, and Covves' account, #GetFloaty, was tagged in those posts. | Ex. A ¶¶ 6-7, Atts. 2-3 |
| 83. | The Giant Unicorn is a commercial embodiment of the '617 patent. In November 2016, a BigMouth designer emailed a design document to its manufacturer that included a photograph of Covves' Giant Unicorn from Ms. Hannon's Instagram page as a "Reference Image." Covves' expert, Joel Delman, opined that evidence and BigMouth's lack of other design documents, indicates BigMouth's manufacturer copied Covves' Giant Unicorn in manufacturing unicorn floats for BigMouth. | Ex. A ¶ 4; Ex. B ¶ 5, Att. 4; Ex. C at DELM-211-14, 222-24 |
| 84. | In response to requests for production in federal district court, BigMouth has not produced any other design documents relating to the Imitation Unicorns, and it has not produced any design documents at all relating to the Beverage Boats. | Ex. B ¶ 6 |
| 85. | BigMouth distributed each accused product. These include: (a) unicorn-shaped floats for a person to ride on, referred to as the Large Raft Float, Large Ring Float, Pride Float, and Small Ring Float (together, the "Imitation Giant Unicorn Floats"); and (b) unicorn-shaped inflatable cupholders, referred to as Beverage Boats. Together, these are referred to herein as "Imitation Unicorns." | Ex. B ¶ 4, Att. 3; Ex. C at DELM-031-32 |
| 86. | Defendants sold the Imitation Giant Unicorn Floats for between approximately $15-$30 and sold two- or three-packs of the Beverage Boats for approximately $9.99 or less. Covves sold its Giant Unicorn for approximately $59.99, its Big Unicorn for approximately $39.99, and its Mini Unicorn Cupholder for $12.99. | Ex. B, Att. 5; Ex. C at DELM-043 |
| 87. | The ordinary observer in this case would be a man or woman | Ex. C at |

| | | |
|---|---|---|
| | in the age range of 18-45. The attention given to the purchase of an inflatable pool toy would be rather limited, as the observer is likely shopping online and often on a small smartphone or tablet screen, by clicking through pages for a novelty item of relatively low price points that they will not be using for a lengthy period of time, or for serious functional purposes. The purchase of such items is sometimes referred to as a "low investment purchase" by designers and marketing professionals, referring to a decision for which the potential downside is perceived as minimal by the purchaser, and for which an accordingly limited amount of decision making is devoted to the transaction. As such, an observer would generally not spend an extended amount of time in his or her comparison of products, or spend a great deal of time attempting to discern subtle differences amongst and between the product designs when they appear similar, knowing that they will likely use the float for a short time and then replace it in the future, purchasing a new one the following season when a particular design may no longer be in fashion, or with a new design through which hoped for attention may be gained from friends and social media followers. | DELM-044 |
| 88. | Defendants' expert admitted the P&P float did not have the same separate inflatable mane, protruding ears, or nose shape as the design claimed in the '370 patent. | Dkt. 110-10 at 59-60 |
| 89. | In the years after Covves released its commercial embodiments, others in addition to BigMouth began selling unicorn floats but with significantly different designs. There are now dozens of other unicorn pool floats on the market that look very different from Covves' patented design. | Ex. C at DELM-257-87 |
| 90. | BigMouth now makes three other unicorn-shaped floats and another unicorn beverage float that are different from the patented design and which Covves has not alleged are infringing. | Ex. C at DELM-289-96 |
| 91. | The '617 patent design creates the visual impression of a streamlined simplified unicorn with a rounded and smooth nose and head, raised mane, conical horn, protruding conical ears, and a swooping S-shaped tail. | Ex. C at DELM-047-50 |
| 92. | The Rita horse creates the visual impression of a real horse. It is realistically horse-shaped in all aspects—head, neck, body, rump, and ears. | Ex. C at Delman Rebut. ¶¶ |

| | | | 68-71 |
|---|---|---|---|
| 93. | The USPTO considered eight horse-shaped floats in during prosecution of each of the patents-in-suit. | | Ex. C at DELM-298-309, 404-10, 430-32, 495-97 |
| 94. | The design claimed in the '370 patent presents the overall visual impression of a streamlined, simplified representation of a unicorn with a conical protruding horn and ears, a raised mane running down an ovoid neck, rounded nose and head, donut-shaped body, and an S-curved swooping tail. | | Ex. C at DELM-052-56 |

DATED:  November 18, 2019

Respectfully submitted,

THE MCARTHUR LAW FIRM, PC

By: */s/ Thomas Dietrich*
Stephen McArthur
Thomas Dietrich

*Attorneys for Plaintiff Covves, LLC*

## <u>CERTIFICATE OF SERVICE</u>

Case Name: *Covves, LLC v. Dillard's, Inc. et al.*
Case No.: 2:18-cv-8518-RGK-AFM

IT IS HEREBY CERTIFIED THAT:

      I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 11400 West Olympic Boulevard, Suite 200, Los Angeles, CA 90064. I am not a party to the above-entitled action.

      I have caused service of the following documents, described as:

**PLAINTIFF'S STATEMENT OF GENUINE DISPUTES IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

and exhibits attached thereto on the following parties by electronically filing the foregoing on November 18, 2019, with the Clerk of the District Court using its ECF System, which electronically notifies them.

Morgan Nickerson                *Attorneys for Defendants*
K&L Gates LLP
Morgan.Nickerson@klgates.com
1 Lincoln St.
Boston, MA 02111

Caitlin C. Blanche
K&L Gates LLP
caitlin.blanche@klgates.com
1 Park Plaza, 12th Floor
Irvine, CA 92618

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: ___11/18/2019___    By: ___*/s/ Thomas Dietrich*___
                              Thomas Dietrich