Stephen C. McArthur (State Bar No. 277712)
stephen@smcarthurlaw.com
Thomas E. Dietrich (State Bar No. 254282)
tom@smcarthurlaw.com
THE MCARTHUR LAW FIRM, PC
9465 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90212
Telephone: (323) 639-4455

*Attorney for Plaintiff Covves, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COVVES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DILLARD'S, INC. a Delaware Corporation;<br>KOHL'S CORPORATION, a Wisconsin Corporation;<br>SAKS & COMPANY LLC, a Delaware Corporation;<br>TARGET BRANDS, INC. a Minnesota Corporation;<br>EXPRESS, INC., a Delaware Corporation;<br>TILLY'S, INC. a Delaware Corporation;<br>NORDSTROM, INC., a Washington Corporation;<br>WEST MARINE, INC., a Delaware Corporation, and<br>ZULILY, INC. a Delaware Corporation.<br><br>Defendants. | Case No. 2:18-CV-8518-RGK-AFM<br><br>**DECLARATION OF STEPHEN MCARTHUR IN SUPPORT OF PLANTIFF COVVES, LLC'S MOTION TO REOPEN CASE AFTER BREACH OF SETTLEMENT AGREEMENT** |

I, Stephen McArthur, declare as follows:

1.     I am an attorney at law, duly admitted into practice before the State of California and this Court. I am an attorney with The McArthur Law Firm, P.C., counsel for Plaintiff Covves, LLC ("Covves"). I make this Declaration in support of Covves' Motion to Reopen Case After Breach of Settlement Agreement ("Motion"). The matters set forth herein are of my own personal knowledge, and if called upon to testify as to such matters, I could and would do so.

2.     Covves filed the instant lawsuit against both BigMouth Inc. and BigMouth LLC (together, "BigMouth") and the Retailer Defendants in the Central District of California. Due to BigMouth disputing jurisdiction in this Court, Covves dismissed BigMouth without prejudice and filed a separate lawsuit against BigMouth in its home court in the Southern District of Indiana.

3.     Attached hereto as <u>Exhibit A</u> is a true and correct copy of an excerpt of Retailer Defendants' initial disclosures identifying that BigMouth was indemnifying each Retailer Defendant. BigMouth and Retailer Defendants shared the same counsel at KL Gates, LLP, and their counsel stated in discussions that BigMouth was in control of the litigation and was fully indemnifying and defending all Retailer Defendants.

4.     Attached hereto as <u>Exhibit B</u> is a true and correct copy of the settlement agreement entered into between Covves and BigMouth and Retailer Defendants (the "Agreement"). The document has had confidential information such as the payment amounts redacted.

5.     BigMouth paid Covves the Initial Payment, as defined in the Agreement. However, BigMouth failed to make the first Quarterly Payment, which was due September 30, 2020.

6.     In response to BigMouth's failure to pay, Covves sent a notice of default as contemplated by the Agreement on October 6, 2020, and Defendants' counsel, Mr. Nickerson, confirmed receipt the following day. Attached hereto as

MCARTHUR DECL. ISO PLAINTIFF'S
MOTION TO REOPEN
Case No. 2:18-cv-8518-RGK-AFM

Exhibit C is a true and correct copy of Covves' notice of default with confidential information redacted.

7.    In a subsequent phone call, Mr. Nickerson stated he no longer represented BigMouth but still represented Retailer Defendants. I therefore contacted BigMouth's new counsel, who informed me that BigMouth had been taken into receivership by an Indiana court and would not pay the settlement amount owed. BigMouth's counsel stated that BigMouth will not pay Covves the remaining six Quarterly Payments owed under the settlement agreement.

8.    Attached hereto as Exhibit D is a true and correct copy of a news article covering BigMouth's insolvency and receivership.

9.    I have been informed by licensed Indiana counsel and believe that the Indiana state court handling BigMouth's receivership has implemented a stay barring third parties from filing suit against BigMouth and barring BigMouth from participating in any such suit. Covves therefore has no option for obtaining additional payment of the settlement amounts owed from BigMouth, and BigMouth has no ability to pay.

10.    During the course of discovery in this case, Covves learned that Target alone had 98 percent of total sales of infringing products, while all other Retailer Defendants combined had just two percent of total sales. Because of this, Covves extended very low settlement offers to the non-Target Retailer Defendants with minimal sales. However, Defendants' counsel stated that BigMouth was fully covering all Retailer Defendants' legal fees and BigMouth rejected every settlement offer made to individual Retailer Defendants.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 20, 2020 at Beverly Hills, California.

