Stephen C. McArthur (State Bar No. 277712)
stephen@smcarthurlaw.com
Thomas E. Dietrich (State Bar No. 254282)
tom@smcarthurlaw.com
THE MCARTHUR LAW FIRM, PC
9465 Wilshire Blvd., Ste. 300
Beverly Hills, CA 90212
Telephone: (323) 639-4455

*Attorney for Plaintiff Covves, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COVVES, LLC, | Case No. 2:18-CV-8518-RGK-AFM |
| Plaintiff, | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REOPEN CASE AFTER BREACH OF SETTLEMENT AGREEMENT** |
| v. | |
| DILLARD'S, INC. a Delaware Corporation; KOHL'S CORPORATION, a Wisconsin Corporation; SAKS & COMPANY LLC, a Delaware Corporation; TARGET BRANDS, INC. a Minnesota Corporation; EXPRESS, INC., a Delaware Corporation; TILLY'S, INC. a Delaware Corporation; NORDSTROM, INC., a Washington Corporation; WEST MARINE, INC., a Delaware Corporation, and ZULILY, INC. a Delaware Corporation. | Hon. R. Gary Klausner United States District Court Judge **Hearing Date**: December 21, 2020 **Time**: 9:00 a.m. **Courtroom**: 850, 255 E. Temple St., Los Angeles, CA 90012 |
| Defendants. | |

The Court retains jurisdiction to enforce the settlement agreement under the stipulation of dismissal, as evidenced by the parties' express intent in the stipulation and the agreement itself. Diversity jurisdiction also provides the Court with a separate, independent basis to enforce the agreement. Target's reliance on the release is misplaced—the agreement specifically states that, if BigMouth fails to pay, the release will not bar reinstating all claims against Target. Rule 60(b) provides alternative bases to reopen this case. Denying Covves' motion would work the injustice of permitting Target—who is continuing to infringe Covves' patents and has done so for years—to completely avoid liability for its actions.

A.    **The Court Has Jurisdiction to Enforce the Settlement Agreement**

1.    **Jurisdiction exists under the stipulation of dismissal**

The parties' stipulation of dismissal and settlement agreement support that this Court has subject matter jurisdiction to enforce the agreement. Target's argument to the contrary is based primarily on *Kokkonen*, in which the Supreme Court found a lack of jurisdiction to enforce a settlement agreement where the "[t]he Stipulation and Order [of dismissal with prejudice] did not reserve jurisdiction in the District Court to enforce the settlement agreement; *indeed, it did not so much as refer to the settlement agreement*." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (emphasis added). Relying on *Kokkonen*, the Ninth Circuit, in *O'Connor v. Colvin*, 70 F.3d 530 (9th Cir. 1995), found no jurisdiction where the parties had filed a stipulation of dismissal with prejudice which did not state the trial court retained jurisdiction to enforce the settlement agreement. *Id*. at 532-33. However, *Kokkonen* stated that "[t]he situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal . . . by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) . . . ." 511 U.S. at 381. Under *Kokkonen*, a trial court can retain jurisdiction, even where a dismissal is filed under Rule 41(a)(1)(ii), "if the parties agree." *Id*. at 381-82. "If the

parties *wish* to provide for the court's enforcement of a dismissal-producing settlement agreement, they can seek to do so. " *Id*. at 381.

Here, unlike the dismissals in *Kokkonen* and *Colvin*, the parties' stipulation of dismissal was without prejudice and expressly stated the Court would retain jurisdiction: "The parties have agreed that until such time as the final payment is completed, the Court shall retain jurisdiction to enforce the settlement agreement . . . ." [Dkt. 179 at 2] This stipulation was signed by attorneys for all parties. [*Id*.] The parties' intent is supported by their agreement, which states this Court "retain[s] jurisdiction to enforce the settlement agreement . . . ." *See* Agrmt. § 1.4. Moreover, the parties agreed that the courts in Los Angeles or the Central District of California were "the sole and exclusive forum for resolution of any such dispute" arising out of, concerning, or relating to the settlement agreement. *See id*. § 6.3. Thus, Target's contention that Covves should pursue a claim in BigMouth's receivership proceeding in Indiana state court is specious; this Court is the proper venue to hear disputes over the settlement agreement. Target expressly agreed that enforcement proceedings should be heard in this District.

