1  Stephen C. McArthur (State Bar No. 277712)
   stephen@smcarthurlaw.com
2  Thomas E. Dietrich (State Bar No. 254282)
   tom@smcarthurlaw.com
3  THE MCARTHUR LAW FIRM, PC
   9465 Wilshire Blvd., Ste. 300
4  Beverly Hills, CA 90212
   Telephone: (323) 639-4455
5
   *Attorney for Plaintiff Covves, LLC*
6
7                    UNITED STATES DISTRICT COURT
8                    CENTRAL DISTRICT OF CALIFORNIA
9
10  COVVES, LLC,                          Case No. 2:18-CV-8518-RGK-AFM
11           Plaintiff,                   **SUPPLEMENTAL DECLARATION
                                          OF STEPHEN MCARTHUR**
12       v.
13  DILLARD'S, INC. a
    Delaware Corporation;
14  KOHL'S CORPORATION,
    a Wisconsin Corporation;
15  SAKS & COMPANY LLC,
    a Delaware Corporation;
16  TARGET BRANDS, INC. a
    Minnesota Corporation;
17  EXPRESS, INC., a
    Delaware Corporation;
18  TILLY'S, INC. a Delaware
    Corporation;
19  NORDSTROM, INC., a Washington
    Corporation;
20  WEST MARINE, INC., a Delaware
    Corporation,
21  and
    ZULILY, INC. a
22  Delaware Corporation.
23           Defendants.
24
25
26
27
28

I, Stephen McArthur, declare as follows:

1.      I am an attorney at law, duly admitted into practice before the State of California and this Court. I am an attorney with The McArthur Law Firm, P.C., counsel for Plaintiff Covves, LLC ("Covves"). I make this Supplemental Declaration in rebuttal to Target Brands, Inc.'s ("Target") opposition to Covves' Motion to Reopen. The matters set forth herein are of my own personal knowledge, and if called upon to testify as to such matters, I could and would do so.

2.      Attached hereto as <u>Exhibit 1</u> is a true and correct copy of the complaint filed against BigMouth LLC and BigMouth Inc. (together, "BigMouth") in Indiana state court on April 23, 2020, captioned *Capitala Private Advisors, LLC v. BigMouth LLC et al.*, No. 49D01-2004-PL-014426. Included with this exhibit is an excerpt of Exhibit A to the complaint, the Second Amended and Restated Credit Agreement between BigMouth and Capitala Private Advisors, LLC.

3.      Attached hereto as <u>Exhibit 2</u> is a true and correct copy of the Order Appointing Receiver entered in the above case on April 25, 2020.

4.      Attached hereto as <u>Exhibit 3</u> is a true and correct copy of an email exchange between Covves' local counsel in Indiana, Deborah Caruso, and counsel for BigMouth's appointed receiver, James Knauer. I received this email chain directly from Ms. Caruso.

5.      Attached hereto as <u>Exhibit 4</u> is a true and correct copy of a screenshot of Target's website as of December 11, 2020, demonstrating Target is still selling infringing unicorn pool floats.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 14, 2020 at Los Angeles, California.

*/s/ Stephen McArthur*

# **<u>Exhibit 1</u>**

Case 2:18-cv-08518-RGK-AFM   Document 200-3   Filed 12/14/20   Page 4 of 42   Page ID #:4697

49D01-2004-PL-014426
Marion Superior Court, Civil Division 1

Filed: 4/23/2020 11:09 AM
Clerk
Marion County, Indiana

*INDIANA COMMERCIAL COURT*

STATE OF INDIANA      )            IN THE MARION SUPERIOR COURT
                          ) SS:      CIVIL DIVISION 1, ROOM NO. W-407
COUNTY OF MARION      )            CAUSE NO.:  49D01-2004-PL-_____

CAPITALA PRIVATE ADVISORS, LLC,    )
                                       )
               Plaintiff,           )
                                       )
                v.                )
                                       )
BIGMOUTH LLC, and             )
BIGMOUTH INC.,                 )
                                       )
               Defendants.       )

## COMPLAINT

       Capitala Private Advisors, LLC ("Plaintiff"), in its capacity as administrative and collateral agent under the Credit Agreement (defined in paragraph 6 below), files this Complaint against BigMouth LLC and BigMouth Inc. (collectively, "Defendants"). In support, Plaintiff states:

## PARTIES, JURISDICTION AND VENUE

       1.      Plaintiff is a limited liability company organized under the laws of Delaware with its principal place of business in Charlotte, NC.

       2.      BigMouth LLC ("Borrower) is a limited liability company organized under the laws of Indiana.  Borrower's registered agent for the service of process in Indiana is Scott Swenberg, 10201 N. Illinois Street, Ste. 200, Indianapolis, IN 46290.

       3.      BigMouth Inc. ("Holdings") is an Indiana corporation.  Holdings' registered agent for the service of process in Indiana is Scott Swenberg, 10201 N. Illinois Street, Ste. 200, Indianapolis, IN 46290.

4.      Jurisdiction is proper in this Court pursuant to Indiana Rule of Trial Procedure 4.4(A)(1), (2) and (4).

5.      Venue is proper in this Court pursuant to Indiana Rule of Trial Procedure 75(A)(4).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

6.      Borrower, Holdings, Big Mouth International Ltd., Plaintiff and certain specified lenders ("Lenders") are parties to that certain Second Amended and Restated Credit Agreement dated as of January 30, 2020 (the "Credit Agreement"), a true and accurate copy of which is attached to this Complaint as **Exhibit A**.

7.      Plaintiff is the properly appointed and acting "Agent" under the Credit Agreement, with standing to file and prosecute this Complaint for and on behalf of Lenders.

8.      The Credit Agreement evidences certain term loans and term loan commitments made by Lenders or their assignors (collectively, the "Term Loans") and certain revolving credit loans and revolving credit loan commitments made by Lenders or their assignors (collectively, the "Revolving Credit Loans").

9.      The Credit Agreement also evidences Borrower's obligations with respect to the Term Loans, the Revolving Credit Loans and the letter of credit commitments, among other things.

10.     Holdings executed and delivered a Guarantee dated November 14, 2016 (the "Holdings Guarantee"), whereby Holdings absolutely, unconditionally and irrevocably guaranteed the prompt payment of the "Obligations" (as such term is defined in the Credit Agreement).  A true and accurate copy of the Holdings Guarantee is attached as **Exhibit B**.

11.     As security for the payment and performance of Borrower's obligations under the Credit Agreement, Borrower and Holdings executed and delivered to Plaintiff's predecessor in interest a Security Agreement dated November 14, 2016 (the "Security Agreement"), a true and accurate copy of which is attached as **Exhibit C**.  The Security Agreement grants to Plaintiff a security interest in and to substantially all assets of both Borrower and Holdings (as specifically described and defined in the Security Agreement, the "Security Agreement Collateral").

12.     Plaintiff's security interest in the Security Agreement Collateral was properly perfected by means of the filing of UCC-1 financing statements with the Indiana Secretary of State on November 15, 2016 as filing numbers 201600009089772 and 201600009089338 (collectively, the "Financing Statements").  True and accurate copies of the Financing Statements are attached as **Exhibit D** and **Exhibit E**, respectively.