*/s/ Stephen McArthur*

# EXHIBIT A

1  Michael E. Zeliger (State Bar No. 271118)
   michael.zeliger@klgates.com
2  Ranjini Acharya (State Bar No. 290877)
   ranjini.acharya@klgates.com
3  **K&L GATES LLP**
   620 Hansen Way
4  Palo Alto, CA 94304
   T: (650) 798-6700
5  F: (650) 798-6701

6  Caitlin C. Blanche (State Bar No. 254109)
   caitlin.blanche@klgates.com
7  **K&L GATES LLP**
   1 Park Plaza, Twelfth Floor
8  Irvine, CA 92614
   T: (949) 623-3526
9  F: (959) 253-0902

10

11 *Attorneys for Defendants*

12              UNITED STATES DISTRICT COURT

13            CENTRAL DISTRICT OF CALIFORNIA

14 COVVES, LLC,                          | **Case No. 2:18-cv-08518-RGK-AFM**

15         Plaintiff,                     | **DEFENDANTS' RULE 26(a) INITIAL DISCLOSURES**

16    vs.                                 | Honorable R. Gary Klausner

17 DILLARD'S, INC. a Delaware
   Corporation;
18 KOHL'S CORPORATION, a
   Wisconsin Corporation;
19 SAKS & COMPANY LLC., a
   Delaware Corporation;
20 TARGET BRANDS, INC. a Minnesota
   Corporation;
21 EXPRESS INC., a Delaware
   Corporation;
22 TILLY'S, INC. a Delaware
   Corporation;
23 NORDSTROM, INC., a Washington
   Corporation;
24 WEST MARINE, INC., a Delaware
   Corporation,
25 and
   ZULILY, INC. a Delaware
26 Corporation.

27    Defendants.

28

---

**DEFENDANTS' RULE 26(a) INITIAL DISCLOSURES**          CASE NO. 2:18-CV-08518

**D.**      **Liability Insurance**

Defendants are not parties to any insurance agreements that are relevant to this action. Defendants are each parties to indemnification agreements with BigMouth that are relevant to this action.

*[SIGNATURE PAGE FOLLOWS]*

1    DATED: April 23, 2019

2                       K&L GATES LLP

3                       /s/ *Morgan T. Nickerson*

4                       Morgan T. Nickerson
                        Michael E. Zeliger

5                       Ranjini Acharya
                       Caitlin C. Blanche

6

7                       *Attorneys for Defendants*
                      Dillard's, Inc.
                      Kohl's Corporation

8                       Saks & Company, LLC,
                      Target Corporation,

9                       Express, Inc.,
                      Tilly's, Inc.,

10                     Nordstrom, Inc.,
                    West Marine, Inc., and

11                     Zulily, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (hereinafter, the "Agreement") is entered into as of the date executed herein by and between **Plaintiff Covves, LLC** ("**Covves**" or "**Plaintiff**") and **Defendants Bigmouth, Inc.** and **Bigmouth LLC** (collectively, "**Bigmouth**") with its co-defendants Dillard's, Inc, Kohl's Corporation, Saks & Company LLC, Target Brands, Inc, Express, Inc., Tilly's, Inc., Nordstrom, Inc., West Marine, Inc., and Zulily, Inc. (the "**Indemnified Parties**") (collectively with Bigmouth, the "**Defendants**").  Plaintiff and Defendants shall hereinafter be referred to collectively as "the Parties."

## RECITALS

**WHEREAS** Covves is the owner of two registered design patents, U.S. Patent No. D787,617 and U.S. Patent No. D783,370 (hereinafter referred to as "**Unicorn Patents**").

**WHEREAS**, Covves has filed actions against the Indemnified Parties in the United States District Court for the Central District of California, entitled *Covves v. Dillard's, et al.,* bearing Case No. 2:18-cv-08518-RGK-AFM (the "California Action") and against Bigmouth in the United States District Court for the Southern District of Indiana, entitled *Covves v. BigMouth, LLC, et al.,* bearing Case No. 1:18-cv-03307-JMS-TAB (the "Indiana Action") (collectively, hereinafter the "**Civil Actions**"), alleging, among other things, design patent infringement based on Bigmouth's manufacturing and selling and the Indemnified Parties' selling the unicorn floatation products shown in Exhibit 1 (the "**Accused Products**");

**WHEREAS**, The Parties desire to conclude, resolve and settle all claims relating to the Civil Actions;

**NOW, THEREFORE**, in consideration of the mutual promises and covenants herein contained and other valuable, full and complete consideration, the receipt and sufficiency of which are hereby specifically acknowledged by the Parties, and without the Defendants admitting liability, the Parties hereto agree as follows:

## 1.0   SETTLEMENT PAYMENT AND DISMISSAL

1.1   Settlement Payment. BigMouth shall pay Covves ▮▮▮▮▮ (the "Settlement Payment").  The Settlement Payment shall be made in United States currency.  An initial payment of ▮▮▮▮ shall be made by wire transfer to Covves within 24 hours from the execution of this Agreement (the "Initial Payment") with the remainder ▮▮▮▮ due in six equal quarterly payments of ▮▮▮▮. (each a "Quarterly Payment"). The Initial Payment and Quarterly Payments shall be made by wire transfer to Covves' counsel's client trust account, using the following information:

1



The six Quarterly Payments totaling ▮▮▮▮▮ are due on September 30, 2020, December 31, 2020, March 31, 2021, June 30, 2021, September 30, 2021, and December 31, 2021. Interest of ▮▮▮▮▮, compounding, will accrue on any late payments.