The factors supporting subject matter jurisdiction here are not present in the cases cited by Target. At the time of settlement, Target clearly intended that this Court should retain jurisdiction to hear disputes over the agreement, and the parties included a statement of their intent in the stipulation of dismissal. It is thus proper for the Court to exercise jurisdiction over Covves' motion to enforce the agreement.

### 2.      Diversity is an independent basis for jurisdiction

Diversity jurisdiction provides an independent basis to summarily enforce the settlement agreement. *Kokkonen* stated that, "[a]bsent [ancillary jurisdiction], . . . enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." 511 U.S. at 382. While the Ninth Circuit has not directly addressed this issue, it has implied (in a case cited by Target) that diversity jurisdiction would provide an independent basis to enforce a settlement

agreement. *See Colvin*, 70 F.3d at 532 (finding no jurisdiction because "[t]he parties are not alleged to be diverse"). Other circuits have held that diversity jurisdiction is an independent basis for summary enforcement of settlement agreements. *See Limbright v. Hofmeister*, 566 F.3d 672, 674-75 (6th Cir. 2009) (listing cases and stating "[w]e join these circuits and hold that a district court may rely on any basis of jurisdiction to summarily enforce a settlement agreement that produced the dismissal of an earlier federal suit."); *Blue Cross Blue Shield Ass'n v. Am. Express Co.*, 467 F.3d 634, 638 (7th Cir. 2006); *see also Money Centers of America, Inc. v. Regen*, Case No. 04-1516-KAJ, at *3 (D. Del. Oct. 17, 2005). If diversity jurisdiction exists, a district court can enforce a settlement agreement without requiring the filing of a new complaint. *See Blue Cross*, 467 F.3d at 638 ("*Kokkonen* is about adjudicatory competence, not the number of filing fees a plaintiff must pay. As long as § 1332 supplies authority to decide, the court may act without a fresh complaint."); *Limbright*, 566 F.3d at 675 (same); *Money Centers*, Case No. 04-1516-KAJ, at *3-4 (granting motion to reopen and enforce settlement agreement where parties failed to reserve jurisdiction in stipulation of dismissal, but diversity jurisdiction provided an independent basis for enforcement).

Here, the undisputed facts are that Covves is a California company and Target is a Minnesota corporation [Dkt. 98 ¶¶ 1, 5], while the other defendants have been and remain dismissed from the action. The amount in controversy indisputably exceeds $75,000. [*See, e.g.*, Dkt. 110-1 at 19 (alleging Target was liable for $2.46 million in profits on infringing sales as of one year ago)]. Diversity jurisdiction therefore exists in this dispute. *See* 28 U.S. Code § 1332(a). That provides a separate, independent basis for this Court to enforce the settlement agreement. *See Limbright*, 566 F.3d at 675-76; *Money Centers*, Case No. 04-1516-KAJ, at *3-4.

### 3.    Plain language of the agreement requires reopening the case

With regard to enforcement, Target's interpretation of section 3.3 of the settlement agreement as being intended to allow suit against BigMouth in

California, but not Target, is absurd. "A settlement agreement is treated as any other contract for purposes of interpretation." *Sirisup v. It's Thai, LLC*, Case No. CV 13-07246-DDP, at *11 (C.D. Cal. Sep. 17, 2015). "Under California law, a contract's plain language governs its interpretation." *Id*. (citing Cal. Civ. Code § 1638). "Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009). Courts "read a written contract as a whole, and interpret each part with reference to the whole." *Id*.

In the agreement here, the term "California Action" was defined to mean this case by Covves against Target and other retailers, not BigMouth. *See* Agrmt. Second Recital. The case against BigMouth was defined separately as the "Indiana Action." *Id*. These defined terms were included in section 3.3, which states that, if BigMouth failed to meet its payment obligations, "then *Covves, at its option, may choose to reinstate and reopen the California Action* and Indiana Action, ***including any and all claims and requests for damages.***" Agrmt. § 3.3 (emphasis added). Further, any settlement payments by BigMouth would "be considered accrued against any judgment in the Indiana Action and shall not be counted against or accrued against any judgment in the California Action." *Id*.

The plain language of the contract is clear: The parties intended that, if BigMouth did not pay all settlement amounts, Covves had the choice of reopening this case against Target (and other retailers) and the case in Indiana against BigMouth. This conclusion is bolstered by the language stating that any payments BigMouth did make would be deducted from a judgment in the case against BigMouth, but not from a judgment against the retailers. There is no basis to find section 3.3 somehow swapped BigMouth into the California Action or was intended to prohibit reopening this suit against Target.