13.     As further security for the payment and performance of Borrower's obligations under the Credit Agreement, Borrower executed and delivered to Plaintiff's predecessor in interest a Patent Security Agreement dated as of November 14, 2016 (the "Patent Security Agreement"), a true and accurate copy of which is attached as **Exhibit F**.  The Patent Security Agreement grants to Plaintiff a security interest in all of Borrower's right, title and interest in and to certain patents and patent applications described therein (as specifically described and defined in the Patent Security Agreement, the "Patent Agreement Collateral").

14.     The Patent Security Agreement was recorded with the United States Patent and Trademark Office on December 9, 2016 as Docket No. 31553-0004 at Reel/Frame No. 040961/0263.

15.     As further security for the payment and performance of Borrower's obligations under the Credit Agreement, Borrower executed and delivered to Plaintiff's predecessor in

interest a Trademark Security Agreement dated as of November 14, 2016 (the "Trademark Security Agreement"), a true and accurate copy of which is attached as **Exhibit G**.   The Trademark Security Agreement grants to Plaintiff a security interest in all of Borrower's right, title and interest in and to certain trademarks and goodwill described therein (as specifically described and defined in the Trademark Security Agreement, the "Trademark Agreement Collateral").

16.     The Trademark Security Agreement was recorded with the United States Patent and Trademark Office on December 9, 2016 as Docket No. 31553-0004 at Reel/Frame No. 5944/0525.

17.     As further security for the payment and performance of Borrower's obligations under the Credit Agreement, Borrower executed and delivered to Plaintiff's predecessor in interest a Copyright Security Agreement dated as of November 14, 2016 (the "Copyright Security Agreement"), a true and accurate copy of which is attached as **Exhibit H**.   The Copyright Security Agreement grants to Plaintiff a security interest in all of Borrower's right, title and interest in and to certain copyrights described therein (as specifically described and defined in the Copyright Security Agreement, the "Copyright Agreement Collateral").

18.     The Security Agreement, the Patent Security Agreement, the Trademark Security Agreement and the Copyright Security Agreement are referred to collectively in this Complaint as the "Security Agreements."

19.     The Security Agreement Collateral, the Patent Agreement Collateral, the Trademark Agreement Collateral and the Copyright Agreement Collateral are referred to collectively in this Complaint as the "Collateral."

US.127768696.05

20.     Events of Default under the Credit Agreement, the Security Agreements and the Holdings Guarantee have occurred and are continuing, including without limitation Borrower's failure to make the regularly scheduled interest payments that were due as of April 1, 2020, pursuant to Section 5.1(d) of the Credit Agreement.

21.     Plaintiff informed Borrower of the occurrence of an Event of Default by letter dated April 8, 2020.

22.     Borrower did not cure the Event of Default.

23.     Holding's Board of Directors appointed Gregg F. Stewart of Rinnovo Management LLC, as Chief Restructuring Officer for Defendants (the "CRO") on April 13, 2020.  Thereafter, the Chief Executive Officer and all members of Defendants' boards provided written notice of their resignations.

24.      The resignations of the Chief Executive Officer and Defendants' board violates Section 8.4 of the Credit Agreement and is an Event of Default pursuant to Section 10.1(c) of the Credit Agreement.

25.     Borrower has admitted its inability to pay its debts as they become due in writing, resulting in an Event of Default under Section 10.1(f)(iv) of the Credit Agreement.

26.     The CRO is the only remaining officer of Holdings or Borrower and, as a result of the resignations, currently has no one from whom to take direction with respect to Defendants; businesses, leaving Defendants unable to conduct their businesses and take steps to preserve and maximize the value of their assets.

27.     Plaintiff delivered to Borrower and Holdings a letter dated April 20, 2020 (the "Demand Letter").   The Demand Letter accelerated all obligations owed under the Credit

US.127768696.05

Agreement and other loan documents.  A true and accurate copy of the Demand Letter is attached as **Exhibit I**.

28.     As of April 20, 2020, Borrower owes Plaintiff, as administrative and collateral agent for Lenders, no less than $22,941,944.47 (the "Obligations"), comprised of $20,692,644.98 in principal and $221,959.21 in interest on the Term Loans and $2,000,000 in principal and $27,340.28 in interest in the Revolving Credit Loans.  The Obligations continue to accrue interest at the aggregate rate of $6,732.32 per day through April 30, 3020, after which the per diem interest rate may change based on changes in LIBOR.

29.     In addition, Plaintiff is entitled to recover all attorneys' fees and costs incurred by it in connection with the enforcement, collection or preservation of any rights under the Credit Agreement.

<strong>COUNT I</strong>

<strong><u>BREACH OF CREDIT AGREEMENT</u></strong>

30.     Plaintiff incorporates the above allegations by reference, as if fully set forth herein.

31.     Events of Default have occurred and are continuing under the Credit Agreement and the Security Agreements.

32.     On April 20, 2020, Plaintiff sent a copy of the Demand Letter to Borrower and Holdings, but Borrower has made no payment, and the Obligations remain due, delinquent and unpaid.

33.     The Obligations total no less than $22,941,944.47 as of April 20, 2020.  In addition, Plaintiff is entitled to interest after April 20, 2020, at a rate of $6,732.32 *per diem*

-6-

through April 30, 2020 and at the applicable rate thereafter.[1] Plaintiff is additionally entitled to reasonable attorneys' fees and all costs of collection incurred by Plaintiff as may be awarded by the Court, real estate taxes which are now and hereafter due and unpaid and all other costs and expenses to be advanced during the prosecution of this action.

34.     All conditions precedent to Plaintiff's enforcement of the Credit Agreement have been performed, have occurred, or have been excused.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Borrower in the amount of no less than $22,941,944.47 plus interest accruing after April 20, 2020, costs, attorneys' fees and other costs of collection, and for all other just and appropriate relief.

## COUNT II

## FORECLOSURE OF SECURITY INTEREST

35.     Plaintiff incorporates the above allegations by reference, as if fully set forth herein.

36.     Borrower failed to cure its defaults, despite demand.

37.     Plaintiff properly accelerated the Obligations due to Borrower's default.

38.     Plaintiff has a valid and perfected security interest in all the Collateral.

39.     All conditions precedent to Plaintiff's enforcement of its security interest in the Collateral have been performed, have occurred, or have been excused.

WHEREFORE, Plaintiff respectfully requests that this Court:

A.     Declare Plaintiff's security interest to be a valid and subsisting lien in and to the Collateral, superior to all interests asserted against the Collateral by Defendants, or by anyone claiming under or through Defendants;

---

[1] The applicable interest rate is subject to monthly change based on changes in LIBOR.