1.2    <u>Royalty</u>. Bigmouth shall pay to Covves a ▮ royalty on all sales worldwide, minus returns, and allowances, made after June 1, 2020, of any of the Accused Products, or any products of any size that are substantially the same as the Accused Products (the "Royalty"). ▮▮▮▮▮▮▮▮▮▮▮▮
        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

1.3    <u>Audit Rights</u>.  Covves is entitled to audit rights and accurate sales reporting from Bigmouth regarding the Royalty. In order to assure Covves the accuracy of reporting of sales for the calculation of royalty payments, upon fifteen (15) days' notice to Bigmouth, once per calendar year, Covves has the right to inspect the Bigmouth's books, records, QuickBooks or other relevant accounting software, and all other documents and material in the possession of or under the control of Bigmouth and all of its affiliates, subsidiaries, parents, successors, assigns, or related companies, to verify the calculation of the Royalty payments and the number of Accused Products sold and amount they were sold for, at the place or places where such records are normally kept by Bigmouth. Such audit may be made by direct view-only access to Bigmouth's QuickBooks database (or similar program which is used by Bigmouth).

       In the event such inspection reveals any agreed upon deficiency in the amount of the Royalty, Bigmouth shall, within ten (10) days, pay to Covves the difference plus ten percent interest. Covves shall bear the burden of its own costs for the audit. However, a deficiency is found amounting to 5% or more of the Royalty owed for any audited payment period, then Bigmouth shall reimburse the total reasonable costs of the audit and recovery.

1.4    <u>Dismissal</u>. The Parties shall execute and file in both Civil Actions a joint *Stipulation of Dismissal of Action Without Prejudice* with the Courts

retaining jurisdiction to enforce the settlement agreement (included as **Exhibits 2** and **3**) within two (2) business days of receipt and clearance of the Initial Payment.

## 2.0   <u>MUTUAL RELEASES</u>

2.1   <u>By Covves.</u>  In consideration of the full and faithful performance of the terms and conditions of this Agreement, Covves and Plaintiff's successors in interest, predecessors, heirs and assigns, release Defendants and its present and former affiliates, parents, insurers, subsidiaries, predecessors, successors and assigns and all their respective shareholders, partners, members, directors, officers, employees, agents, attorneys, and all of its retailers, distributors, or any other entity in that has distributed or manufactured the Accused Products from any and all claims, demands, causes of action, losses and liabilities in law or in equity, past or present, which Covves (or its heirs, executors, administrators, successors or assigns) has, as of the Effective Date, relating to the Accused Products.

2.2   <u>By Defendants.</u>  In consideration of the full and faithful performance of the terms and conditions of this Agreement, Defendants, on behalf of itself and its successors in interest, predecessors, parent companies, subsidiary companies, heirs and assigns, owners, officers and each of them release Covves from any and all claims, demands, causes of action, losses and liabilities in law or in equity, past or present, which Defendants (or their heirs, executors, administrators, successors or assigns) now has, may have assert against Covves, relating to the Accused Products, Unicorn Patents or the claims alleged in the Civil Actions.

2.3   Each party shall bear their own attorneys' fees and costs associated with the Civil Actions.

2.4   Defendants will not challenge, oppose, cancel, or otherwise object to or interfere with the Unicorn Patents or Plaintiff's use or registration thereof, whether now or in the future. Defendants and their agents, employees, parents, subsidiaries and attorneys further agree not to support, aid, or assist any other third party in contesting the validity or enforceability of any of the Unicorn Patents unless called upon to testify or upon receipt of a validly issued subpoena.

2.5   The Parties acknowledge that they have had the opportunity to confer with counsel regarding the provisions of California Civil Code section 1542, that they are familiar with said provisions, and that they willingly and knowingly waive any and all rights they have or may have pursuant to that section. The Parties acknowledge and agree that they may hereafter

3

discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the claims released. Section 1542 of the California Civil Code provides as follows:

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."**

## 3.0   REMEDY FOR DEFAULT

3.1   Any Party claiming the other Party has defaulted on or otherwise breached the other Party's obligations under this Agreement ("Claiming Party") shall provide prompt written notice of such alleged default or breach. The Party alleged to have defaulted under or to have breached this Agreement shall be given seven (7) business days to cure any alleged default or breach to the satisfaction of the Claiming Party. If, after the cure period, the alleged default or breach is not cured to the satisfaction of the Claiming Party, the Claiming Party may initiate the necessary proceedings to enforce and/or otherwise recover damages as a result of the alleged breach. The prevailing party shall be entitled to its reasonable attorneys' fees and costs.