Target argues "[n]othing in Section 3.3 states that BigMouth's breach negates or waives Target's release." [Dkt. 186 at 13] That is wrong. Section 3.3

provides that reopening a case reinstates "any and all claims and requests for damages." Agrmt. § 3.3. The California Action includes patent infringement claims *against Target* and concomitant requests for damages *from Target*. [*See* Dkt. 98 ¶¶ 50-57 and 13-14 (claims and prayer for relief)] It is nonsensical to think that the parties intended to give Covves the option to reopen a case and reinstate all claims *and* requests for damages, only to have the agreement's release negate all of the same claims and damages. Section 3.3 unambiguously identifies a situation where the release is inapplicable. Further, Covves only granted the release "[i]n consideration of the full and faithful performance of the terms and conditions of this Agreement," *see* Agrmt. § 2.1, and the agreement's terms and conditions have *not* been fully and faithfully performed. Target therefore cannot rely on the release to escape reinstatement of this case and Covves' claims against it.

BigMouth and Target shared the same counsel. Before accepting this settlement, Target must have been apprised of whether BigMouth's financial issues—which forced it into receivership mere *months* after the settlement agreement was signed—were probable to trigger section 3.3 and pull Target back into court. Target knew of and accepted that risk in order to avoid a trial where Target could have been found liable for over $2.5 million in damages and to shift the up-front cost of settlement to BigMouth. But the agreement's plain language does not allow Target to forever escape liability if BigMouth does not meet its payment obligations. Rather, Covves has decided to reopen this case against Target, as expressly permitted by the agreement, and the Court should grant that relief.

### B.    Binding Case Law Supports Reopening Case Under Rule 60(b)(6)

As a separate basis to reopen this case, binding case law supports granting Covves' motion under Rule 60(b)(6). Target ignores well-established Ninth Circuit precedent that "**Rule 60(b)(6) should be '*liberally applied*' 'to accomplish justice.'**" *In re Int'l Fibercom*, 503 F.3d 933, 941 (9th Cir. 2007) (emphasis added); *see also Van Skiver v. United States*, 952 F.2d 1241, 1244 (10th Cir. 1991) (Rule

60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case."). Not only does the Ninth Circuit require the liberal application of Rule 60(b)(6), it has also stated that the repudiation or frustration of a settlement agreement "constitutes an extraordinary circumstances, and it justifies vacating the court's prior dismissal order." *Keeling v. Sheet Metal Workers Intern. Ass'n*, 937 F.2d 408, 410 (9th Cir. 1991); *see also Kokkonen*, 511 U.S. at 378 (approving application of Rule 60(b)(6) to "reopen[] the dismissed suit by reason of breach of the agreement that was the basis for dismissal."). Never has the Ninth Circuit or Supreme Court held that Rule 60(b)(6) could only be applied, where there are multiple parties to a settlement agreement, to reopen a case against the particular party that was responsible for a breach. Such a bright-line rule would fly in the face of the precedent requiring liberal application of Rule 60(b) to "accomplish justice." *Fibercom*, 503 F.3d at 941.

Target's citation to *Springfield v. Valencia*, No. 2:19-cv-00965-KJM-CKD P (E.D. Cal. July 16, 2020) is off base. *Springfield* involved a prisoner attempting to reopen a civil rights action under Rule 60(b)(3), not 60(b)(6). *See id* at *3. There was no evidence there that the defendants had even breached the settlement agreement, and the magistrate's finding of no jurisdiction to hear the Rule 60(b) motion is completely at odds with *Keeling* and *Kokkonen* and did not consider either of those cases. *See id*. at *3-4. Thus, *Springfield* is distinguishable on various grounds and contradicts applicable precedent.

This case is exactly the type of situation where Rule 60(b)(6) is properly applied to accomplish justice and allow a decision of Covves' claims on the merits after a complete frustration of the settlement agreement. Here, the dismissal was without prejudice, there is no question the agreement has been breached, and extraordinary circumstances are present under which justice can be done only by reopening this case against Target. The parties—including Target—agreed that Covves would be entitled to a settlement payout over two years. The agreement has

1   now been repudiated and the benefit of the bargain for Covves "completely

2   frustrated." *See Keeling*, 937 F.2d at 410-11. Target agreed to and accepted the risk

3   that, in this instance, this case would be reopened, and Target would face trial for

4   infringement. *See* Agrmt. § 3.3.