B.      Enter a judgment foreclosing Plaintiff's security interest and foreclosing and barring Defendants' interests in the Collateral;

C.      Enter an order directing a sale of the Collateral by the appropriate Sheriff as provided by law and further providing that, upon the execution of a bill of sale for the Collateral sold thereunder by the appropriate Sheriff, that Defendants or any other party in possession of all or a portion of the Collateral, shall forthwith surrender to the holder of said bill of sale the full and peaceful possession of the Collateral, and upon failure to do so, the Sheriff shall be directed to forthwith put the party holding such bill of sale, or his assignee, in full, peaceful and quiet possession of the Collateral without delay;

D.      Order the proceeds of the sale to be applied to the expenses of the sale and then the appropriate parties according to the order of proper priority, as determined by the Court, with the surplus, if any, to be paid as ordered by the Court; and

E.      Grant all other just and proper relief.

## COUNT III

### BREACH OF HOLDINGS GUARANTEE

40.     Plaintiff incorporates the above allegations by reference, as if fully set forth herein.

41.     On April 20, 2020, Plaintiff sent a copy of the Demand Letter to Holdings, but Holdings has made no payment, and the Obligations remain due, delinquent and unpaid.

42.     Holdings' failure to make full payment of the Obligations constitutes, among other things, default under the terms of the Holdings Guarantee and breach of contract.

43.     As a result of Holdings' breach, Plaintiff has suffered damages totaling no less than $22,941,944.47, plus interest after April 20, 2020 at the applicable rate, costs and attorneys' fees.

44.     All conditions precedent to Plaintiff's enforcement of the Holdings Guarantee have been performed, have occurred, or have been excused.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and against Holdings in the amount of no less than $22,941,944.47 plus interest accruing after April 20, 2020, costs, attorneys' fees, and other just and appropriate relief.

Respectfully submitted,

FAEGRE DRINKER BIDDLE & REATH LLP

*/s/ Dustin R. DeNeal*
Jay Jaffe (#5037-98)
Dustin R. DeNeal (#27535-49)
Elizabeth M. Little (#34096-49)
600 E. 96th Street, Suite 600
Indianapolis, IN 46240
Telephone: (317) 569-9600
Facsimile: (317) 569-4800
jay.jaffe@faegredrinker.com
dustin.deneal@faegredrinker.com
elizabeth.little@faegredrinker.com

*Attorneys for Plaintiff, Capitala Private Advisors, LLC*

US.127768696.05

# EXHIBIT A

## SECOND AMENDED AND RESTATED CREDIT AGREEMENT

by and among

**BIGMOUTH LLC**
as Borrower

**BIGMOUTH INC.**

as a Loan Party and Guarantor

**BIG MOUTH INTERNATIONAL LTD**
as a Loan Party and but not a Guarantor

**CAPITALA PRIVATE ADVISORS, LLC**

as Administrative and Collateral Agent

a n d

**THE LENDERS FROM TIME**

**TO TIME PARTY HERETO**

Dated as of January 30, 2020

Effective as of December 31, 2019

**Table of Contents**

**Page**

SECTION 1 DEFINITIONS .................................................................................... 2
    1.1    Defined Terms ............................................................................... 2
    1.2    Other Definitional Provisions ...................................................... 41
    1.3    Letter of Credit Amounts ............................................................. 42

SECTION 2 AMOUNT AND TERMS OF TERM LOAN COMMITMENTS ......................... 42
    2.1    Term Loan Commitments ............................................................. 42
    2.2    Procedure for Term Loan Borrowing .......................................... 42
    2.3    Repayment of Term Loans ........................................................... 43

SECTION 3 AMOUNT AND TERMS OF REVOLVING CREDIT COMMITMENTS ......... 43
    3.1    Revolving Credit Commitments ................................................... 43
    3.2    Procedure for Revolving Credit Borrowing ................................. 44
    3.3    [Reserved] .................................................................................... 45
    3.4    Termination or Reduction of Revolving Credit Commitments ........... 45

SECTION 4 LETTERS OF CREDIT .................................................................... 45
    4.1    L/C Commitment ......................................................................... 45
    4.2    Procedure for Issuance and Amendment of Letters of Credit ............ 46
    4.3    Fees, Commissions and Other Charges ....................................... 47
    4.4    L/C Participations ........................................................................ 47
    4.5    Reimbursement Obligations of the Borrower ............................... 49
    4.6    Obligations Absolute ................................................................... 49
    4.7    Letter of Credit Payments ............................................................ 50
    4.8    Letter of Credit Request ............................................................... 51

SECTION 5 GENERAL PROVISIONS APPLICABLE TO LOANS AND LETTERS
OF CREDIT .......................................................................................... 51
    5.1    Interest Rates and Payment Dates ............................................... 51
    5.2    Closing Fees ................................................................................. 51
    5.3    Administrative and Collateral Agent Fee .................................... 51
    5.4    Prepayment Premium ................................................................... 52
    5.5    Conversion ................................................................................... 52
    5.6    Repayment of Loans; Evidence of Debt ...................................... 53
    5.7    Optional Prepayments .................................................................. 54
    5.8    Mandatory Prepayments .............................................................. 54
    5.9    Computation of Interest and Fees ................................................ 56
    5.10   Inability to Determine Interest Rate ............................................. 56
    5.11   Pro Rata Treatment and Payments ............................................... 57
    5.12   Illegality ....................................................................................... 58
    5.13   Requirements of Law ................................................................... 58
    5.14   Increased Costs; Capital Requirements ....................................... 60
    5.15   Taxes ............................................................................................ 62

5.16 Indemnity ........................................................................................ 66
5.17 Substitution of Lender .................................................................... 66
5.18 [Reserved] ...................................................................................... 66
5.19 [Reserved] ...................................................................................... 66
5.20 Agreement Among Lenders ........................................................... 66

SECTION 6 REPRESENTATIONS AND WARRANTIES .............................. 72
6.1 Financial Condition ......................................................................... 72
6.2 No Change ....................................................................................... 73
6.3 Existence; Compliance with Law .................................................... 73
6.4 Power; Authorization; Enforceable Obligations ............................. 74
6.5 No Legal Bar .................................................................................... 74
6.6 No Material Litigation ..................................................................... 74
6.7 No Default ........................................................................................ 74
6.8 Ownership of Property; Liens .......................................................... 75
6.9 Intellectual Property ........................................................................ 75
6.10 No Burdensome Restrictions ........................................................... 75
6.11 Taxes ................................................................................................ 75
6.12 Federal Regulations ........................................................................ 76
6.13 ERISA .............................................................................................. 76
6.14 Investment Company Act; Other Regulations ................................ 77
6.15 Subsidiaries; Capitalization ............................................................ 77
6.16 Security Documents ......................................................................... 77
6.17 Accuracy and Completeness of Information .................................... 78
6.18 Labor Relations ............................................................................... 79
6.19 Insurance .......................................................................................... 79
6.20 Solvency ........................................................................................... 79
6.21 Purpose of Loans ............................................................................. 79
6.22 Environmental Matters ..................................................................... 79
6.23 Anti-Terrorism Laws; Anti-Corruption Laws ................................. 81
6.24 Acquisition Documents .................................................................... 81

SECTION 7 CONDITIONS PRECEDENT ................................................... 82
7.1 Conditions to Initial Loans .............................................................. 82
7.2 Conditions to Each Loan ................................................................. 87