3.2   All notices and other communications hereunder shall be in writing and must be sent via postal mail and email as follows:

As to Defendants:                As to Plaintiff:
Attn: Morgan Nickerson           Attn: Stephen McArthur
K&L Gates LLP                    The McArthur Law Firm, PC
1 Lincoln St                     11400 W. Olympic Blvd., Ste 200
Boston, MA 02111                 Los Angeles, CA 90064
Morgan.Nickerson@klgates.com     stephen@smcarthurlaw.com

3.3   If, after written notice of default, BigMouth is more than 30 days late on its Initial Payment or any one of its six Quarterly Payments, then Covves, at its option, may choose to reinstate and reopen the California Action and Indiana Action, including any and all claims and requests for damages. In this event, the Settlement Payment made to Covves will be considered accrued against any judgment in the Indiana Action and shall not be counted against or accrued against any judgment in the California Action. This remedy is in addition to any other remedies that may be available to Covves.

4

**4.0   REPRESENTATIONS AND WARRANTIES**

Each individual signing this Agreement on behalf of a corporation, partnership, or proprietorship, represents and warrants that she or he has the authority and power to enter into this Agreement on behalf of such entity for which he/she is signing, and that all necessary corporate resolutions and/or corporate formalities have been followed granting full authority and power to each such individual to sign this Agreement on behalf of each respective entity, and to bind each entity to this Agreement.

**5.0   CONFIDENTIALITY**

The Parties hereby agree to keep the terms of this Agreement confidential except as follows: They may discuss this Agreement with their legal counsel, accountant or other tax advisor provided they agree to keep said information confidential and be bound by the Agreement. Either party may disclose this Agreement to the extent necessary to enforce its terms, as required by law, or in efforts to enforce or license their intellectual property. In response to any inquiry regarding the disposition of the matter, either party or its representatives may state that the Parties have reached a mutually agreeable and confidential resolution, or they may refer to the matter as "resolved" or "settled". In litigation, either party may produce this agreement if marked as ATTORNEYS' EYES ONLY pursuant to an entered protective order.

**6.0   ENTIRE AGREEMENT, MODIFICATIONS AND OTHER GENERAL PROVISIONS**

6.1   Integrated Agreement.  The Parties agree and acknowledge that this Agreement constitutes and contains the entire agreement and understanding of the Parties concerning the subject matters hereof, and supersedes and replaces all prior negotiations, proposed agreements, or agreements, written, oral, or implied.

6.2   Binding Nature.  The Parties agree that this Agreement and all of its terms shall be binding upon their respective heirs, successors, subsidiaries trustees, related companies, assigns, and licensees.

6.3   Governing Law.  This Agreement shall in all respects be interpreted, enforced and governed exclusively by and under the laws of the State of California. The Parties agree that venue for any dispute arising out of, concerning, or relating to this Settlement Agreement or its subject matter are in Los Angeles, California or the Central District of California, and said courts shall be the sole and exclusive forum for resolution of any such dispute, and the Parties waive all personal jurisdiction objections.

6.4 <u>Equitable Relief</u>. The Parties hereby recognize that Covves is likely to suffer irreparable damage in the event of BigMouth's breach of any of the covenants and assurances contained in this Agreement. As such, in the event of a court order finding BigMouth's breach of any of the covenants and assurances contained in this Agreement, Covves may enjoin and restrain BigMouth from violation or continued violation of said covenant or assurance. Such remedies will not be the exclusive remedies for any breach of this Agreement, but will be in addition to all other remedies available at law or equity to the non-breaching party, including an action for damages.

6.5 <u>Construction</u>.  No party, nor any of the Parties' respective attorneys, shall be deemed the drafter of this Agreement for purposes of interpreting any provision hereof in any judicial or other proceeding that may arise between or among them.

6.6 <u>Titles</u>.  Titles contained in this Agreement are inserted only as a matter of convenience and are for reference purposes only.  Such titles are not intended to define, limit expand, or describe the scope of this Agreement or the intent of any provision hereof.

6.7 <u>Counterparts.</u> This Agreement may be executed in multiple counterparts, each of which will be an original, but all of which together shall constitute one and the same instrument. Scanned, digital, or electronic signatures shall be treated as valid originals for all purposes.

6.8 <u>Severability.</u> If any provision or part of this Agreement is for any reason held to be invalid, unenforceable, or contrary to public policy, law, or statute, the remainder of this Agreement, which can be given effect without the invalid provision or portion thereof, will not be affected thereby and will remain valid and fully enforceable.