5       Target, of course, says, "go get BigMouth." But that is not a reasonable

6   option. BigMouth is in receivership and owes more than $22 million to the private

7   equity company that bought it several years ago. [*See* Dkt. 182-2, Ex. D] *see also*

8   Supp. Declaration of Stephen McArthur ("Supp. McArthur Decl.") filed herewith,

9   Ex. 1 ¶ 33 (complaint stating BigMouth owes "no less than $22,941,944.47 as of

10  April 20, 2020," plus interest of $6,732.32 *per day*); Ex. 2 at 14 ¶ GG (order

11  appointing receiver and barring BigMouth from participating in any suit and any

12  other person from commencing a suit against BigMouth, without first obtaining

13  leave of the receivership court). BigMouth's receiver confirmed in writing that

14  BigMouth will not have funds to pay $22 million to the secured creditor and there

15  is "no chance for payment to [Covves]." *See id.*, Ex. 3. Thus, even if Covves *could*

16  obtain leave of the Indiana court to sue BigMouth, it would be a waste of attorneys'

17  fees and costs—at most securing a judgment BigMouth could not pay.

18      Target is the primary retail infringer of Covves' patents, pocketing millions

19  of dollars in profits on sales of infringing pool floats. [Dkt. 110-1 at 19] Target

20  continued selling infringing floats after the parties' settlement and continues to sell

21  infringing floats today. *See* Supp. McArthur Decl., Ex. 4. Further, Covves has not

22  delayed moving to reopen this case, filing just two weeks after BigMouth missed a

23  settlement payment. And Target will suffer no cognizable prejudice if the case is

24  reopened, as prejudice in a Rule 60(b) analysis "requires greater harm than simply

25  that relief would delay resolution of the case" or force the opposing party to litigate

26  on the merits. *See Lemoge v. United States*, 587 F.3d 1188, 1196 (9th Cir. 2009);

27  *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001). In

28  *Lemoge*, the Ninth Circuit noted "the government would not be prejudiced if the

[plaintiffs] were granted relief [of setting aside a dismissal order]; instead, the [plaintiffs] would suffer the 'ultimate' prejudice absent relief because the statute of limitations on their claim has run." *Lemoge*, 587 F.3d at 1196.

Here, if this motion were denied, Covves would suffer the ultimate prejudice of its claims being eliminated and having to watch helplessly as Target freely infringed. Target, on the other hand, would suffer no prejudice from reopening this case and standing trial on the merits. Target is a primary and continuing infringer. That it would have to face a trial should come as no surprise to Target—who shared the same counsel as BigMouth and who agreed that this case could be reopened if BigMouth failed to make the settlement payments. It is not in the interests of justice to leave Covves without the agreed-upon compensation *and* without recourse for Target's infringement. This is an appropriate situation to grant Covves' motion under Rule 60(b)(6) and reopen this case against Target as requested.

### C.    Other Sections of Rule 60(b) Also Support Reopening the Case

Target contends other parts of Rule 60(b) only apply to a "court ruling." [Dkt. 186 at 11] That is incorrect. The Rule on its face applies to relieve a party from "a final judgment, order, or proceeding," whether the product of a court ruling or not. *See* Fed. R. Civ. P. 60(b); *Lemoge*, 587 F.3d at 1192.

Under Rule 60(b)(1), "[s]urprise . . . 'may be found in circumstances where there is some reason for confusion or misunderstanding by the parties.'" *Lima v. U.S. Dep't of Educ.*, Case No. CV 15-00242 KSC, at *4 (D. Haw. May 31, 2017). Here, BigMouth agreed in January 2020 to settle with Covves in exchange for a sizable payment distributed over two years. Yet just weeks before that, on December 20, 2019, BigMouth had amended its credit and loan agreements with its primary owner and lender, indicating financial instability. *See* Supp. McArthur Decl., Ex. 1 at 16; [Dkt. 182-2, Ex. D at 3 ("BigMouth's troubles began before COVID-19.")] Then, in January 2020, BigMouth was forced to amend its credit agreement again and was dropped by its financing bank. [Dkt. 182-2, Ex. D at 3]

By April 1, 2020, BigMouth could not pay its debts and defaulted on its agreement to make payments to its owner. [*Id*. at 2]; Supp. McArthur Decl. Ex. 1 ¶¶ 20-25. Its entire Board of Directors resigned and weeks later it was in receivership. *Id*. Covves had no way to know BigMouth was in dire financial straits at the time of settlement. Thus, Covves was unfairly surprised when just four months after BigMouth agreed to make payments over two years, it was taken into receivership on debts to a secured creditor of over $22 million. This surprise provides a basis to grant Covves' motion to reopen the case under Rule 60(b)(1).