SECTION 8 AFFIRMATIVE COVENANTS ................................................. 88
8.1 Financial Statements ........................................................................ 88
8.2 Certificates; Other Information ........................................................ 88
8.3 Payment of Obligations; Exercise of Rights ................................... 90
8.4 Conduct of Business and Maintenance of Existence ....................... 90
8.5 Maintenance of Property; Insurance ................................................ 91
8.6 Inspection of Property; Books and Records; Discussions ............... 91
8.7 Notices ............................................................................................. 91
8.8 Environmental Laws ........................................................................ 92
8.9 Interest Rate Protection ................................................................... 93
8.10 Additional Collateral; Additional Guarantors; Joinder as a Loan Party ............ 93
8.11 Further Assurances .......................................................................... 95

8.12    Taxes ........................................................................................................ 96
8.13    Compliance with ERISA ........................................................................... 96
8.14    Material Contracts .................................................................................... 96
8.15    Other Pre-Closing and Post-Closing Deliverables .................................. 96
8.16    Banking Relationship/Account Control Agreements ................................ 97
8.17    Management Meetings ............................................................................... 97

SECTION 9 NEGATIVE COVENANTS .................................................................. 97
9.1     Financial Condition Covenants ................................................................ 97
9.2     Limitation on Indebtedness ...................................................................... 98
9.3     Limitation on Liens ................................................................................... 99
9.4     Limitation on Fundamental Changes ...................................................... 100
9.5     Limitation on Disposition of Property .................................................... 101
9.6     Restricted Payments ................................................................................ 101
9.7     Use of Proceeds ...................................................................................... 101
9.8     Limitation on Investments, Loans and Advances ................................... 101
9.9     Limitation on Transactions with Affiliates ............................................. 102
9.10    Limitation on Sales and Leasebacks ....................................................... 102
9.11    Limitation on Changes in Fiscal Year .................................................... 102
9.12    Limitation on Negative Pledge Clauses .................................................. 102
9.13    Limitation on Lines of Business ............................................................. 103
9.14    Modification of Certain Agreements ...................................................... 103
9.15    Limitation on Activities of Holdings ...................................................... 103
9.16    Limitation on Subsidiary Formation ...................................................... 103
9.17    Limitation on Securities Issuances ......................................................... 103
9.18    Labor ....................................................................................................... 104
9.19    ERISA ...................................................................................................... 104
9.20    Acquisition of Debt ................................................................................. 104

SECTION 10 EVENTS OF DEFAULT ................................................................... 104
10.1    Events of Default ..................................................................................... 104
10.2    Other Remedies ....................................................................................... 107

SECTION 11 THE AGENT ..................................................................................... 108
11.1    Appointment ............................................................................................ 108
11.2    Delegation of Duties ............................................................................... 108
11.3    Exculpatory Provisions ........................................................................... 108
11.4    Reliance by Agent ................................................................................... 108
11.5    Notice of Default ..................................................................................... 109
11.6    Non Reliance on Agent and Other Lenders ............................................ 109
11.7    Indemnification ....................................................................................... 110
11.8    Agent in Its Individual Capacity ............................................................ 110
11.9    Successor Agent ...................................................................................... 110
11.10   Authorization to Release Liens and Guarantees ..................................... 111
11.11   Security Documents and Guarantee ........................................................ 111
11.12   Agent May File Proofs of Claim ............................................................. 112
11.13   Treasury Management Banks and Hedging Banks ................................... 113

SECTION 12 MISCELLANEOUS .......................................................................... 113

12.1    Amendments and Waivers ................................................................. 113
12.2    Notices ............................................................................................ 115
12.3    No Waiver; Cumulative Remedies .................................................... 116
12.4    Survival of Representations and Warranties ...................................... 116
12.5    Payment of Expenses and Taxes ...................................................... 117
12.6    Successors and Assigns; Participations and Assignments ................. 118
12.7    Adjustments; Set off ....................................................................... 122
12.8    Usury Savings Clause ...................................................................... 123
12.9    Counterparts .................................................................................... 124
12.10   Severability ..................................................................................... 124
12.11   Integration ....................................................................................... 124
12.12   GOVERNING LAW ........................................................................ 124
12.13   Submission to Jurisdiction; Service of Process; Waivers ................. 124
12.14   Acknowledgements .......................................................................... 125
12.15   WAIVERS OF JURY TRIAL ......................................................... 125
12.16   Confidentiality ................................................................................ 126
12.17   Accounting Changes ........................................................................ 126
12.18   USA PATRIOT Act Notice ............................................................. 127
12.19   Acknowledgment and Consent to Bail-in of EEA Financial Institutions .......... 127
12.20   Excluded Foreign Subsidiaries ........................................................ 128
12.21   Amendment and Restatement of Existing Credit Agreement ............ 128

## SECOND AMENDED AND RESTATED CREDIT AGREEMENT

This SECOND AMENDED AND RESTATED CREDIT AGREEMENT is dated as of January 30, 2020, effective as of December 31, 2019 (whereas, the original Credit Agreement was dated as of November 14, 2016) (as the same may be further amended, restated, extended, supplemented or otherwise modified from time to time, this "Agreement"), and made by and among BIGMOUTH LLC, an Indiana limited liability company, as borrower ("Borrower"), BIGMOUTH INC., an Indiana corporation, as a Loan Party (as defined herein) and Guarantor (as defined herein) ("Holdings"), BIG MOUTH INTERNATIONAL LTD, as a Loan Party but not a guarantor, CAPITALA PRIVATE ADVISORS, LLC, as administrative and collateral agent (in such capacity "Agent"), and the lenders from time to time party hereto, as lenders ("Lenders").

## RECITALS

WHEREAS, the Borrower entered into that certain Asset Purchase Agreement, dated as of November 14, 2016 ("Acquisition Agreement"), made between and among the Borrower, as buyer, BigMouth Inc., a Connecticut corporation, as seller ("Seller"), and Stephen Wampold, as shareholder, pursuant to which the Borrower acquired certain assets of the Seller ("Acquisition").

WHEREAS, pursuant to that certain Credit Agreement, dated as of November 14, 2016 (as amended by that certain Counterpart and Amendment dated as of April 27, 2017, as supplemented by that certain Limited Consent and Waiver dated as of February 23, 2018, as further amended by that certain Amendment No.2 to Credit Agreement and Limited Waiver dated as of March 21, 2018, as further amended by that certain Amendment No. 1 to Amended and Restated Credit Agreement dated as of December 28, 2018, the "Existing Credit Agreement"), made by and among the parties hereto and Cadence Bank, N.A. ("Cadence"), the lenders under the Existing Credit Agreement agreed to make certain loans ("Loans") to the Borrower and participate in letters of credit ("Letters of Credit") issued on behalf of the Borrower, and certain parties ("Issuing Lenders") agreed to issue the Letters of Credit for the account of the Borrower, upon the terms and subject to the conditions set forth therein.