**IN WITNESS THEREOF**, the Parties hereto have executed this Agreement on the dates signed below.

**BIGMOUTH, INC.**

**BIGMOUTH, LLC**

By: _Steph D Wampold_

By: _Steph D Wam_

Name: _STEPHEN G WAMPOLD_

Name: _STEPHEN G. WAMPOLD_

Title: _CEO_

Title: _CEO_

Dated: _1-7-20_

Dated: _1-7-20_

**TARGET BRANDS, INC.**

**By:** _____

**Name:** _____

**Title:** _____

**Dated:** _____

**COVVES, LLC**

By: _____

Name:     Benson Su

Title:     CEO

Dated: _____

**BIGMOUTH, INC.**                    **BIGMOUTH, LLC**


By: _____          By: _____
Name: _____          Name: _____
Title: _____         Title: _____

Dated: _____                  Dated: _____


**TARGET BRANDS, INC.**

**By:** _____
**Name:** _Soupa Seidl_____
**Title:** _Director Counsel litigation_

**Dated:** _1/8/2020_____


**COVVES, LLC**

By: _____
Name:      Benson Su
Title:      CEO

Dated: _____

## **EXHIBIT 1**

The Accused Products include the products depicted below, regardless of coloration or exterior graphics. The list of product numbers is not limiting, and the Accused Products include any of these floats whether referred to by these or any other product number.



BMDF-0009  Magical Unicorn Bev Boats - 2PK
KODF-0009  Magical Unicorn Bev Boats - 4PK (Kohls Exclusive)
TADF-0009  Magical Unicorn Bev Boats - 3PK (Target Exclusive)
TODF-0021  Unicorn Bev Boat - 3PK (Target)



TAPF-0027  Glitter Wing Unicorn Pool Float (Target Exclusive)
TOPF-0027  Glitter Wing Unicorn Pool Float -Target
MAPF-0005  Glitter Unicorn Pool Float (Macy Exclusive)
BMPF-0027  Glitter Wing Unicorn Pool Float



BMLF-0009  Unicorn LIL FLOATS-TARGET
TOLF-0009  Unicorn LIL FLOATS-TARGET



BMPF-0065  Bright Unicorn Tube Pool Float
KOPF-0065  Bright Unicorn Tube Pool Float (Kohls exclusive w/ bag)



TOPF-0115  Unicorn Pride Pool Float -Target

1

## **EXHIBIT 2**

2
3
4
5
6

Stephen C. McArthur (State Bar No. 277712)
stephen@smcarthurlaw.com
Thomas E. Dietrich (State Bar No. 254282)
tom@smcarthurlaw.com
THE MCARTHUR LAW FIRM, PC
11400 W. Olympic Blvd. Suite 200
Los Angeles, CA 90064
Telephone: (323) 639-4455

7

*Attorney for Plaintiff Covves, LLC*

8
9
10
11

Morgan Nickerson                          Caitlin C. Blanche
morgan.nickerson@klgates.com   caitlin.blanche@klgates.com
K&L GATES LLP                          K&L GATES LLP
1 Lincoln St.                                1 Park Plaza, 12th Floor
Boston, MA 02111                       Irvine, CA 92618
Telephone: (617) 261-3100       Telephone: (949) 623-3526

*Attorneys for Defendants*

12
13

UNITED STATES DISTRICT COURT

14

CENTRAL DISTRICT OF CALIFORNIA

15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| COVVES, LLC,<br><br>                    Plaintiff,<br><br>     v.<br><br>DILLARD'S, INC. a<br>Delaware Corporation; et al.<br><br>                    Defendants. | Case No. 2:18-CV-8518-RGK-AFM<br><br>**JOINT STIPULATION OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE**<br><br>Hon. R. Gary Klausner<br>United States District Court Judge<br>**Trial Date**: January 14, 2020<br>**Time**: 9:00 a.m.<br>**Courtroom**: 850, 255 E. Temple St., Los Angeles, CA 90012 |

Pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, Plaintiff Covves, LLC ("Covves") and Defendants Dillard's, Inc., Kohl's Corporation, Saks & Company, LLC, Target Brands, Inc., Express, Inc., Tilly's, Inc., Nordstrom, Inc., West Marine, Inc., and Zulily, Inc. (together, "Defendants") hereby stipulate as follows:

1.      Covves and Defendants' indemnitors, BigMouth Inc. and BigMouth LLC (together, "BigMouth"), have entered into a confidential settlement agreement providing for payment of certain sums by BigMouth to Covves, the last of which is due approximately two years from January 7, 2020.

2.      Upon payment in full of the sums owing to Covves by BigMouth, Covves agrees to the voluntary dismissal with prejudice of any and all claims against Defendants that have been asserted in this case.

3.      The parties have agreed that until such time as the final payment is completed, the Court shall retain jurisdiction to enforce the settlement agreement and the parties shall agree to dismiss the action without prejudice.

4.      Each party will bear its own attorneys' fees and costs.


DATED:  January __, 2020          THE MCARTHUR LAW FIRM, PC

                                  By: _____
                                        Stephen McArthur
                                        Thomas Dietrich
                                        *Attorneys for Plaintiff Covves, LLC*


DATED:  January __, 2020          K&L GATES LLP

                                  By: _____
                                        Morgan Nickerson
                                        Caitlin C. Blanche
                                        *Attorneys for Defendants*

**EXHIBIT 3**

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

|  |  |
|---|---|
| | ) **Case No. 1:18-cv-03307-JMS-TAB** |
| | ) |
| **COVVES, LLC,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **BIGMOUTH INC., an Indiana** | ) |
| **Corporation; and BIGMOUTH LLC., an** | ) |
| **Indiana Limited Liability Company** | ) |
| | ) |
| | ) |
| | ) |

**JOINT STIPULATION OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE**

Pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, Plaintiff

Covves, LLC ("Covves") and Defendants BigMouth Inc. and BigMouth LLC (together,

"Defendants") hereby stipulate as follows:

1.      Covves and Defendants have entered into a confidential settlement agreement

providing for payment of certain sums by Defendants to Covves, the last of which is due

approximately two years from January 7, 2020.