Under Rule 60(b)(2), evidence of BigMouth's preexisting financial problems, particularly its credit and loan agreement amendments on December 20, 2019, was not "in the possession of [Covves] before the judgment was rendered" and is "of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003)). At the time of settlement, BigMouth must have possessed evidence that its near-insolvency would render it unlikely to meet its payment obligations to Covves. Had Covves known of this, the settlement would have been different or not entered into at all. Thus, evidence of BigMouth's grim financial state at the time of the parties' settlement is of such a magnitude that it would have "been likely to change the disposition of the case" and constitutes "new evidence" warranting relief under Rule 60(b)(2). *See id*.

Under Rule 60(b)(3), Covves "must establish that a judgment was obtained by fraud, misrepresentation, or misconduct, and that the conduct complained of prevented the moving party from fully and fairly presenting the case." *Maudlin v. M/V Peacock*, 809 F.2d 1403, 1404-05 (9th Cir. 1987). "The rule is aimed at judgments which were unfairly obtained . . . ." *Id*. at 1405. Critical to Covves' decision to settle were (1) payments from BigMouth, and (2) the backstop of reopening this case against Target if BigMouth defaulted. BigMouth and Target have repudiated both terms. As described above, BigMouth must have known in

January 2020 that it probably could not pay Covves over two years. Yet BigMouth omitted information about its financial instability and allowed Covves to rely in good faith on BigMouth's agreement to distributed payments, which it likely knew it would never make. Further, Target agreed to section 3.3, which allowed Covves to reopen this case against Target. BigMouth and Target shared the same counsel, who, to comply with the ethical obligation to inform Target of the agreement terms, must have shared information with Target about the likelihood BigMouth might default and trigger section 3.3. Presumably, at that time, Target drew the conclusion it argues now—that, contrary to its plan language, the agreement does not *ever* allow Covves to pursue enforcement in this Court or to reopen this case. Had Target shared its interpretation and its intent to fight the application of section 3.3, settlement talks would likely have been terminated. This Court should find that such misrepresentations and intentional omissions in settlement negotiations are not appropriate and reopen this case to allow Covves to proceed to trial on the merits.

### D.   Federal Rules Favor Reopening This Case

Lastly, the Federal Rules must be construed "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1; *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005). Target contends the only way to reopen this case under section 3.3 would be for Covves to file suit for breach in California state court, litigate that case through summary judgment or trial, and obtain an order from the state court directing this Court to reopen the case pursuant to the agreement's terms. Only then, likely years later, might Target stand trial (at which time it would surely argue it has been prejudiced by the delay). That is circuitous, expensive, and time-consuming in the extreme. The alternative is for this Court to grant Covves' motion and set the case on a schedule for trial in the near future when memories and evidence are fresh.

For these reasons, Covves respectfully requests that the Court reopen this case against Target pursuant to the parties' agreement or Rule 60(b).

1    Dated: December 14, 2020

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted

**THE MCARTHUR LAW FIRM, PC**

By */s/ Stephen McArthur*

Stephen C. McArthur
Thomas E. Dietrich

*Attorneys for Plaintiff Covves, LLC*

# CERTIFICATE OF SERVICE

Case Name: *Covves, LLC v. Dillard's, Inc. et al.*
Case No.: 2:18-cv-8518-RGK-AFM

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 9465 Wilshire Blvd., Ste. 300, Beverly Hills, CA 90212. I am not a party to the above-entitled action.

I have caused service of the following documents, described as:

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO REOPEN CASE AFTER BREACH OF SETTLEMENT AGREEMENT**

on the following parties by electronically filing the foregoing on December 14, 2020, with the Clerk of the District Court using its ECF System, which electronically notifies them.

Morgan Nickerson                    *Attorneys for Defendants*
K&L Gates LLP
Morgan.Nickerson@klgates.com
1 Lincoln St.
Boston, MA 02111

Caitlin C. Blanche
K&L Gates LLP
caitlin.blanche@klgates.com
1 Park Plaza, 12th Floor
Irvine, CA 92618

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:   12/14/2020                    By:   */s/ Thomas Dietrich*
                                             Thomas Dietrich