WHEREAS, the parties to this Agreement have entered into that certain Amendment No. 2 to Amended and Restated Credit Agreement and Omnibus Amendment to Loan Documents dated as of December 20, 2019 and desire to amend and restate (but not extinguish) the Existing Credit Agreement in its entirety as hereinafter set forth in on the Restatement Effective Date;

NOW THEREFORE, the parties hereto do hereby agree that the Existing Credit Agreement is amended and restated as of the Restatement Effective Date in its entirety as set forth herein and do hereby agree as follows:

1

# **Exhibit 2**

*INDIANA COMMERCIAL COURT*

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | ) SS: | CIVIL DIVISION 1, ROOM NO. W-407 |
| COUNTY OF MARION | ) | CAUSE NO.:  49D01-2004-PL-014426 |

| | |
|---|---|
| CAPITALA PRIVATE ADVISORS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BIGMOUTH LLC, and | ) |
| BIGMOUTH INC., | ) |
| | ) |
| Defendants. | ) |

F I L E D

April 25, 2020

*Myla A. Eldridge*

CLERK OF THE COURT
MARION COUNTY
SW

## ORDER APPOINTING RECEIVER

This matter is before the Court on the Verified Emergency Motion for Appointment of Receiver (the "Motion") filed by Capitala Private Advisors, LLC in its capacity as administrative and collateral agent ("Plaintiff") for certain lenders party to a Second Amended and Restated Credit Agreement dated as of January 30, 2020 (the "Credit Agreement").  The Court, having considered the Motion and being duly advised, now finds and concludes that:

## FINDINGS AND CONCLUSIONS

1.      This Court has jurisdiction over this matter, including BigMouth LLC ("Borrower") and BigMouth Inc. ("Holdings"; collectively with Borrower, "Defendants") as companies organized and currently existing under Indiana law.

2.      All capitalized terms not defined herein shall have the meanings ascribed to such terms in the Complaint filed by Plaintiff on April 21, 2020 (the "Complaint").

3.      The lender parties to the Credit Agreement extended credit to and provided aggregate loans to Borrower totaling over $22,900,000.00 pursuant to the terms and provisions of certain loan documents, as more fully described in the Complaint.

4.      Defendants are in default of their obligations to Plaintiff, and Plaintiff has accelerated and declared immediately due and owing all indebtedness owed under the Credit Agreement.  Neither Borrower nor Holdings has satisfied its obligations to Plaintiff.

5.      Borrower's obligations to Plaintiff are secured by certain security agreements that grant Plaintiff a security interest in substantially all of Defendants' personal property, including without limitation, Borrower's accounts, inventory, general intangibles, documents, equipment, fixtures, goods, commercial tort claims, investment property, letter of credit rights, patents and all other assets and personal property owned by Borrower, including all proceeds therefrom (as more specifically described and defined in the Complaint, the "Collateral").

6.      Plaintiff and the currently acting Chief Restructuring Officer of Holdings (the "CRO") agree that sufficient cause exists under Ind. Code §32-30-5-1, *et. seq.* to appoint a receiver to take control of and administer Defendants and their respective operations and assets, including the Collateral and all profits and proceeds therefrom during the pendency of these proceedings (collectively, the "Company Assets"), but specifically excluding Defendants' ownership interests and management rights in and to foreign subsidiaries Big Mouth International Ltd. and Big Mouth Lifestyle Goods Dongguan Limited (collectively, the "Foreign Subsidiaries").

7.      No adequate remedy at law exists.  Defendants are insolvent and do not have sufficient means to carry on their business activities and operations.  Further, the board of directors and Chief Executive Officer of Defendants have all resigned, leaving Defendants unable to conduct their businesses and wind-down their affairs.

8.      Gregg F. Stewart of Rinnovo Management LLC is qualified and well-suited to serve as receiver of Defendants and the Company Assets.

9.      Plaintiff served copies of its Complaint and the Motion on Defendants by hand-delivery, overnight mail and email.  Plaintiff also served the Complaint and Motion on Defendants' shareholders, Defendants' former directors and shareholders' counsel by email and overnight delivery.   Plaintiff further served the Order setting the hearing on the Motion on Defendants, Defendants' shareholders, Defendants' resigned directors, and shareholders' counsel by email and on Defendants by hand delivery to their registered agent. Because Defendants have received as effective notice of the Motion and the hearing thereon as possible given the exigent circumstances, counsel for one group of shareholders of Defendants appeared at the hearing on the Motion, the CRO has agreed to the appointment of a receiver, counsel for one group of the shareholders of Defendants has indicated that all shareholders consent to the entry of this Order,  there are no other officers or directors authorized to speak for Defendants, and no person or entity other than Plaintiff has filed a financing statement with the Indiana Secretary of State, no further notice of the hearing on this Motion is required.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that:

A.      The Motion is hereby GRANTED.

B.      This Court has subject matter jurisdiction over the Motion and this cause of action.

C.      This Court has personal jurisdiction over the Defendants in that their only officer and certain of their shareholders have affirmatively consented to the relief requested by the Plaintiff.

D.      Plaintiff is entitled to the immediate appointment of a receiver over the Company Assets pursuant to Indiana Code § 32-30-5-1(3), (5)(B) & (7).

E.      The powers and authority of a receiver are set forth in Indiana Code § 32-30-5-7, which provides:

The receiver may, under control of the court or the judge:

> (1) bring and defend actions;
> (2) take and keep possession of the property;
> (3) receive rents;
> (4) collect debts; and
> (5) sell property.

in the receiver's own name, and generally do other acts respecting the property as the court or judge may authorize.

F.      Defendants have defaulted on obligations owed to the Plaintiff.

G.      The appointment of a receiver is necessary to protect and preserve Plaintiff's rights and interests as a secured party with valid, perfected and enforceable first-priority liens on the Company Assets.

H.      Therefore, Plaintiff has established sufficient cause, pursuant to Indiana Code Section 32-30-5-1 *et seq.*, for the immediate appointment of a receiver for the possession and operation of the Company Assets during the pendency of these proceedings.

I.      Rinnovo Management LLC, by and through its President Gregg F. Stewart, is hereby appointed as receiver ("Receiver") over all Company Assets wheresoever situated, for a period commencing on the date of this order and ending upon termination of such appointment by further Order of Court.  For sake of clarity, the Company Assets do not include Defendants' ownership interests and management rights in and to the Foreign Subsidiaries.

J.      During the pendency of this action and until such time as the Court orders otherwise and subject to the terms and provisions of this Order, Receiver shall be, and hereby is, authorized to do any and all acts respecting the assets, management and operations of Defendants and is empowered to hire employees and agents, borrow money, make expenditures and pay bills in the ordinary course of Defendants' business and as customarily made and incurred in liquidating the assets of a business.

K.     Receiver shall and is hereby ordered to assume control of Defendants, and Defendants' business premises to the extent available, and shall seize and take possession of all books and records, including all checkbooks, checking accounts, cash on hand, supplies, and other personal property relating to the ownership and/or operations of Defendants.