2.      Upon payment in full of the sums owing to Covves by Defendants, Covves agrees

to the voluntary dismissal with prejudice of any and all claims against Defendants that have been

asserted in this case.

1

3.      The parties have agreed that until such time as the final payment is completed, the Court shall retain jurisdiction to enforce the settlement agreement and the parties shall agree to dismiss the action without prejudice.

4.      Each party will bear its own attorneys' fees and costs.


_____

Stephen C. McArthur (pro hac vice)
THE MCARTHUR LAW FIRM, PC
11400 W. Olympic Blvd., Ste. 200
Los Angeles, CA 90064
stephen@smcarthurlaw.com
Tel. (323) 639-4455

*Attorneys for Plaintiff*
*Covves, LLC*


Dated: January ---, 2020

_____

Morgan Nickerson (pro hac vice)
K&L GATES LLP
1 Lincoln St.
Boston, MA 02111
morgan.nickerson@klgates.com
Tel. (617) 261-3100

*Attorneys for Defendants*
*BigMouth Inc. and BigMouth LLC*

2

# EXHIBIT C



Stephen C. McArthur
9465 Wilshire Blvd #300
Beverly Hills, CA 90212

(323) 639-4455
stephen@smcarthurlaw.com

# LAW FIRM

*October 6, 2020*

**Via Postal Mail and Email**
Attn: Morgan Nickerson
K&L Gates LLP
1 Lincoln St.
Boston, MA 02111
Morgan.Nickerson@klgates.com

  *Re:*  NOTICE OF DEFAULT ON SETTLEMENT AGREEMENT

Dear Morgan,

This provides written notice of breach of the Settlement Agreement and Release (the "Agreement") entered into between our client, Covves, LLC ("Covves"), and your clients, BigMouth Inc. and BigMouth LLC (together, "BigMouth") together with Dillard's, Inc., Kohl's Corporation, Saks & Company LLC, Target Brands, Inc., Express, Inc., Tilly's Inc., Nordstrom, Inc., West Marine, Inc., and Zulily, Inc. (collectively with BigMouth, the "Defendants"). A copy of the Agreement is attached to this letter.

Under the Agreement, BigMouth was required to pay to Covves the first quarterly payment of ▮▮▮▮▮▮▮ on September 30, 2020, by wiring the funds to our firm's IOLTA account. *See* Agrmt. § 1.1. That date has passed, and BigMouth has not made the mandated quarterly payment. BigMouth is therefore in breach of the Agreement, and compounding interest at a rate of ▮▮▮▮▮▮ will accrue on the late payment. Agrmt. § 1.1.

This letter further provides notice, that in accordance with section 3.3 of the Agreement, if BigMouth is more than 30 days late on the quarterly payment, Covves will promptly file a motion to reinstate and reopen the California Action and/or the Indiana Action, as defined in the Agreement. Covves will continue to pursue its claims for damages from infringement by Defendants, including Target whose potential damages in this case prior to the settlement exceeded ▮▮▮▮▮▮. Given that Target has continued to sell its infringing Large Unicorn Float, Lil' Float, and Beverage Boats throughout the spring and summer of 2020, damages have increased since the January 2020 settlement. As the Agreement specifies, the initial payment by BigMouth cannot be counted or accrued against Covves to reduce the amount of any judgment against Defendants in the California Action.

We understand BigMouth may be having financial difficulties. However, the company is still doing business and selling its floats to Target and other Defendants as well as on Amazon. In addition, even if BigMouth is not capable of making the payments required by the Agreement, the other Defendants, particularly Target, should take an interest in ensuring those payments are made. Otherwise, they will be brought back into litigation in California, facing trial after having

lost on summary judgment—this time without BigMouth indemnifying them. I hope this resolves the contractual breach and that Defendants can make the required quarterly payment and continue to abide by the agreed-upon payment schedule.

Please contact me by email at stephen@smcarthurlaw.com with any questions.