L.     Receiver shall have and hereby does have the right to operate any and all of Defendants' business affairs save for ownership or management of the Foreign Subsidiaries, either directly and/or indirectly through the acts and employees and agents hired by Receiver and acting under Receiver's direction and control, as Receiver deems prudent.  Receiver is authorized to conduct investigations of, and analyses concerning, the operation and value of the Company Assets and to assume responsibility for the sale as going concern or liquidation of all or portions of the Company Assets.  Receiver shall have and is hereby granted all necessary powers to manage the Company Assets without further leave of Court, including, without limitation, the power and responsibility to:  (1) take immediate possession of the Company Assets and all personalty related thereto, including without limitation, all related books, records, bank accounts, keys, combinations for locks or other access information, or which relate in any manner to the management of all or any portion of the Company Assets; (2) direct Defendants, their equity owners, officers, agents, employees or other representatives immediately to turn over and deliver or cause to be delivered to Receiver or its designee all personalty which relates in any manner to the management or operation of the Company Assets including, without limitation, all keys, combinations for locks or other access codes, books, records, accounts, operating statements, reserve accounts, all electronically stored information and all passwords or other security information required to access the Company's computers, software programs, or media storage and the like pertaining to the operation of the Company Assets; (3) subject to the rights and interest of Plaintiff and other

creditors, sell all or any portion of the Company Assets, including Collateral, and to do all acts and things necessary or advisable in connection with such sale(s); (4) negotiate all bills, drafts, notes or other instruments in the name of Defendants; (5) subject to the rights and interests for the benefit of Plaintiff and any other creditor, take such steps with respect to the outstanding accounts payable and the status of operation of the Company Assets in order to maintain, preserve, and protect the Company Assets including, without limitation, discern the status of the outstanding accounts payable and to settle any such accounts that Receiver or its designee deems necessary, and demand, collect and receive from all present and future account debtors, including issuers of letters of credit, all sums now due and unpaid or which hereafter shall become due with respect to or arising out of the Company Assets during the pendency of the receivership authorized hereby; (6) engage and employ such counsel, accountants, appraisers, temporary employees, or other professionals, as may be necessary in order to carry out its duties as Receiver, to preserve and maintain the Company Assets, and employ such other professionals acceptable to Plaintiff to market, sell or liquidate the Company Assets; (7) conduct discovery, provide notice, pursue claims, cooperate, negotiate,  and otherwise take all steps necessary to recover or obtain coverage from any entity relating to the acts, conduct, property, liabilities, or financial condition of Defendants or any other matter or item that may affect Receiver's administration of the Company Assets; (8) subject to the rights and interests and for the benefit of Plaintiff, terminate or abrogate any or all agreements, contracts, understandings or commitments entered into by Defendants with respect to the Company Assets, to the extent permitted by applicable law, but including the right to terminate existing contracts which may give the counterparty the right to a claim for damages; (9) open new accounts with, or negotiate, compromise or otherwise resolve Defendants' existing obligations to utility companies or other service providers or suppliers of goods and services to Defendants or otherwise enter into

such agreements, contracts or understandings with such utility companies or other service providers or suppliers as are necessary to maintain, preserve and protect the Company Assets; and (10) open new bank accounts in the name of Defendants under Defendants' tax identification numbers for use by Receiver or its designee to manage the liquidation of the Company Assets, or, at its sole discretion, Receiver is also entitled to use the existing deposit and checking accounts that Defendants currently maintain and rename such accounts to reflect the interest of the receivership estate.

M.     Receiver is authorized to retain independent legal counsel to advise and represent Receiver including, without limitation, in reporting to and appearing before this Court and any other claim or proceedings to which Receiver may be a party. Legal fees and costs incurred by Receiver in performance of its duties, which include but are not limited to legal fees to review, comment and negotiate the undertaking, compensation and responsibilities of Receiver, may be included and paid as an expense of the receivership from the Cash Collateral (as defined below).

N.     By this Order, Receiver is authorized to hire the law firm of Kroger, Gardis & Regas, LLP as its counsel and no other or further motion or order is necessary for Receiver's employment of Kroger, Gardis & Regas, LLP, which is hereby approved.

O.     Receiver has the power and authority to utilize cash on hand at the commencement of the receivership which is subject to Plaintiff's security interest or cash resulting from the operation or liquidation of the Company Assets (the "Cash Collateral") or borrow such monies as Plaintiff may be willing to advance for preservation and maintenance of the Company Assets to the extent the Company Assets in Receiver's possession or proceeds thereof are insufficient to cover the Receiver's costs and expenses (the Cash Collateral and any subsequent advances by the Plaintiff hereinafter referred to as the "Receiver Advances"), subject to and contingent upon

compliance with the budget procedures set forth in this Order and as detailed in any Proposed Budget approved by the Plaintiff, or which were not reasonably anticipated in such budget, but required to be paid in order to avoid a result detrimental to the administration of the receivership. The Receiver Advances shall be deemed and treated as "Protective Advances" under the Credit Agreement.  The Receiver Advances shall be repaid, to the extent feasible, from the revenues generated from the sale, collection or liquidation of the Company Assets, whether such revenues are generated before, during or after the receivership and shall be secured by and under the parties' existing Security Agreements and this Order of Court, by which Plaintiff is and will continue to be secured in all of Defendants' Company Assets, whether such Company Assets came into existence before, during or after the receivership.

P.      To further secure the Defendants' existing indebtedness to Plaintiff and all Receiver Advances, Plaintiff is hereby granted a security interest in all assets, revenues and receipts of the receivership estate, including, but not limited to, all intellectual property, patents, computer programs, source code, trade secrets, copyrights and trademarks, any and all claims against third-parties, including, but not limited to, avoidance actions (including, but not limited to, fraudulent transfer actions), claims for contribution for expenses of the receivership, tort claims, claims for breach of fiduciary duty, claims against officers and/or directors and fraud claims whether such claims come into existence before, during or after the receivership.  The security interests recognized and granted to Plaintiff under this Order shall be deemed to be valid and perfected without further action by Plaintiff or additional order of this Court.

Q.      For the avoidance of doubt, Plaintiff is not obligated or responsible to make any Receiver Advances beyond the initial Cash Collateral at case commencement or to ensure the payment of any compensation to Receiver, other than the funding agreed to by Plaintiff pursuant

to any approved budgets as described and set forth below. The receivership will commence with Cash Collateral on hand of approximately $400,000 which, together with anticipated collections from the sale and liquidation of Company assets is estimated to be sufficient to fund the expenses of the receivership.

R.     Notwithstanding the foregoing, expenses incurred and paid by Receiver will be based upon Approved Budgets (as such term is defined below):

      a.   On a weekly basis, Receiver shall prepare and update a 13-week financial budget which shall be divided into Weekly Increments (the "Proposed Budget"). The term "Weekly Increments" means a one-week period commencing on a Saturday and ending on the immediately succeeding Friday.

      b.   On each Wednesday, Receiver shall email the Proposed Budget to Plaintiff by 5:00 p.m. eastern time, together with an approval request ("Approval Request") that will cover all expenses to be incurred or paid during the next two Weekly Increments for Plaintiff's review and approval in its sole and absolute discretion. Plaintiff shall review the Proposed Budget and communicate to Receiver via email by 5:00 p.m. eastern time on the immediately following Friday of such week whether Plaintiff approves the Proposed Budget and Approval Request. Plaintiff's failure to timely deliver its consent to an Approval Request shall be deemed Plaintiff's decision to deny the Approval Request. Plaintiff's consent to an Approval Request shall constitute Plaintiff's consent to the use of the funds in the receivership or advanced by