Best Regards,

THE MCARTHUR LAW FIRM, PC


*/s/ Stephen McArthur*
Stephen McArthur


Att.: Settlement Agreement and Release

# EXHIBIT D



🔍 Search
📰 Newsletters
🎙 Podcast
⚖ Public Notices

Subscribe Now     Log In

# Novelty-products firm BigMouth falls silent after years of hype

June 5, 2020 | Susan Orr

KEYWORDS **BANKING & FINANCE** / **MANUFACTURING** / **PRIVATE EQUITY**



*In 2017, then-CEO Frank Carpenito was upbeat about BigMouth's products and its future. (Photo courtesy of the Hartford Business Journal)*

Indianapolis-based investment firm CID Capital was brimming with optimism when it acquired Connecticut-based novelty products company BigMouth Inc. in November 2016 for an undisclosed sum. It said in a statement at the time that BigMouth was "still in the early pages of their success story."

And in a 2017 interview with the Hartford Business Journal, BigMouth's then-CEO said the company was aiming for $50 million in revenue that year, with annual revenue of $75 million to $100 million possible over the next few years.

That's not how things turned out for BigMouth, whose product lineup includes inflatable pool floats, novelty mugs and gag items like camouflage-patterned toilet paper.

The company defaulted on a debt payment April 1 and its board and CEO resigned a few weeks later. By the end of that month, a partner in the deal, Charlotte, North Carolina-based Capitala Private Advisors LLC, had filed suit against BigMouth, and a Marion County judge had put BigMouth under the control of a receiver who is now liquidating the company.

In a document included in the court filing, BigMouth cites various reasons for its financial troubles—including sharp sales declines caused by stay-at-home orders.

Observers, though, offer mixed opinions about how the COVID-19-related economic downturn might affect other private-equity-backed firms, whose financing typically includes a significant amount of debt. And they don't foresee a wave of business failures, even in the consumer-products sector, which is vulnerable to economic fluctuations.



"This is a one-time event," said Faraz Abbasi, senior partner at Indianapolis-based private equity firm Centerfield Capital Inc. "We feel, [in] the third and fourth quarter, things are going to start coming back."

*Abbasi*

BigMouth, though, doesn't appear to be headed for any comeback.

From the outside, it's difficult to get a complete picture of where things went wrong.

CID Capital Managing Director Scot Swenberg, who was a member of BigMouth's three-person board of directors until April 16, did not respond to multiple phone messages and e-mails.

BigMouth's court-appointed receiver, Gregg Stewart of Jensen Beach, Florida-based Rinnovo Management LLC, declined to comment, as did attorneys for Capitala, the North Carolina firm that has sued BigMouth in Marion Superior Court. The docket in the case does not yet include information on who will serve as BigMouth's legal counsel.

## Multiple troubles

But according to court documents, BigMouth's troubles began before COVID-19.

In October 2018, Los Angeles-based Covves LLC filed a patent infringement suit against BigMouth, claiming it copied the design of Covves' popular unicorn pool float and inflatable unicorn cup holder. The case was handled in U.S. District Court's Southern Indiana district in Indianapolis.

On Jan. 10 of this year, Covves and BigMouth reached a confidential settlement in which BigMouth agreed to pay Covves an undisclosed sum over the next two years.

When CID acquired BigMouth from its founder, Steve Wampold, in 2016, financing for the deal came from both Capitala and Tampa, Florida-based Cadence Bank. That financing included a $25 million term loan and a revolving credit commitment of $4 million.

By Jan. 30 of this year, that original credit agreement had been amended twice and Cadence Bank was no longer part of the deal.

BigMouth missed a debt payment April 1, putting the company in default under the terms of that agreement.

BigMouth appointed Stewart, of Rinnovo, chief restructuring officer on April 13 for purposes of liquidating the company.

In a document authorizing this action, the board wrote that BigMouth "has suffered significant setbacks and challenges including, among others: numerous customers canceled, delayed or significantly reduced orders for 2020 delivery; sharp decline in retailer sell-through of the company's core products resulting from state mandated stay at home orders, and company lack of liquidity necessary for ongoing operations."

On April 16, BigMouth's entire board —Wampold, Swenberg and CID Managing Director Corey Heck— resigned. The company's CEO, whose name is not included in court filings, also resigned.

Capitala filed suit against BigMouth April 23, claiming that BigMouth owes it $22.9 million. The amount, Capitala said in the filing, includes $20.7 million in principal on the term loan, $2 million in principal on the revolving credit, plus interest on both.

The same day, Capitala asked the court to appoint Stewart as receiver.

## Breakdown

*Indianapolis-based CID Capital had high hopes when it acquired Connecticut-based novelty products company BigMouth Inc. in 2016—but things have unraveled since.*

**November 2016**

**CID Capital** acquires **BigMouth**, in partnership with Tampa, Florida-based **Cadence Bank** and Charlotte, North Carolina-based **Capitala Group**. BigMouth receives a $25 million term loan and a revolving credit commitment of $4 million. It is to pay 11 term-loan installments of $421,875 beginning April 1, 2017, with the remainder of the loan due in November 2021.

**May 2017**

BigMouth CEO **Frank Carpenito**, who joined the company that January, tells the Hartford Business Journal that BigMouth is aiming to bring in $50 million in revenue that year—50 times its 2010 revenue. Carpenito also predicts that revenue could grow to $75 million to $100 million over the next few years.