Plaintiff for the expenses to be incurred for the applicable two-week period (the "Approved Budget") in the Proposed Budget.  Receiver will provide to Plaintiff the first two Weekly Increments of the Proposed Budget as soon as possible, which Plaintiff shall review and respond to within twenty-four hours.  Once a consent to an Approval Request is issued, if existing funds in the Receivership are not sufficient to pay the current bi-weekly budget, Plaintiff shall, subject to paragraph R.d below, remit to Receiver by wire transfer the amount set forth in the Approval Request by 3:00 p.m. eastern time of the immediately following Monday less any amounts previously advanced by Plaintiff to cover expenses budgeted under a prior Approval Request (or the next business day if that Monday is a holiday) ("Funding Deadline").

c. Each Proposed Budget shall include a line item providing for the reimbursement to Plaintiff of its costs, including without limitation attorney's fees, incurred in connection with Plaintiff's enforcement of remedies under the Credit Agreement, the commencement of this action, and the administration of the receivership.

d. If Plaintiff declines or fails to make advances to fund (as necessary) an Approval Request by the applicable Approval Deadline, Receiver as its sole and exclusive remedy may immediately cease work and seek its discharge for good cause, which may be heard on an expedited basis.

S.      In order to exercise the authority conferred upon it under this Order, Receiver is hereby vested with the standing and all power and authority of (but without the liability of or

-10-

associated with, or obligation to act as) a) the boards of directors of Defendants and b) Defendants in their capacity and relationship as "employer", as Receiver deems necessary for the management, sale and liquidation of the Company Assets, including without limitation the power and authority to (i) assert or waive attorney/client, work product, joint defense or other privilege, (ii) execute documents, instruments and resolutions in connection with any sale or finance transaction, (iii) have and obtain access to employee records, reports, communications and other work product,  and (iv) commence a case under Title 11 of the United States Code.

T.      Receiver may apply to this Court for further direction and for such further powers as may be necessary to enable Receiver to fulfill its duties.

U.      To the extent Defendants have not already done so, Receiver is authorized to terminate Defendants' employees.  Receiver, its officers, directors, agents, representatives, counsel, consultants and employees (the "Receiver Entities") shall have no personal liability for any liabilities arising from any such termination or for any liabilities related to any pension, profit sharing, 401(k), health insurance or other employee benefit plans. Receiver is authorized in its discretion to employ, fix and pay the compensation, salaries and wages of all managers, agents, employees, servants as may be advisable or necessary in its judgment for the operation, management, conduct, control or custody of the affairs of the Company Assets.

V.      All rents, issues, profits, revenues, income or other payments which are now or hereafter become due (hereinafter collectively, the "Accounts") with respect to all or any portion of the Company Assets whether pursuant to oral or written agreements shall be remitted by the account debtors directly to Receiver.  Receiver is authorized and directed to demand, collect, and receive all proceeds from the operation of the Company Assets, including, without limitation, all receivables, accounts, profits, rents, charges, or fees now due and unpaid or hereafter to become

due.  Any security deposits or other deposits that have been paid to Defendants, or their agents and which are not paid to Receiver, and over which Receiver has no control, shall be obligations of Defendants and many not be refunded by Receiver without approval of Plaintiff and the Court.

W.     The liability of Receiver is and shall be limited to the Company Assets, and Receiver shall not be personally liable except for its bad faith, willful misconduct or gross negligence.  Receiver shall have no personal liability for any environmental liabilities arising out of or relating to Defendants, their business operations or the Company Assets.

X.     Sales of the Collateral pursuant hereto shall be on the terms and conditions as are commercially reasonable under Article 9 of the Uniform Commercial Code.

Y.     Receiver shall have no obligation to prepare or file state or federal tax returns on behalf of the Defendants and shall not be responsible for paying any unpaid federal or state taxes on behalf of Defendants (except to the extent funds not subject to the lien of Plaintiff may be found to exist and available for distribution to creditors other than Plaintiff).  The responsibility for such filings and payments lies exclusively with the Defendants, their agents, employees, and representatives.  Receiver is authorized and directed to prepare, file and pay, as applicable, any tax returns arising in connection with the receivership as may be required by law.

Z.     Receiver may bring such legal actions based on law or equity in any state, federal or foreign court as it deems necessary or appropriate in discharging its duties as Receiver.

AA.    The Receiver Entities are entitled to rely on all outstanding rules of law and Court Orders and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment or decree.  In no event shall the Receiver Entities be liable to anyone for good faith compliance with their duties and responsibilities or the exercise by Receiver of the standing, power and authority granted to Receiver in this Order, nor shall the Receiver Entities be liable to anyone

for any such actions taken or omitted by them except upon a finding by this Court that they acted or failed to act as a result of bad faith, willful misconduct or gross negligence.

BB.    Receiver is authorized and directed to apply and/or remit the proceeds of the operation of the Company Assets and the sale of the Company Assets, including the proceeds of the accounts receivable, to the fees and expenses of Receiver and to the claims of Plaintiff and any other creditors in order of priority, consistent with and subject to the Approved Budget, providing Receiver maintains a sufficient reserve to meet on-going and anticipated expenses as contemplated under Trial Rule 66(E).  Any payments made by Receiver to Plaintiff shall be applied pursuant to Section 5.20(a) of the Credit Agreement.

CC.    Receiver may permit the existing insurance policies, contracts, and arrangements protecting the Company Assets to remain in force until they expire or otherwise terminate.  Receiver shall provide appropriate notice of the appointment of Receiver hereby and shall request, as appropriate, that Receiver be added as an Additional Insured or party thereunder.  Upon expiration or other termination of the existing insurance policies, contracts and arrangements, Receiver shall have the right to keep the Company Assets insured and protected as Receiver deems necessary.  Receiver has the option to keep in force or renew any existing insurance policies, contracts, and arrangements or obtain new insurance policies or other arrangements for the protection of the Company Assets, which shall, as appropriate, name Receiver, officers, directors, employees, agents and affiliates as Additional Insureds or parties.

DD.    Defendants and their current and former respective directors, equity owners, officers, agents, employees or other representatives under this Order are hereby directed to use their best efforts to ensure a smooth transition of the preservation and liquidation of the Company Assets to Receiver or its designee and Defendants shall cooperate with Receiver or its designee in

consummating such transition, provided that such parties are not compelled by this Order to expend funds.

EE.    Defendants and their current and former respective directors, equity owners, officers, agents, employees and other representatives are hereby enjoined from interfering in any manner with Receiver or its management and its liquidation of the Company Assets.  Defendants and their current and former respective directors, equity owners, officers, agents, employees or other representatives are hereby enjoined and restrained from collecting any receivables, accounts, profits, rents, charges or fees of or for the receivership estate or taking or holding possession thereof.

FF.    Receiver shall not be bound by all or any contracts, agreements, understandings or other commitments Defendants had, or may have with third parties, whether oral or written. Receiver may, by an affirmative written ratification executed by Receiver, agree to become bound to any such contracts, agreements, understandings or other commitments or may agree to enter into any new or amended contracts, agreements, understandings or other commitments. Nothing in this Order constitutes or shall be construed to constitute an assumption of any of the leases, contracts or agreements currently existing with respect to the Company Assets by Receiver or a waiver by Receiver of any default under any such lease, contract or agreement. This paragraph does not affect the rights of Plaintiff or other third parties under any agreements between or among such parties.