**October 2018**

Los Angeles-based **Covves LLC** files a patent infringement suit against BigMouth, claiming BigMouth copied the design of Covves' popular unicorn pool float and inflatable unicorn cup holder.

**January 2019**

Carpenito leaves the company.

**2020**

**Jan. 10:** Covves and BigMouth enter into a confidential settlement in which BigMouth agrees to pay an undisclosed sum to Covves over the next two years.

**April 1:** BigMouth misses an interest payment due this day, triggering a default on its loan agreement.

**April 8:** Capitala notifies BigMouth that it is in default.

**April 13:** BigMouth's board names **Gregg Stewart** of Florida-based Rinnovo Management LLC its chief restructuring officer.

**April 16:** BigMouth's CEO and board members resign.

**April 20:** Capitala notifies BigMouth, CID Capital and CID's managing partner, **Scot Swenberg**, that BigMouth's outstanding debt is due immediately

On April 25, the court did so.

because of the default.

**April 23:** Capitala sues BigMouth in Marion Superior Court. In the lawsuit, Capitala says BigMouth owes it $22.9 million in principal and interest.

**April 25:** Court appoints Rinnovo's Stewart as BigMouth's receiver so he can liquidate the company.

Sources: IBJ research, court records

## Mixed bag

Though BigMouth blamed a decline in retail sales for its woes, that does not mean all consumer-products companies or all private-equity-backed companies are suffering right now, Centerfield's Abbasi said.

Centerfield's investment portfolio currently includes 26 companies in various industries. About a third of those companies are struggling right now with 40% to 50% sales declines, Abbasi said. But another third are holding relatively steady and the rest are performing well.

Abbasi serves as chairman of the Small Business Investors Alliance, a private-equity industry group. Based on his conversations with other firms, they are also seeing similar results among their portfolio companies.

Food manufacturers and food distributors are generally doing well right now, Abbasi said, and companies that are considered essential businesses during the shutdown are mostly holding their own. Others are not faring so well, including a Centerfield-owned event rental business in North Carolina that has furloughed most of its employees.

Pitchbook, a Morningstar company that analyzes public and private equity data, offered a mixed outlook in a recent report, "COVID-19's Influence on Private Market Strategies and Allocators."

"Facing COVID-19 fears in addition to already reduced expectations, PE fund managers appear to be headed for a

difficult time. We believe they are likely to fare better than others might anticipate given the circumstances," the report said.

The report also noted that private-equity-backed firms that are consumer-focused will likely be hardest hit because widespread layoffs, furloughs and economic uncertainty will depress consumer spending.

The effect on consumer products companies will depend on the price and type of objects they sell, Abbasi said. "Obviously, consumers have been hurt by high unemployment and [less] discretionary income."

Moderately priced items will likely be hurt less, he said, and some items, especially at-home entertainment goods like board games or backyard game equipment, or things sold primarily online, are selling well.

## Lighter on debt



Jones

Steve Jones, a professor of finance at Indiana University's Kelley School of Business at IUPUI, also said he doesn't expect private-equity-backed firms to struggle any more than other companies.

In a typical private equity deal, a private equity firm takes a controlling stake in a company through a combination of equity and debt—debt the company itself, not the private equity firm, is responsible for repaying.

During the Great Recession, Jones said, deals were more heavily weighted toward debt, and "some of the firms really got themselves into trouble."

As a result, he said, private equity deals today tend to rely less on debt, making the deals less risky if the company hits a rough patch.

Private-equity ownership also offers some advantages, Jones said—namely, that the companies can turn to their private-equity owners for guidance in tough times. "The model is actually a model that works fairly well in a crisis for that reason."

At Centerfield, Abbasi said he and his colleagues are spending much more time communicating with their portfolio companies' managers than usual. "We are on weekly calls right now. Three months ago, we used to do monthly calls."

Centerfield's portfolio companies are using a variety of approaches to weather the economic downturn, he said. Many have secured forgivable loans through the U.S. Small Business Administration's Paycheck Protection Program. Companies are also instituting management pay cuts and negotiating with lenders.

"Anything the board can do to spruce up liquidity in these times is what the boards are focused on," Abbasi said.

In some cases, Centerfield has invested additional equity in its portfolio companies, a strategy Abbasi predicts might become more widespread. "Equity infusion is going to get a lot more common down the road if the COVID-19 shutdown lasts a lot longer than it already has."

Coming into the pandemic, private equity firms were generally flush with capital, so they have the ability to help their portfolio companies financially. The tough part, Abbasi said, is determining whether it makes sense to do so.

"There is liquidity [available] but the challenge is, do you want to put good money after bad?" Abbasi said. "It becomes a very difficult situation if you're seeing a company go down. We can support it only to a certain extent."•

**Editor's note:** You can comment on IBJ stories by signing in to your IBJ account. If you have not registered, please sign up for a free account now. Please note our updated comment policy that will govern how comments are moderated.