GG.    Without first obtaining leave of this Court, Defendants, and their current and former respective directors, equity owners, officers, agents, employees, other representatives and all others acting on behalf of any such current or former director, equity owner, agents, employees,

and other representatives, creditors or other person, including sheriffs, marshals, other officers, deputies, servants, agents, employees and attorneys are enjoined from:

i.      Commencing, prosecuting, continuing or enforcing any suit or proceeding in law, equity, bankruptcy, or otherwise against or affecting Defendants or any part of the Company Assets in any forum other than this Court, except that such actions may be filed to toll any statutes of limitations;

ii.     Using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or exercising control over or interfering with or creating or enforcing a judgment or lien upon any portion of the Company Assets, wherever situated;

iii.    Attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate the due date of any lease, loan, mortgage, indebtedness, security agreement or otherwise affecting the Company Assets;

iv.     Doing any act to interfere with the taking control, possession, or management, by Receiver, of any portion of the Company Assets or to interfere in any manner with the exclusive jurisdiction of this Court over the Company Assets;

v.      Engaging in any act to create, perfect, or enforce any lien against Company Assets, unless specifically authorized by order of this Court;

vi.     Engaging in any act to collect, assess, or recover a claim against Defendants that arose before the appointment of Receiver; and

vii.    Exercising a set off of any debt owing to Defendants that arose before the

appointment of Receiver against any claim against one or both Defendants.

HH.    The receivership authorized and created hereby may be terminated, or the Receiver may resign or be replaced or removed, at any time by Order of the Court upon proper motion and notice. Unless otherwise expressly provided therein, the entry of a judgment on the Complaint shall not operate as a termination of the receivership.

II.    So long as any part of the Company Assets remain in its possession and control, Receiver is directed to prepare and file with the Court a full and complete, verified report, under oath, setting forth all receipts and disbursements and reporting all acts and transactions regarding the execution of the trust of this office as such receiver, including a current inventory of the funds, assets and properties remaining in the receivership, all interest in and claims made against the same, and all debts and obligations contracted and expenditures made.  Such reports will be calculated on a monthly basis, but the first report, if for a partial month, shall be filed within thirty (30) days after entry of this Order, and thereafter on a monthly basis by the 20th day of each calendar month thereafter pertaining to the operations of the Company Assets during the immediately preceding month. Receiver shall file a final report within sixty (60) days after termination of the receivership. Receiver is further directed to serve copies of each such report to the attorney of record for Defendants, if any, and Plaintiff, and any other party who submits a written request to the Court and Receiver to be served with copies of such reports.

JJ.    Receiver shall be compensated for its services as receiver in an amount not to exceed the range of amounts as set forth in the affidavit attached to the Motion for the services of its employees and shall be reimbursed for all reasonable costs and expenses incurred with respect to the administration of this receivership estate, consistent with and subject to the Approved Budget.  In each periodic report filed with the Court pursuant to Paragraph II above, Receiver shall

include a statement for its services and expenses as Receiver and may include statements from time to time for compensation of its counsel and other professionals retained by it.  If no objection by a party to a statement included in a report is filed within ten (10) days after the filing of the report with the Court, Receiver shall be and hereby is authorized to pay the amounts set forth in such statement without further action or approval by the Court; provided however, that all such payments on statements included in periodic reports shall be and remain subject to final review and approval by the Court upon termination of the receivership and prior to Receiver's discharge.

KK.     Receiver shall assume its duties immediately upon entry of this Order, and Receiver shall file the oath required of it pursuant to I.C. § 32-30-5-3 within five (5) business days of entry of this Order. Receiver is not required to obtain a bond for its service in this matter.

LL.     Receiver, Plaintiff, and any party to this action may apply at any time to the Court for further instructions and for further powers necessary to enable Receiver to properly fulfill its duties after providing notice to all parties who have appeared in this action.

SO ORDERED this _____ day of **April 25, 2020**, 2020.

_____
Hon. Heather Welch, Indiana Commercial Court

# **Exhibit 3**

**From:** James Knauer <jknauer@kgrlaw.com>
**Sent:** Thursday, September 3, 2020 3:09 PM
**To:** Deborah Caruso <dcaruso@rubin-levin.net>; astaffords@kgrlaw.com
**Subject:** RE: Bigmouth LLC Receivership


Debbie;

 The senior lender was owed about $22MM and not a chance the liquidation will bring anywhere close to that and it's been evident from the beginning.

 The senior lender's loan docs are attached to the Complaint. Their UCC filing was properly done, and we also look at patent and trademark filings, so the Receiver has no issue with the validity of the lien.  Since there was no chance for payment to creditors, we saw no reason to provide a claims notice and process.



James Knauer | Partner



111 Monument Circle Suite 900
Indianapolis, IN 46204-5125
Phone & Fax: (317) 777-7440
Mobile: (317) 250-6554
BIO |VCard






CIRCULAR 230 DISCLOSURE -  In order to comply with certain  Internal Revenue Service Regulations, we inform you that  any tax advice contained in this electronic message is not intended or written to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code.

CONFIDENTIALITY NOTICE - This e-mail transmission, and any documents, files or previous e-mail transmissions attached to it, contain information that is confidential and may be legally privileged. If you are not the intended recipient of this transmission, or a person responsible for delivering it to the intended recipient, you are notified that you must not read this transmission and that any disclosure, copying, printing, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED.  If you have received this transmission in error, please immediately notify the sender by  telephone or return e-mail and delete the original transmission and its attachments without reading or saving or forwarding it in any manner.  Thank you for your consideration.

**From:** Deborah Caruso [mailto:dcaruso@rubin-levin.net]
**Sent:** Tuesday, September 1, 2020 11:07 AM
**To:** James Knauer <jknauer@kgrlaw.com>; astaffords@kgrlaw.com
**Subject:** Bigmouth LLC Receivership

HI Jim and Mandy,

I hope all is well.  I represent an unsecured creditor of Bigmouth with a fairly large claim.  I spoke with Jay Jaffe who indicated that he believes his client will have a large deficiency.  Do you believe there will be any distribution to unsecured creditors?  Is there a dispute with the secured lender's claim?  Will the Receiver establish a procedure for unsecured creditors to file claims?

Thanks,

Debbie



**Deborah J Caruso**
Rubin & Levin

Direct Dial:  (317)-860-2867
dcaruso@rubin-levin.net

135 N. Pennsylvania Street
Suite 1400
Indianapolis, Indiana  46204
rubin-levin.com

Please visit our website at: **www.rubin-levin.com**

DISCLOSURES:  We are debt collectors.  If you are a client or agent thereof, this email is subject to attorney-client privilege. It may contain privileged/confidential information and is for the sole use of the intended recipient(s). Unauthorized use or disclosure is prohibited. If you have received this email in error, please notify the sender immediately and delete it from your system.

# **Exhibit 4**



